UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MARJORIE PHILLIPS,

                Plaintiff,

    -against-                            20-cv-00221 (GBD)


THE FASHION INSTITUTE OF
TECHNOLOGY, MARY DAVIS, and
MARILYN BARTON,

                Defendants.
--------------------------------------------------------x


### DEFENDANT MARILYN BARTON'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MENKEN SIMPSON & ROZGER LLP

Bruce E. Menken
Raya F. Saksouk
80 Pine St., 33rd Fl.
New York, NY 10005
Tel.: 212-509-1616
Fax: 212-509-8088
bmenken@nyemployeelaw.com
rsaksouk@nyemployeelaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 1

   I.  Plaintiff's Race Discrimination Claims under § 1981 Fail as a Matter of Law ............... 1

      A.  No Reasonable Juror Could Find Barton Liable for Disparate Treatment ...............

          i.  As Plaintiff's Coworker, Barton Cannot Be Held Individually Liable for Disparate Treatment Under § 1981 ................................................................

         ii.  Plaintiff Never Suffered an Adverse Employment Action ...........................

      B.  The Record Does Not Support a Finding of Severe or Pervasive Discrimination ........................................................................

  II.  Plaintiff Cannot Establish the Essential Elements of a Retaliation Claim Under § 1981 ...............................................................................................................

 III.  Plaintiff's NYCHRL Claims Also Fail as A Matter of Law ...............................................

      A.  Defendant Barton Neither Discriminated nor Aided and Abetted Discrimination ................................................................................

      B.  Plaintiff Cannot Establish Retaliation Because She Did Not Engage in Protected Activity ..................................................................................................

      C.  Barton Did Not Interfere with Plaintiff's Protected Rights under the NYCHRL .............................................................................

 IV.  Plaintiff's Tort Claims Are Similarly Meritless ..............................................................

      A.  Barton's Conduct Was Neither Extreme nor Outrageous .........................................

      B.  Plaintiff's Assault Claim Fails Because She Cannot Establish the "Intent" and "Reasonableness" Elements ........................................................................

CONCLUSION .................................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Ahmad v. White Plains City Sch. Dist.,*
   No. 18-CV-3416, 2019 WL 3202747 (S.D.N.Y. July 16, 2019) ................................................8

*Aiken v. MTA New York City Transit,*
   No. 18CV11756 (GBD) (DF), 2021 WL 6621579 (S.D.N.Y. Sept. 2, 2021),
   *adopted by* 2021 WL 4481094 (S.D.N.Y. Sept. 29, 2021) ....................................................11, 15

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)..................................................................................................................1

*Ariz v. Metropolitan Transportation Auth.,*
   No. 17-cv-4491, 2019 WL 2613476 (S.DN.Y. Jun. 26, 2019).................................................. 8-9

*Awad v. City of New York.,*
   No. 13 civ. 5753, 2014 WL 1814114 (E.D.N.Y. May 7, 2014) .................................................5

*Burlington Indus., Inc. v. Ellerth,*
   524 U.S. 742 (1998)................................................................................................................ 3-4

*Burlington Northern & Santa Fe Ry. Co. v. White,*
   548 U.S. 53 (2006)....................................................................................................................1

*Cai v. Wyeth Pharm., Inc.,*
   No. 09 Civ. 5333(GBD), 2012 WL 933668 (S.D.N.Y. Mar. 19, 2012) ......................................9

*Caravalho v. City of New York,*
   13 cv 4174 (PKC)(MHD), 2016 WL 1274575 (S.D.N.Y. Mar. 31, 2016)...............................18

*Carroll v. Bayeriche Landesbank,*
   125 F. Supp. 2d 58 (S.D.N.Y. 2000)........................................................................................20

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media,*
   140 S. Ct. 1009 (2020).............................................................................................................2

*Cunningham v. New York State Dep't of Lab.,*
   326 F. Appx. 617 (2d Cir. 2009)................................................................................................4

*Curcio v. Roosevelt Union Free Sch. Dist.,*
   No. 10-CV-5612 (SJF), 2012 WL 3646935 (E.D.N.Y. Aug. 22, 2012)....................................17

*Davis-Bell v. Columbia Univ.,*
   851 F. Supp. 2d 650 (S.D.N.Y. 2012).............................................................................5, 11, 15

*Davis-Molinia v. Port Auth. of N.Y. & N.J.,*
  No. 08-CV-7584, 2011 WL 4000997  (S.D.N.Y. Aug. 19, 2011),
  *aff'd*, 488 F. App'x 530 (2d Cir. 2012) .........................................................................................9

*De La Peña v. Metro. Life Ins. Co.,*
  953 F.Supp.2d 393 (E.D.N.Y.2013) ...........................................................................................10

*Deveaux v. Skechers USA, Inc.,*
  No. 19cv9734 (DLC), 2020 WL 1812741 (S.D.N.Y. Apr. 9, 2020) ...........................................14

*Dillon v. Ned Mgmt., Inc.,*
  85 F. Supp. 3d 639 (E.D.N.Y. 2015) ...........................................................................................15

*DiRuzza v. Lanza,*
  685 F. App'x 34 (2d Cir. 2017) ....................................................................................................18

*Espinoza v. New York City Dep't of Transportation,*
  304 F. Supp. 3d 374 (S.D.N.Y. 2018)..........................................................................................14

*Eugenio v. Walder,*
  No. 06 CIV. 4928 CS GAY, 2009 WL 1929311 (S.D.N.Y. Mar. 3, 2009)................................11

*Evans v. Port Auth. of New York & New Jersey,*
  No. 00 CIV. 5753 (LAK), 2002 WL 77074 (S.D.N.Y. Jan. 22, 2002).........................................4

*Farmer v. Shake Shack Enterprises, LLC,*
  473 F. Supp. 3d 309 (S.D.N.Y. 2020)..........................................................................................11

*Fattoruso v. Hilton Grand Vacations Co., LLC,*
  873 F. Supp. 2d 569, 580 (S.D.N.Y. 2012),
  *aff'd*, 525 F. App'x 26 (2d Cir. 2013) .........................................................................................15

*Feliciano v. City of New York,*
  No. 14 Civ. 6751 (PAE), 2015 WL 4393163 (S.D.N.Y. July 15, 2015) ....................................13

*Ferguson v. New Venture Gear, Inc.,*
  No. 5:04-CV-1181 FJS/GHL, 2009 WL 2823892, at *7 (N.D.N.Y. Aug. 31, 2009)................12

*Fincher v. Depository Tr. & Clearing Corp.,*
  604 F.3d 712, 721 (2d Cir. 2010)................................................................................................12

*French v. Erie Cty. Bd. of Elections,*
  No. 12-CV-00756A(F), 2015 WL 13681014 (W.D.N.Y. Mar. 3, 2015),
  *adopted by* 2018 WL 647470 (W.D.N.Y. Jan. 31, 2018) ...........................................................3

*Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni,*
   585 F. Supp. 2d 520 (S.D.N.Y. 2008)....................................................................13

*Garvin v. Potter,*
   367 F. Supp. 2d 548 (S.D.N.Y. 2005)...........................................................8, 10, 11

*Ghirardelli v. McAvey Sales & Serv., Inc.,*
   287 F.Supp.2d 379 (S.D.N.Y.2003).....................................................................12

*Green v. Harris Publ'ns, Inc.,*
   331 F.Supp.2d 180 (S.D.N.Y.2004).......................................................................9

*Harrison v. State Univ. of N.Y. Downstate Med. Ctr.,*
   No. 16-CV-1101, 2018 WL 4055278 (E.D.N.Y. July 6, 2018),
   *adopted by* 2018 WL 4054868 (E.D.N.Y. Aug. 24, 2018) ......................................7

*Henry v. NYC Health & Hosp. Corp.,*
   18 F. Supp. 3d 396 (S.D.N.Y. 2014)........................................................................1

*Hicks v. IBM,*
   44 F. Supp. 2d 593 (S.D.N.Y. 1999)........................................................................3

*Hooda v. Brookhaven Nat. Lab'y,*
   659 F. Supp. 2d 382 (E.D.N.Y. 2009) .....................................................................4

*Ibraheem v. Wackenhut Services, Inc.,*
   29 F. Supp. 3d 196 (E.D.N.Y. 2014) .....................................................................17

*James v. Johnstons Subaru, Inc.,*
   No. 20-cv-6726 (NSR), 2022 WL 1597737 (S.D.N.Y. May 19, 2022).......................2

*Jean-Louis v. Am. Airlines,*
   No. 08-CV-3898 (FB), 2010 WL 3023943 (E.D.N.Y. July 30, 2010) .................3, 11

*Jordan v. Alternative Res. Corp.,*
   458 F.3d 332 (4th Cir. 2006) ................................................................................12

*Kellman v. Metro. Transp. Auth.,*
   8 F. Supp. 3d 351 (S.D.N.Y. 2014).........................................................................1

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.,*
   716 F.3d 10 (2d Cir. 2013)....................................................................................11

*Kelly v. New York State Off. of Mental Health,*
   200 F. Supp. 3d 378 (E.D.N.Y. 2016) .....................................................................5

*Littlejohn v. City of New York,*
  795 F.3d 297 (2d Cir. 2015)......................................................................................6

*Lewis Fam. Grp. Fund LP v. JS Barkats PLLC,*
  No. 16CV5255AJNJLC, 2021 WL 1203383 (S.D.N.Y. Mar. 31, 2021),
  *adopted by* 2021 WL 4341080 (S.D.N.Y. Sept. 23, 2021) ........................................19

*Macias v. Barrier Free Living, Inc.,*
  No. 16 CIV. 1735 (ER), 2018 WL 1603566 (S.D.N.Y. Mar. 28, 2018)....................16

*Martinez v. N.Y.C. Dep't of Educ.,*
  No. 04–CIV–2728 (LTS)(DFE), 2008 WL 2220638 (S.D.N.Y. May 27, 2008)........13

*Mathirampuzha v. Potter,*
  548 F.3d 70 (2d Cir. 2008)........................................................................................6

*McDonnell Douglas Corp. v. Green,*
  411 U.S. 792 (1973)...................................................................................................2

*McHenry v. Fox News Network, LLC,*
  510 F. Supp. 3d 51 (S.D.N.Y. 2020)........................................................................15

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,*
  715 F.3d 102 (2d Cir. 2013)................................................................................14-15

*Miller v. New York State Police,*
  No. 20-3976, 2022 WL 1133010 (2d Cir. Apr. 18, 2022) ......................................6-7

*Moriates v. City of New York,*
  No. 13 Civ. 4845, 2016 WL 3566656 (E.D.N.Y. June 24, 2016)...............................5

*Morrison v. United Parcel Serv., Inc.,*
  No. 17-cv-2885, 2019 WL 109401 (S.D.N.Y. Jan. 4, 2019) .....................................6

*Murray v. Dutchess Cty. Exec. Branch,*
  No. 17-CV-9121 (KMK), 2019 WL 4688602 (S.D.N.Y. Sept. 25, 2019)..................7

*Patane v. Clark,*
  508 F.3d 106 (2d Cir. 2007)......................................................................................6

*Paul v. Postgraduate Ctr. for Mental Health,*
  97 F. Supp. 3d 141, 182 (E.D.N.Y. 2015...................................................................7

*Ray v. Klyczek,*
  No. 08-CV-488S, 2009 WL 3199606 (W.D.N.Y. Sept. 30, 2009)..............................7

*Rivera v. Brooklyn Hosp. Medical Ctr.,*
  28 F.Supp.3d 159 (E.D.N.Y. 2014) ........................................................................10

*Rodas v. Town of Farmington,*
  567 F. App'x 24 (2d Cir. 2014) ............................................................................12

*Silver v. City Univ. of N.Y.,*
  947 F.2d 1021 (2d Cir. 1991)................................................................................1

*Simmons v. Akin Gump Strauss Hauer & Feld, LLP,*
  508 Fed. Appx. 10 (2d Cir. 2013)..........................................................................2

*Sletten v. LiquidHub, Inc.,*
  No. 13 CIV. 1146 NRB, 2014 WL 3388866 (S.D.N.Y. July 11, 2014) ....................................16

*Stuto v. Fleishman,*
  164 F.3d 820 (2d Cir. 1999)................................................................................17

*Sutter v. Dibello,*
  No. CV18817ADSAKT, 2019 WL 4195303 (E.D.N.Y. Aug. 12, 2019),
  *adopted by* 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019)...........................................19

*Tardif v. City of New York,*
  991 F.3d 394 (2d Cir. 2021)................................................................................19

*Tepperwien v. Entergy Nuclear Operations, Inc.,*
  663 F.3d 556 (2d Cir. 2011)................................................................................12

*United States v. Davila,*
  461 F.3d 298 (2d Cir. 2006)................................................................................16

*Villavicencio v. Gure-Perez,*
  56 F. Supp. 3d 178 (E.D.N.Y. 2014) .....................................................................11

*Whidbee v. Garzarelli Food Specialties, Inc.,*
  223 F.3d 62 (2nd Cir. 2000)................................................................................2

*Ziyan Shi v. New York Dep't of State, Div. of Licensing Servs.,*
  393 F. Supp. 3d 329 (S.D.N.Y. 2019).................................................................5, 19

*Zuckerman v. GW Acquisition LLC,*
  No. 20-CV-8742 (VEC), 2021 WL 4267815 (S.D.N.Y. Sept. 20, 2021)...................................7

STATE CASES

*Chanko v. Am. Broad. Cos. Inc.,*
   27 N.Y.3d 46, 57, 29 N.Y.S.3d 879, 887, 49 N.E.3d 1171 (2016)...................................... 17-18

*Joon Song v. MHM Sponsors Co.,*
   176 A.D.3d 572, 111 N.Y.S.3d 581 (2019) ................................................................................20

*Owen v. Leventritt,*
   174 A.D.2d 471, 472, 571 N.Y.S.2d 25, 25–26 (1st Dept. 1991)...............................................18

*Seltzer v. Bayer,*
   709 N.Y.S.2d 21, 23 (App. Div. 2000) ......................................................................................18

# PRELIMINARY STATEMENT[1]

It is well settled that anti-discrimination laws do not "set forth a general civility code for the American workplace." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted). What is personally offensive to a particular plaintiff may not rise to the level of actionable discrimination, and for good reason. In this case, Plaintiff seeks to hold Defendant Marilyn Barton—her coworker—liable under state, city, and federal law for two completely isolated and non-discriminatory statements she made in 2016 and 2018, and for a heat-of-the-moment confrontation in 2019 that was unrelated to race, had no impact on Plaintiff's employment, and was immediately redressed by FIT. Defendant Barton's Motion for Summary Judgment should be granted as to all claims against her.

# ARGUMENT

## I. Plaintiff's Race Discrimination Claims under § 1981 Fail as a Matter of Law[2]

Plaintiff asserts disparate treatment and hostile work environment claims against Defendant Barton under § 1981 of the 1866 Civil Rights Act. *See* Compl. ¶¶ 49-51, 55-57; *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 410 (S.D.N.Y. 2014) ("[Section 1981] outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment."). Neither claim survives summary judgment. First, as Plaintiff's coworker with absolutely no supervisory authority, Defendant

---

[1] In lieu of a Statement of Facts, Defendant Barton joins and incorporates by reference Defendants' Joint 56.1 Statement, cited hereafter as "SOF."

[2] Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "In assessing when summary judgment should be granted, 't]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 369 (S.D.N.Y. 2014) (internal citation omitted). Summary judgment should be granted where the non-moving party can provide no probative evidence to support an essential element of her claim. *Silver v. City Univ. of N.Y.*, 947 F.2d 1021, 1022 (2d Cir. 1991).

Barton cannot be held individually liable for disparate treatment under § 1981. Even if she could, Plaintiff never suffered an adverse action and therefore cannot state a *prima facie* case of discrimination. Second, no reasonable juror could conclude, based on a handful of isolated and predominantly race-neutral incidents over several years, that Plaintiff's workplace was permeated with the kind of discriminatory abuse required to meet the "severe or pervasive" standard.

A. <u>No Reasonable Juror Could Find Barton Liable for Disparate Treatment</u>

Disparate treatment claims brought under § 1981 are analyzed under the same burden-shifting framework as Title VII claims. *Whidbee v. Garzarelli Food Specialties, Inc*., 223 F.3d 62, 75 (2nd Cir.2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). For Plaintiff to state a *prima facie* case of discrimination against Barton, she must establish that (1) she is a member of a protected class; (2) she was qualified for her position; (3) Barton took an adverse employment action against her; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. *Simmons v. Akin Gump Strauss Hauer & Feld, LLP*, 508 Fed. Appx. 10, 12 (2d Cir. 2013). Unlike in a Title VII case, Plaintiff must also establish that discriminatory intent was a "but-for" cause of the discriminatory action. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014–15 (2020); *James v. Johnstons Subaru, Inc.*, No. 20-cv-6726 (NSR), 2022 WL 1597737, at *2 (S.D.N.Y. May 19, 2022) ("A claim of discrimination under Section 1981 requires a showing of intentional discrimination.") (internal citation omitted). This is a markedly higher threshold than Title VII's "mixed motive" analysis, and one Plaintiff is plainly unable to meet.

2

(i)     *As Plaintiff's Coworker, Barton Cannot Be Held Individually Liable for Disparate Treatment Under § 1981.*

In § 1981 cases, "individual liability is generally imposed only on those who 'have the capacity to make and enforce the contract between the employer and the employee,' such as 'supervisors who were personally involved in the discriminatory activity.'" *Jean-Louis v. Am. Airlines*, No. 08-CV-3898 (FB), 2010 WL 3023943, at *4 (E.D.N.Y. July 30, 2010). In fact, "[i]n each of the cases that have allowed individual liability" under § 1981, "the individuals have been supervisors." *French v. Erie Cty. Bd. of Elections*, No. 12-CV-00756A(F), 2015 WL 13681014, at *12 (W.D.N.Y. Mar. 3, 2015), *adopted by* 2018 WL 647470 (W.D.N.Y. Jan. 31, 2018), quoting *Hicks v. IBM*, 44 F. Supp. 2d 593, 597–98 (S.D.N.Y. 1999) ("[I]ndividual liability under § 1981 is not without limits.").[3] This is likely because of § 1981's adverse action element, which implicitly requires that the alleged bad actor have the power to impact the terms and conditions of employment. *See Jean-Louis*, 2010 WL 3023943, at *4 ("Some courts have been reluctant to find coworker liability because it is often difficult to establish a causal link between a coworker's discriminatory conduct and the adverse employment action giving rise to a plaintiff's claim.") (collecting cases). As the Supreme Court noted over twenty years ago in the context of Title VII: "Tangible employment actions fall within the special province of the supervisor." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998) ("[O]ne co-worker (absent some elaborate scheme) cannot dock another's pay, nor can one co-worker demote another.").

---

[3] "On the other hand, the Second Circuit has specifically held that a coworker's direct participation in creating a hostile work environment is sufficient to establish individual liability under § 1981." *Jean-Louis*, 2010 WL 3023943, at *4. This point is discussed further *infra.*

At all times relevant to this action, Defendant Barton was Plaintiff's coworker and an administrative assistant with absolutely no authority to hire, fire, discipline, or otherwise impact the contractual terms and conditions of Plaintiff's employment. SOF ¶ 71, 73, 188. The record contains no evidence of any "elaborate scheme" by Barton to materially alter Plaintiff's position or damage her economically. *Ellerth*, 524 U.S. at 762; *see also Evans v. Port Auth. of New York & New Jersey*, No. 00 CIV. 5753 (LAK), 2002 WL 77074, at *2 (S.D.N.Y. Jan. 22, 2002) ("In the case of an individual co-worker …, [§ 1981] means that individual liability must be based on the individual's actions *absent some basis for imposing liability on the individual for the actions of others*.") (emphasis added). And Plaintiff fails to allege any legal theory (*e.g.*, cat's paw) that would create liability where it otherwise does not exist.[4] On this basis alone, Defendant Barton is entitled to summary judgment on Plaintiff's § 1981 disparate treatment claim.

(ii)    *Plaintiff Never Suffered an Adverse Employment Action.*

Even if the Court were to find that Defendant Barton could be held individually liable for disparate treatment under § 1981, Plaintiff's claim still fails for the simple reason that she has not suffered an adverse employment action. *See Cunningham v. New York State Dep't of Lab.*, 326 F. Appx. 617, 619–20 (2d Cir. 2009) ("[A]n actionable or cognizable adverse employment action is 'a materially significant disadvantage with respect to the terms of [plaintiff's] employment.'").[5]

---

[4] Of course, any attempt by Plaintiff to demonstrate the existence of an "elaborate scheme" or cat's paw theory of liability would be futile since she cannot establish any facts to support it and because, as discussed further *infra*, she never suffered an adverse employment action.

[5] For a detailed discussion of Plaintiff's "failure to promote" claim and other adverse actions, Defendant Barton joins and incorporates by reference Defendant FIT's Memorandum of Law in Support of Defendants' Motion for Summary Judgment. To the extent Plaintiff seeks to hold Barton liable for her "personal involvement" in any disparate treatment by FIT, her claims necessarily fail because she cannot establish an adverse action by FIT (or, by extension, any conduct by Barton contributing to an adverse action). *See Hooda v. Brookhaven Nat. Lab'y*, 659 F. Supp. 2d 382, 391 (E.D.N.Y. 2009) (dismissing § 1981 claim where plaintiff failed to connect individual's actions to

Plaintiff alleges that Barton made two discriminatory comments in her presence in November 2016 and March 2018 and assaulted her during a confrontation on May 16, 2019. Compl. ¶¶ 17, 25-32; SOF ¶¶ 90, 119. These are the only actions she alleges Barton took against her. Of course, Plaintiff has already conceded that the March 2018 comment was not discriminatory. SOF ¶ 122. As for Barton's passing reference to the historical three-fifths compromise in November 2016, courts have found that offhand and isolated comments are <u>not</u> adverse actions. *Kelly v. New York State Off. of Mental Health*, 200 F. Supp. 3d 378, 397 (E.D.N.Y. 2016).

Nor was the incident on May 16 an adverse action. Screaming and yelling do not materially alter the terms and conditions of someone's employment. *See Ziyan Shi v. New York Dep't of State, Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 338-39 (S.D.N.Y. 2019) ("yelling and screaming" that caused plaintiff to feel "humiliated and afraid" did not rise to level of adverse employment action). "Yelling amounts, at best, to 'those petty slights or minor annoyances that often take place at work and that all employees experience.'" *Moriates v. City of New York*, No. 13 Civ. 4845, 2016 WL 3566656, at *4 n.5 (E.D.N.Y. June 24, 2016) (internal citation omitted). Even if a juror were to find that Barton physically "pushed" Plaintiff,[6]

---

any adverse employment action). And, as addressed here, none of the alleged conduct attributed to Barton amounted to an adverse action on its own.

Similarly, if the Court dismisses Plaintiff's Title VII discrimination claims against FIT, so too must it dismiss her "aiding and abetting" claim against Barton under the NYSHRL, which follows the same standard in discrimination cases. *See Awad v. City of New York.*, No. 13 civ. 5753, 2014 WL 1814114, at *5 (E.D.N.Y. May 7, 2014); *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 688 (S.D.N.Y. 2012) ("[L]iability under the [NYS]HRL and the NYCHRL must first be established as to the employer/principal before an individual may be considered an aider and abettor. … Since the NYSHRL and the NYCHRL claim are not viable against Plaintiff's employer, they are not viable against the individual defendants.") (internal quotation marks and citations omitted).

[6] A jury is very unlikely to find in Plaintiff's favor on this point. The notion that Barton could "push" an adult person with a single finger strains credulity. At most, a jury could believe that Barton "touched" Plaintiff with her finger, or, as Umilta Alsop observed, "slightly brush[ed]" her. *See* SOF ¶¶ 176-77.

deliberately and with discriminatory intent, that still would not transform her conduct into a materially adverse action. *See, e.g., Mathirampuzha v. Potter*, 548 F.3d 70, 73, 79 (2d Cir. 2008) (finding no adverse employment action on summary judgment where an indirect supervisor "grabbed the plaintiff's arm, punched him in the shoulder and the chest, spit in his face, and poked him in the eye"). Ultimately, Barton's behavior on May 16 was spontaneous, out of character, and, unsurprisingly, never reoccurred. SOF ¶ 183, 203, 212. It was immediately redressed by FIT, and the two women had no further contact with each other. SOF ¶¶ 187, 209, 211-12, 215. No reasonable juror could find that Plaintiff suffered an adverse action as a result of this one-time confrontation that had no effect on her employment.[7]

  B. <u>The Record Does Not Support a Finding of Severe or Pervasive Discrimination</u>

  Nor can Plaintiff establish that Barton is liable for creating or contributing to a hostile work environment. To establish a hostile work environment under § 1981, Plaintiff "must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015) (internal citation omitted). The conduct must be both subjectively *<u>and</u>* objectively hostile, *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007), and "[o]ne or two isolated uses of racially insensitive language are rarely sufficient." *Morrison v. United Parcel Serv., Inc*., 2019 WL 109401, at *3 (S.D.N.Y. Jan. 4, 2019). "[T]here must be a steady barrage of opprobrious racial comments." *Miller v. New York State Police*, No. 20-3976, 2022 WL 1133010, at *2 (2d Cir. Apr. 18, 2022) (internal citation and quotation marks omitted).

---

[7] Though Plaintiff's desk was moved to a different location after May 16, 2019, this was done *at her behest* and, in any event, was not an adverse employment action. SOF ¶ 215; *see* Def. FIT's Memo. of Law in Supp. of Motion for Summary Judgment.

Here, Plaintiff's hostile work environment claim (as against all Defendants) consists of no more than six incidents over the course of four-and-a-half years. *See* SOF ¶ 89 (Brenda Cowen's "back of the bus" remark in 2014), ¶ 90 (Barton's "three-fifths" compromise reference in 2016), ¶ 101 (Kyle Farmer's "hood" comment in 2017), ¶ 110 (gifts from Ms. Cowen in 2017), ¶ 119 (Barton's use of the word "bastard" in 2018), ¶¶ 164-95 (May 16, 2019 confrontation). At most, these incidents were "infrequent." *Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 182 (E.D.N.Y. 2015) ("The incidents happened on five occasions over the course of roughly fourteen months …, a rate of occurrence which courts have found to be infrequent."); *Harrison v. State Univ. of N.Y. Downstate Med. Ctr.*, No. 16-CV-1101, 2018 WL 4055278, at *11–12 (E.D.N.Y. July 6, 2018) (dismissing hostile work environment claim where the plaintiff "complain[ed] of five extremely unpleasant interactions"), *adopted by* 2018 WL 4054868 (E.D.N.Y. Aug. 24, 2018). Even assuming, *arguendo*, that all six incidents were racially discriminatory and sufficiently connected to trigger the continuing violations doctrine,[8] no reasonable juror could find they were pervasive enough to constitute "a steady barrage" of discriminatory conduct, *Miller*, 2022 WL 1133010, at *2, or, for that matter, a "systemic culture of racial harassment." *Murray v. Dutchess Cty. Exec. Branch*, No. 17-CV-9121 (KMK), 2019 WL 4688602, at *12 (S.D.N.Y. Sept. 25, 2019) (internal citations omitted).

Second, none of the events Plaintiff points to can reasonably be construed as severe or discriminatory. With the exception of Defendant Barton's discussion of the three-fifths

---

[8] Under the continuing violations doctrine, courts require that at least one act "contributing to [the] hostile environment" take place within the statutory period. *Zuckerman v. GW Acquisition LLC*, No. 20-CV-8742 (VEC), 2021 WL 4267815, at *8 (S.D.N.Y. Sept. 20, 2021). For her Title VII claims against FIT, Plaintiff relies entirely on the events of May 16, 2019—the only allegations to have taken place within the 300-day limitations period—to render the rest of her allegations timely. Section 1981 has a four-year limitations period. *Ray v. Klyczek*, No. 08-CV-488S, 2009 WL 3199606, at *2 (W.D.N.Y. Sept. 30, 2009).

compromise, addressed further *infra*, all of the events alleged by Plaintiff were facially neutral as to race. *See Garvin v. Potter*, 367 F. Supp. 2d 548, 567 (S.D.N.Y. 2005) (granting summary judgment for employer where individual's remarks were "isolated incidents without any reference to hostility based on" protected class). Two of them Plaintiff concedes may not have been racist at all. SOF ¶ 122 (conceding that "bastard" comment was not intended to discriminate), ¶¶ 179-81 (conceding that Barton's remarks on May 16, 2019, were race-neutral and uttered because "she was sick and tired of my shit"); *see also* Baptiste Aff. ¶¶ 5-7. Even if all six incidents *were* race-motivated, and unambiguously so, that still would not revive her claim. Courts have found explicitly discriminatory comments insufficient to sustain a hostile work environment claim where, as here, they were infrequent, uttered by non-decision makers, and did not create an objectively abusive environment. *See, e.g., Ahmad v. White Plains City Sch. Dist.*, No. 18-CV-3416, 2019 WL 3202747, at *8 (S.D.N.Y. July 16, 2019) (dismissing hostile work environment claim where the plaintiff alleged "isolated incidents" of troubling comments by school administrators, such as "we don't like colored people in the department"); *Ariz v. Metropolitan Transportation Auth.*, No. 17-cv-4491, 2019 WL 2613476, at *6 (S.DN.Y. Jun. 26, 2019) (dismissing hostile work environment claim on summary judgment where coworkers called Hispanic plaintiff a "beaner" and said that "President Trump would deport him"), citing No. 17-cv-4491, ECF No. 59-1, ¶ 52. While Plaintiff may have found certain comments personally offensive—or, as she testified at her deposition, inappropriate for a work environment[9]—"[t]he gravamen of [her] claims is rooted in conduct that amounts to nothing

---

[9] Plaintiff's testimony on this point is revealing. Her issue with Barton referencing the three-fifths compromise was concededly <u>not</u> about discrimination—it was about "talk that you do not have in an office environment." SOF ¶ 96. But an employee at a university referencing the existence of racism in the wake of a presidential election is not, on these facts, the same thing as expressing racial animus, much less racial animus so severe as to materially alter someone's working conditions.

more than workplace dynamics." *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 08-CV-7584, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011), *aff'd*, 488 F. App'x 530 (2d Cir. 2012). In other words, the fact that Plaintiff found her colleagues' behavior subjectively offensive does not make it objectively so, as required for a hostile work environment claim. Defendant Barton cannot be held individually liable for contributing to a hostile work environment that never existed.

As for those allegations specific to Barton, no reasonable juror could find that they were severe enough to create a hostile work environment on their own. Plaintiff relies entirely on two off-hand remarks (neither of which was directed at her, one of which she concedes was not discriminatory) and an interaction where Barton raised her voice, cursed at Plaintiff, and allegedly pushed her with one finger. SOF ¶ 90-92, 119-122, 164-95; *see Ariz*, 2019 WL 2613476, at *6 (dismissing hostile work environment claim on summary judgment where the plaintiff alleged "two race-based comments by a coworker and unspecified 'microaggressions'"). Even assuming, *arguendo*, that Barton's comment about the three-fifths compromise was discriminatory,[10] the fact that Plaintiff overheard her say it one time, addressed to someone else, does not create a hostile work environment. *See Green v. Harris Publ'ns, Inc.*, 331 F.Supp.2d 180, 192 (S.D.N.Y.2004) (granting summary judgment to defendant where two racially discriminatory comments overheard by plaintiff and not directed to plaintiff were isolated stray remarks). The fact that Barton is not a supervisor or decisionmaker renders her comments even less probative of a hostile work environment. *Cai v. Wyeth Pharm., Inc.*, No. 09 Civ. 5333(GBD), 2012 WL 933668, at *7 (S.D.N.Y. Mar. 19, 2012) ("[I]t has been settled that stray

---

[10] Notably, Plaintiff herself admitted that Barton's comment could have been an "educational moment" about politics and a reference to racism in the Trump Administration. SOF ¶¶ 91-95. Given Barton's testimony that she has a bachelor's degree in History and was trying to explain the history of the electoral college to a young student, no reasonable juror could conclude that what she said was discriminatory. SOF ¶ 97.

remarks by a non-decision maker are insufficient to establish a *prima facie* case of ...

discrimination."). Ultimately, where "[t]here is only one remark that reference[s] the plaintiff's

[race] in the entirety of [her] hostile work environment allegations," it is "the classic 'stray

remark' which, standing alone, will not support a ... hostile work environment claim." *Rivera v.*

*Brooklyn Hosp. Medical Ctr.*, 28 F.Supp.3d 159, 163 (E.D.N.Y. 2014).

      As for Barton's alleged conduct on May 16, there is no evidence at all to suggest that it

was racially motivated.[11] Plaintiff essentially conceded this in her deposition. SOF ¶¶ 179-80

(conceding no reference was made to race and responding "No, I don't know," when asked

whether anything Barton said on May 16 was racist). And even if Barton did push Plaintiff,

which Umilta Alsop's witness statement establishes she did not (SOF ¶ 177), isolated physical

violence is not sufficient to establish a hostile work environment unless extraordinarily severe.

*See De La Peña v. Metro. Life Ins. Co.*, 953 F.Supp.2d 393, 416–17 (E.D.N.Y.2013) (dismissing

hostile work environment claim where manager made offensive comment about Filipinos and

"hit [plaintiff] on the back, … pushing him forward into a desk," noting that '[c]ourts rarely find

limited incidents of physical violence without a sexual element to establish a hostile work

environment.'") (internal citations omitted). Threats of violence like those alleged here are also

insufficient to establish a hostile work environment. *See Garvin*, 367 F. Supp. 2d at 567

(granting summary judgment for employer where individual's remarks that he would "put his

foot up [the plaintiff's] ass" and break the plaintiff's thumb were "isolated incidents without any

reference to hostility based on" protected class). "[T]he conduct that Plaintiff describes may have

been perceived by her as 'insensitive and offensive,' but '[a] nasty, unpleasant workplace is not a

---

[11] Given the dearth of evidence to suggest that Barton's conflict with Plaintiff was racially motivated, concluding otherwise could result in the creation of a very slippery slope. The fact that two people in an argument belong to different protected classes, without more, is simply insufficient to form the basis of a discrimination claim.

hostile environment,' and "suspicions of [racial] discrimination as a motive cannot alone defeat summary judgment." *Aiken v. MTA New York City Transit*, No. 18CV11756 (GBD) (DF), 2021 WL 6621579, at \*19 (S.D.N.Y. Sept. 2, 2021), *adopted by* 2021 WL 4481094 (S.D.N.Y. Sept. 29, 2021), quoting *Garvin*, 367 F. Supp. 2d at 567.

## II. Plaintiff Cannot Establish the Essential Elements of a Retaliation Claim Under § 1981[12]

A *prima facie* case of retaliation requires Plaintiff to "demonstrate that '(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (citation omitted); *Villavicencio v. Gure-Perez*, 56 F. Supp. 3d 178, 189-90 (E.D.N.Y. 2014) (using same analysis for § 1981 claim). Plaintiff cannot establish that she engaged in a protected activity or that her doing so resulted in a materially adverse action.[13]

First, because no reasonable person in Plaintiff's position could have believed that a handful of race-neutral incidents over the course of several years created a hostile work environment, Plaintiff did not engage in protected activity for purposes of a § 1981 retaliation claim. "When a plaintiff has alleged facts that, even if taken as true, do not support a *prima facie* Title VII claim, the plaintiff did not have" a reasonable, good faith belief that the alleged conduct

---

[12] Retaliation claims under the NYSHRL are analyzed by the same standards as § 1981 and Title VII. *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020). Plaintiff's NYSHRL retaliation claim therefore fails for the same reasons as her § 1981 retaliation claim. As for Plaintiff's "aiding and abetting retaliation" claim under the NYSHRL, there can be no aiding and abetting liability where there is no liability on behalf of the principal. *Davis-Bell*, 851 F. Supp. 2d at 688. Thus, because FIT did not retaliate under Title VII or Section 1981, *see* Def. FIT's Mem. of Law, it is impossible for Barton to have "aided and abetted" retaliation.

[13] As a preliminary matter, Plaintiff's retaliation claim against Defendant Barton is only viable under § 1981 if the Court accepts that her April 2018 complaint was about a hostile work environment. This, as discussed above, is because Barton was not a supervisor and did not have the power to impact the contractual terms and conditions of Plaintiff's employment—*except* in the case of hostile work environment. *See Jean-Louis*, 2010 WL 3023943, at \*4; *Eugenio v. Walder*, No. 06 CIV. 4928 CS GAY, 2009 WL 1929311, at \*29 (S.D.N.Y. Mar. 3, 2009) (plaintiffs failed to demonstrate protected activity where, *inter alia*, they did "not assert … an employee/employer relationship giving rise to … a contract-related right").

violated federal law. *Ghirardelli v. McAvey Sales & Serv., Inc.*, 287 F.Supp.2d 379, 385–86 (S.D.N.Y.2003); *Ferguson v. New Venture Gear, Inc.*, No. 5:04-CV-1181 FJS/GHL, 2009 WL 2823892, at *7 (N.D.N.Y. Aug. 31, 2009) ("No objectively reasonable person could have believed that Defendant NVG's plant was in the grip of a hostile work environment infected by severe or pervasive racism based on the September 27, 2003 comments of three of Plaintiffs' white co-workers."). As discussed in Point II(B)(i), Plaintiff cannot establish a *prima facie* case of hostile work environment. And even if a jury were to accept that Plaintiff's colleagues were all racist, "the mere fact that one's *coworker* has revealed himself to be racist is not enough to support an objectively reasonable conclusion that the *workplace* has likewise become racist." *Id.*, at *6, *quoting Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 341 (4th Cir. 2006) (emphasis in original).

With regard to the third prong of the *prima facie* retaliation test, no reasonable juror could find that the May 16, 2019 incident was materially adverse. A materially adverse action for purposes of retaliation is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (internal citations omitted). According to Plaintiff, Defendant Barton pushed her with one finger and screamed, *inter alia*, "I'm tired of your shit" and "I'm going to fucking kill you." SOF ¶¶ 171, 176. It was an isolated incident that FIT immediately redressed and that had no impact on Plaintiff's job. SOF ¶¶ 26, 187, 209, 211-12, 215; *see Rodas v. Town of Farmington*, 567 F. App'x 24, 27 (2d Cir. 2014) (finding no retaliation where plaintiff "admitted that he experienced no diminution in pay, position, or benefits after making the complaints at issue"). Moreover, courts have held that yelling and making empty threats are not materially adverse actions. *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 571

(2d Cir. 2011) (characterizing threat "made in the course of a heated conversation" and "never carried out" as "trivial harms" and "petty slights or minor annoyances" insufficient to support retaliation claim); *Martinez v. N.Y.C. Dep't of Educ.*, No. 04–CIV–2728 (LTS)(DFE), 2008 WL 2220638, at *12 (S.D.N.Y. May 27, 2008) ("[I]ncidents where [supervisor] publicly yelled at [plaintiff] for various reasons or called him 'shit' ... constitute, as a matter of law, the sorts of petty slights and personality conflicts that are not actionable."). Though physically aggressive behavior can constitute a materially adverse action for purposes of retaliation, *Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520, 532 (S.D.N.Y. 2008), no reasonable juror could find that Barton's conduct rose to that level. *Compare* SOF ¶¶ 171-78, *with Gallo*, 585 F. Supp. 2d at 532 (bad actor physically assaulted plaintiff twice, once grabbing his arm and closing him in his office, once "slam[ing]" him against the door, grabbing his arm, and pushing him toward the wall).

Finally, no reasonable juror could find "but-for" causation between Plaintiff's discrimination complaint and Defendant Barton's behavior on May 16, 2019. The May 16 incident was a spontaneous confrontation in the heat of the moment that took place more than a year after Plaintiff's discrimination complaint. SOF ¶¶ 88, 183; *see Feliciano v. City of New York*, No. 14 Civ. 6751 (PAE), 2015 WL 4393163, at *10 (S.D.N.Y. July 15, 2015) (collecting cases requiring adverse action to occur within approximately two months of plaintiff's protected activity). Plaintiff herself, in the immediate aftermath of the incident, characterized it not as retaliation but as a "difference of opinion about an office matter." SOF ¶ 185. These facts significantly undermine any argument that Plaintiff's discrimination complaint was the "last straw." Plaintiff's retaliation claim must therefore be dismissed.

13

### III. **Plaintiff's NYCHRL Claims Also Fail as A Matter of Law**[14]

A. Defendant Barton Neither Discriminated nor Aided and Abetted Discrimination

Discrimination under the NYCHRL consists of being treated "less well" because of race.

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 109-10 (2d Cir. 2013);

*Deveaux v. Skechers USA, Inc*., 19cv9734 (DLC), 2020 WL 1812741, at *5 (S.D.N.Y. Apr. 9,

2020) ("Employees may be held personally liable under … the NYCHRL if they participate in

the conduct giving rise to a discrimination claim."). For the same reasons previously discussed,

including the fact that Plaintiff's position and standing at FIT remain unharmed by the

complained-of conduct, Plaintiff cannot prove she was treated "less well" because of her race.

Even if she could, Defendant Barton is still entitled to summary judgment because no reasonable

jury could conclude that her conduct amounted to anything more than "petty slights." *Mihalik*,

715 F.3d at 111.

Plaintiff complains of three innocuous acts by Defendant Barton that were neither racially

discriminatory nor harmful: (1) her reference to the three-fifths compromise, (2) her reference to

the word "bastard," and (3) her conduct on May 16, 2019.[15] SOF ¶ 90-92, 119-122, 164-95. With

respect to the first, there is no evidence to suggest that Barton's comment was anything more

than the retelling of a grave historical fact (to someone who was not Plaintiff) during a

conversation about politics. SOF ¶¶ 91-94, 97. Plaintiff herself recognized this possibility in her

early statements to the Affirmative Action Office. SOF ¶¶ 92-95. This does not amount to

---

[14] In the event the Court grants summary judgment on Plaintiff's federal claims but allows her NYCHRL claims to proceed to trial, Defendant Barton requests that the Court deny supplemental jurisdiction over those claims. *See Espinoza v. New York City Dep't of Transportation*, 304 F. Supp. 3d 374, 391 (S.D.N.Y. 2018) ("Courts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's NYCHRL claims after dismissing all federal claims.") (collecting cases).

[15] Comments and actions attributed to Farmer and Cowen were equally benign and not discriminatory. SOF ¶¶ 89, 101, 110.

treating Plaintiff "less well" in the terms of conditions of her employment. Even less likely to support a claim of discrimination is Defendant's "bastard" comment, which Plaintiff concedes was not made to discriminate against her. SOF ¶ 122. Finally, there is absolutely no evidence in the record to suggest that Barton's conduct on May 16 was "because of" Plaintiff's race. Plaintiff's allegations amount to nothing more than "petty slights and trivial inconveniences." *Compare* SOF ¶¶ 179-81, *with Aiken*, 2021 WL 6621579, at *19 (characterizing "remarks by a manager that actively disparage a subordinate's religion or that threaten that she would be penalized for engaging in her religious practices" as more than "petty" or "trivial").

For the same reasons, even if FIT could be found liable for discrimination under the NYCHRL, no reasonable juror could find that Defendant Barton "aided and abetted" in that discrimination with her race-neutral remarks and behavior on May 16, 2019. *Davis-Bell*, 851 F. Supp. 2d at 688.

B. Plaintiff Cannot Establish Retaliation Because She Did Not Engage in Protected Activity

In order to prevail on her NYCHRL retaliation claim, "[P]laintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112.[16] As with Plaintiff's § 1981 claims, she must also establish that she had a "reasonable, good faith belief" the complained-of conduct was unlawful under the NYCHRL. *Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 580 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013).

---

[16] Retaliation claims under the NYCHRL are subject to a broader standard than under the NYSHRL and Section 1981 and may be brought against coworkers with no supervisory authority. *McHenry v. Fox News Network*, LLC, 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020); *Dillon v. Ned Mgmt., Inc*., 85 F. Supp. 3d 639, 662 (E.D.N.Y. 2015).

For the same reasons discussed in the context of her § 1981 claims, Plaintiff cannot establish that she engaged in protected activity even under the liberally construed NYCHRL. Plaintiff concedes that Barton's "bastard" comment was not discriminatory, and that Barton's reference to the three-fifths compromise was (a) not directed at her, and (b) could have been an "educational moment" about Trump being racist. SOF ¶¶ 91-95. Plaintiff further concedes that her objection to the remark was about what is and is not appropriate to say in an "office environment," which is conduct not even the NYCHRL is interested in regulating. SOF ¶ 96. Plaintiff's remaining complaints, which concern comments by Farmer and Cowen, were similarly unreasonable and clearly not discriminatory or racially biased. SOF ¶¶ 89, 101, 110.

C. Barton Did Not Interfere with Plaintiff's Protected Rights under the NYCHRL

Under § 8–107(19) of the NYCHRL, it is unlawful "for any person to coerce, intimidate, threaten or interfere with ... any person in the exercise or enjoyment of ... any right granted or protected pursuant to [§ 8–107]." N.Y. City Admin. Code § 8–107(19). "To establish interference, a plaintiff must show that a threat was made against him *because of* his exercise of a protected right." *Macias v. Barrier Free Living, Inc*., No. 16 CIV. 1735 (ER), 2018 WL 1603566, at *9 (S.D.N.Y. Mar. 28, 2018) (emphasis added, internal citation omitted). As defined in the Second Circuit, a "threat" for purposes of an interference claim is the creation of "[a]n impression of impending injury." *Sletten v. LiquidHub, Inc*., No. 13 CIV. 1146 NRB, 2014 WL 3388866, at *5 (S.D.N.Y. July 11, 2014), quoting *United States v. Davila*, 461 F.3d 298, 302 (2d Cir. 2006).

Plaintiff's claim fails for two reasons. First, no juror could reasonably find that Barton's empty threat to "kill" Plaintiff on May 16, 2019, uttered during a heated confrontation, was "because of" Plaintiff's discrimination complaint over a year earlier. It was a spontaneous

16

response to the events immediately preceding it—that is, Plaintiff's decision to pester Barton over how she handled a student's request for graduation regalia. SOF ¶¶ 167-73, 181, 184. Second, no reasonable juror could find that Barton created "an impression of impending injury." She was holding multiple coffee cups and stirrers at the time of the alleged threat and was separated from Plaintiff by a desk with a 12-inch vertical divider. SOF ¶¶ 174-75. The fact that she may have touched Plaintiff with her finger hardly changes this analysis. SOF ¶ 176. Had Plaintiff actually feared impending injury, she would not have risen from her seat and approached the person who was supposedly threatening to kill her. SOF ¶ 178.

### IV. <u>Plaintiff's Tort Claims Are Similarly Meritless</u>

#### A. <u>Barton's Conduct Was Neither Extreme nor Outrageous</u>

The tort of intentional infliction of emotional distress ("IIED") "is strongly disfavored" in New York. *Ibraheem v. Wackenhut Services, Inc.*, 29 F. Supp. 3d 196, 215 (E.D.N.Y. 2014). This is particularly true in employment discrimination cases. *Curcio v. Roosevelt Union Free Sch. Dist.*, No. 10-CV-5612 (SJF), 2012 WL 3646935, at *21 (E.D.N.Y. Aug. 22, 2012) ("The New York Court of Appeals has rarely allowed a plaintiff to sustain a claim for intentional infliction of emotional distress in an employment discrimination case."). Here, Plaintiff's IIED claim fails because she already alleges the tort of assault (and could have, but chose not to, allege battery) and because her conduct was far from "extreme and outrageous."[17]

---

[17] A cause of action for intentional infliction of emotional distress in New York has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Chanko v. Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 56-57 (2016). "'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community'" *Id.* Whether a plaintiff's allegations "may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court in the first instance." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999).

First, "state courts and federal district courts in this Circuit have consistently held that the tort of [IIED] may not be used as a substitute for an available traditional tort theory." *Caravalho v. City of New York*, 13 cv 4174 (PKC)(MHD), 2016 WL 1274575, at \*23 (S.D.N.Y. Mar. 31, 2016) (internal quotation marks and citation omitted). Plaintiff already asserts an assault charge against Defendant Barton for exactly the same conduct. *See* Compl. ¶¶ 73-75. Moreover, Plaintiff could have—but apparently chose not to—assert a battery charge for the unwanted touching. *DiRuzza v. Lanza*, 685 F. App'x 34, 37 (2d Cir. 2017) ("As to the single physical altercation alleged, that conduct was 'actionable under state law as a battery,' and, therefore, could not be pursued as an intentional infliction of emotional distress claim.") (internal citation omitted). This necessarily defeats her IIED claim.

Even if this were not the case, Barton's conduct was nowhere near "extreme and outrageous" enough to qualify as IIED. "Mere threats, annoyance or other petty oppressions, no matter how upsetting, are insufficient to constitute the tort of intentional infliction of emotional distress." *Owen v. Leventritt*, 174 A.D.2d 471, 472, 571 N.Y.S.2d 25, 25–26 (1st Dept. 1991) (dismissing IIED claim where defendant threatened to kill plaintiff). Yelling and screaming threats and obscenities and pushing Plaintiff with a single finger, though inappropriate and likely startling, do not "go beyond all possible bounds of decency" so as to be "regarded as atrocious, and utterly intolerable in a civilized community." *Chanko*, 49 N.E.3d at 1178-79; *DiRuzza*, 685 F. App'x at 37 ("Actions likely to be considered reprehensible by most people are not sufficient.") (no IIED where individual "repeatedly confronted him in a loud and threatening manner" and where plaintiff alleged "only a half dozen instances of harassment over approximately two years"); *Seltzer v. Bayer*, 709 N.Y.S.2d 21, 23 (App. Div. 2000) (holding that the defendant's alleged dumping of a pile of cement, tossing of lighted cigarettes, and drawing of

a swastika on his neighbor's house did not constitute conduct sufficiently outrageous to survive a motion for summary judgment). Indeed, yelling at work does not even constitute an adverse employment action. *Ziyan Shi*, 393 F. Supp. 3d at 338-39. The fact that Barton may have made physical contact with Plaintiff, with a single finger to her breastbone and touching her only one time, does not move the needle into "extreme" or "outrageous" territory. SOF ¶ 176; *Lewis Fam. Grp. Fund LP v. JS Barkats PLLC*, No. 16CV5255AJNJLC, 2021 WL 1203383, at *12 (S.D.N.Y. Mar. 31, 2021), *adopted by* 2021 WL 4341080 (S.D.N.Y. Sept. 23, 2021) ("Courts are reluctant to allow recovery under the banner of intentional infliction of emotional distress absent a deliberate and malicious *campaign* of harassment or intimidation.") (emphasis added). The weaknesses of Plaintiff's claim are only further supported by the fact that Plaintiff did not seek a protective order, despite knowing that she could; the police declined to pursue charges against Barton, noting "this wasn't something they could file charges for"; and Plaintiff did not seek mental health treatment until months later. SOF ¶¶ 193-95. Her IIED claim fails as a matter of law.

B. Plaintiff's Assault Claim Fails Because She Cannot Establish the "Intent" and "Reasonableness" Elements

"Under New York law, civil assault is an intentional placing of another person in fear of imminent harmful or offensive contact." *Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021) (internal quotation marks and citations omitted). Barton's threat to "kill" Plaintiff is insufficient as a matter of law to constitute common law assault. First, there is no evidence in the record to suggest that Barton *intended* to place Plaintiff in apprehension of imminent harm. *See Sutter v. Dibello*, No. CV18817ADSAKT, 2019 WL 4195303, at *25 (E.D.N.Y. Aug. 12, 2019), *adopted by* 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019) (collecting cases); SOF ¶ 172 (testifying that she "didn't mean" it and that "it's something people say sometimes in anger"). "Second, to

state an assault claim, the apprehension Plaintiff alleges she suffered as a result of [Barton's] conduct must be reasonable." *Id.* (internal quotation marks and citation omitted); *Joon Song v. MHM Sponsors Co*., 176 A.D.3d 572, 573, 111 N.Y.S.3d 581, 582 (2019) ("Likewise, plaintiff's claim for civil assault based on screaming, threats, and having a door slammed in his face failed to allege facts that would establish that physical contact was reasonably imminent.").

During the confrontation at issue, Barton was holding multiple coffee cups and stirrers and was separated from Plaintiff by a desk with a 12-inch vertical divider. SOF ¶¶ 174-75. As Plaintiff concedes, it was the first and only time that Barton, a 55-year-old woman who had worked with Plaintiff in the same office for eight years, had ever behaved like this or displayed any kind of hostile or aggressive behavior. SOF ¶¶ 174, 182-83. It is patently unreasonable for Plaintiff to claim that she feared imminent harm under these circumstances. Indeed, despite Plaintiff's claims that she suffered greatly after this episode, she did not seek help from a psychologist until August 2019. SOF ¶ 195.

As for Barton allegedly "pushing" Plaintiff in the chest with her finger, the fact that Plaintiff approached Barton in the immediate aftermath of her allegedly doing so demonstrates that she did not actually perceive herself to be under threat of imminent harm. SOF ¶ 178; *see also* SOF ¶ 177 (Alsop statement noting that physical contact was merely incidental, caused by Plaintiff standing up when she did). Similarly, the act of touching someone with a single finger surely does not rise to the level of menacing conduct required for common law assault. *See, e.g., Carroll v. Bayeriche Landesbank*, 125 F. Supp. 2d 58, 65 (S.D.N.Y. 2000) ("Words not accompanied by circumstances inducing a reasonable apprehension of bodily harm, *such as movements of drawing back a fist, aiming a blow, or the show of a weapon*, do not constitute an assault.") (internal quotation marks and citation omitted, emphasis added).

20

## **CONCLUSION**

In light of the foregoing, Defendant Barton respectfully requests the Court grant summary judgment in her favor and dismiss all of Plaintiff's claims against her.


Dated: June 9, 2022
        New York, New York

                                    MENKEN SIMPSON & ROZGER LLP

                                    *s/ Bruce E. Menken*
                                    *s/ Raya F. Saksouk*
                                    80 Pine St., 33rd Fl.
                                    New York, NY 10005
                                    Tel.: 212-509-1616
                                    Fax: 212-509-8088
                                    bmenken@nyemployeelaw.com

                                    *Attorneys for Defendant Barton*