UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARJORIE PHILLIPS,

                                        Plaintiff,

                    - against -                                        20 Civ. 00221 (GBD)

THE FASHION INSTITUTE OF TECHNOLOGY, MARY
DAVIS and MARILYN BARTON,

                                        Defendants.


### THE FASHION INSTITUTE OF TECHNOLOGY'S
### <u>MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT MOTION</u>


**NIXON PEABODY LLP**
275 Broadhollow Road, Suite 300
Melville, New York 11747
(516) 832-7500

*Attorneys for Defendant*
    *The Fashion Institute of Technology*


Of Counsel:
    Tara E. Daub, Esq.

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ............................................................................5

ARGUMENT ...........................................................................................5

**POINT I**

    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ...........5

**POINT II**

    ALL OF PLAINTIFF'S TITLE VII CLAIMS ARE TIME-BARRED AND
    BARRED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES,
    EXCEPT FOR HER HOSTILE WORK ENVIRONMENT CLAIM
    BASED ON THE MAY 2019 INCIDENT WITH BARTON ...........................6

        A.    Plaintiff Failed to Exhaust Administrative Remedies Except for the
             May 2019 Barton Incident .........................................................6

        B.    Plaintiff's Claims are Time-Barred Except for the May 2019
             Barton Incident...........................................................................7

**POINT III**

    PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RACE
    DISCRIMINATION BASED ON DISPARATE TREATMENT UNDER
    TITLE VII OR SECTION 1981 ........................................................7

        A.    Plaintiff Did Not Suffer Any Adverse Employment Actions ....................8

             1.    Plaintiff's Failure Apply for Promotion Was Not an Adverse
                    Employment Action .........................................................9

             2.    Any Purported "Delay" in FIT Completing its Investigation
                    of the April 2018 AA Office Complaint Does Not Constitute
                    An Adverse Employment Action......................................11

             3.    Plaintiff's Office Relocation Was Not an Adverse Employment
                    Action......................................................................12

i

B.      The Alleged Coworker "Stray Remarks" Do Not Raise an
Inference of Discrimination ........................................................................13

C.      Plaintiff Cannot Establish an Inference of Discrimination
Because There is No Evidence of Disparate Treatment ...........................13

D.      Plaintiff Can Point to No Evidence from Which a Reasonable
Jury Could Conclude That FIT's Legitimate, Non-Discriminatory
Reasons were Pretextual ...........................................................................15

E.      Plaintiff Cannot Prove her Race was the "But For" Cause of the
Purported Discrimination to Satisfy Her Burden Under Section 1981......15

**POINT IV**

PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM CANNOT
WITHSTAND SUMMARY JUDGMENT...................................................16

A.      Plaintiff is Unable to Establish that the Earlier Remarks by her
Coworkers Constitute a Hostile Work Environment Based on Race ........17

B.      The Undisputed Record Demonstrates that the Alleged May 2019
Barton Incident was Neither "Because of" Plaintiff's Race Nor
Sufficiently Severe or Pervasive to Create a Hostile
Work Environment .....................................................................................19

**POINT V**

PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW...............21

A.      FIT Did Not Take Any Adverse Employment Action After The
Protected Activity ......................................................................................22

B.      Plaintiff Cannot Establish Any Causal Connection to An
Adverse Action ..........................................................................................23

**POINT VI**

PLAINTIFF'S NEGLIGENCE CLAIM AGAINST FIT IS BARRED .......................24

CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Addo v. N.Y. Health & Hosps. Corp.,
  No. 15-CV-8103 (RA), 2017 U.S. Dist. LEXIS 176916 (S.D.N.Y. Oct. 25,
  2017) ...........................................................................................................................17

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986)......................................................................................................5

Arbouin v. Bob's Disc. Furniture, LLC,
  2021 U.S. Dis. LEXIS 124119 (E.D.N.Y. June 30, 2021) .....................................24

Benn v. City of New York,
  482 F. App'x 637 (2d Cir. 2012) ...............................................................................21

Bickerstaff v. Vassar Coll.,
  196 F.3d 435 (2d Cir. 1999).......................................................................................18

Boise v. N.Y. Univ.,
  No. 03 Civ. 582 (RWS), 2005 U.S. Dist. LEXIS 26378 (S.D.N.Y. Nov. 3,
  2005) ...........................................................................................................................19

Brown v. City of Syracuse,
  673 F.3d 141 (2d Cir. 2012).........................................................................................9

Brown v. Henderson,
  257 F.3d 246 (2d Cir. 2001)........................................................................................17

Burlington Northern & Santa Fe Railway v. White,
  548 U.S. 53 (2006).......................................................................................................21

Camoia v. City of New York,
  No. 09 CV 2545 (NGG) (LB), 2018 U.S. Dist. LEXIS 120184 (E.D.N.Y. July
  16, 2018) ......................................................................................................................17

Chansamone v. IBEW Local 97,
  523 F. App'x 820 (2d Cir. 2013) ...............................................................................16

Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media,
  140 S. Ct. 1009 (2020)............................................................................................8, 15

Cruz v. Coach Stores, Inc.,
  202 F.3d 560 (2d Cir. 2000).......................................................................................16

Cunningham v. N.Y. State Dep't of Labor,
     No. 1:05-CV-1127-DNH-RFT, 2010 U.S. Dist. LEXIS 42943 (N.D.N.Y. Apr.
     30, 2010) aff'd, 2011 U.S. App. LEXIS 9977 (2d Cir. May 16, 2011) ............................12, 23

Damon v. UPS,
     No. 04-CV-0746S, 2010 U.S. Dist. LEXIS 116634 (W.D.N.Y. Oct. 31, 2010) ....................15

Delaware State Coll. v. Ricks,
     449 U.S. 250 (1980) ................................................................................................................7

Demoret v. Zegarelli,
     451 F.3d 140 (2d Cir. 2006) ..................................................................................................16

Desardouin v. City of Rochester,
     708 F.3d 102 (2d Cir. 2013) ..................................................................................................17

Duch v. Jakubek,
     588 F.3d 757 (2d Cir. 2009) ..................................................................................................17

Early v. Wyeth Pharms., Inc.,
     603 F. Supp. 2d 556 (S.D.N.Y. 2009) ..................................................................................17

Faktorovich v. Mem'l Sloane-Kettering Cancer Ctr.,
     578 F. App'x 41 (2d Cir. 2014) ...............................................................................................6

Fincher v. Depository Trust & Clearing Corp.,
     604 F.3d 712 (2d Cir. 2010) .............................................................................................12, 22

Fleming v. MaxMara USA, Inc.,
     371 F. App'x 115 (2d Cir. 2010) ...........................................................................................21

Fort Bend Cty. v. Davis,
     139 S. Ct. 1843 (2019) .............................................................................................................6

Sekyere v. City of New York,
     No. 05 Civ. 7192 (BSJ) (DCF), 2009 U.S. Dist. LEXIS 28960 (S.D.N.Y. Mar.
     18, 2009) ................................................................................................................................14

Gorzynski v. Jetblue Airways Corp.,
     596 F.3d 93 (2d Cir. 2010) ....................................................................................................21

Grimes v. Sil,
     No. 19-cv-01066 (AMD), 2020 U.S. Dist. LEXIS 54290 (E.D.N.Y. Mar. 27,
     2020) ......................................................................................................................................12

Hahn v. Bank of Am. Inc.,
     No. 12 Civ. 4151 (DF), 2014 U.S. Dist. LEXIS 45886 (S.D.N.Y. Mar. 31,
     2014) ......................................................................................................................................18

Harrison v. U.S. Postal Service,
    No. 06 Civ. 13131 (GBD), 2010 U.S. Dist. LEXIS 83801 (S.D.N.Y. Aug. 10,
    2010) (Daniels, J.)...................................................................................................................9

Hicks v. Baines,
    593 F.3d 159 (2d Cir. 2010)...................................................................................................21

James v. New York Racing Ass'n,
    233 F.3d 149 (2d Cir. 2000)......................................................................................................8

Jones v. Int'l Union of Operating Engineers,
    155 F. Supp. 3d 191 (N.D.N.Y. 2015), aff'd, 671 F. App'x 10 (2d Cir. 2016)......................10

Joseph v. Leavitt,
    465 F.3d 87 (2d Cir. 2006)........................................................................................................9

Lane v. Collins & Aikman Floorcoverings, Inc.,
    No. 00 Civ. 3241 (RMB), 2001 U.S. Dist. LEXIS 17757 (S.D.N.Y. Oct. 30,
    2001) ......................................................................................................................................19

Litten v. GM Components Holdings, LLC,
    No. 19-CV-926S, 2022 U.S. Dist. LEXIS 41768 (W.D.N.Y. Mar. 9, 2022) .........................17

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986).................................................................................................................5

McBride v. BIC Consumer Prods. Mfg. Co.,
    583 F.3d 92 (2d Cir. 2009).......................................................................................................8

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973).............................................................................................................8, 9

Morris v. New York City Health & Hosp. Corp.,
    No. 09-CV-5692 (MKB) (ST), 2018 U.S. Dist. LEXIS 136621 (E.D.N.Y.
    Aug. 10, 2018) ........................................................................................................................21

Nat'l R.R. Passenger Corp. v. Morgan,
    536 U.S. 101 (2002).................................................................................................................7

Noel v. Interpublic Grp. of Co's Inc.,
    No. 12 Civ. 2996 (HB), 2013 U.S. Dist. LEXIS 68067 (S.D.N.Y. May 13,
    2013) ......................................................................................................................................10

Nurse v. Lutheran Med. Ctr.,
    854 F. Supp. 2d 300 (E.D.N.Y. 2012) ...................................................................................14

O'Connor v. Viacom, Inc.,
    No. 96-7641, 1996 U.S. App. LEXIS 32986 (2d Cir. Dec. 16, 1996)....................................13

Petrosino v. Bell Atlantic,
    385 F.3d 210 (2d Cir. 2004)....................................................................................10

Reeves v. Sanderson Plumbing Prods, Inc.,
    530 U.S. 133 (2000)..............................................................................................15

Robinson v. Harvard Prot. Servs.,
    495 F. App'x 140 (2d Cir. 2012) ..........................................................................16

Rodriguez v. Hostos Cmty. Coll.,
    No. 20-cv-8143, 2021 U.S. Dist. LEXIS 192080 (S.D.N.Y. Oct. 5, 2021)................20, 24, 25

Roge v. NYP Holdings, Inc.,
    257 F.3d 164 (2d Cir. 2001)..................................................................................15

Sealy v. Hertz Corporation,
    688 F. Supp. 2d 247 (S.D.N.Y. 2009) (Daniels, J.) ........................................16, 24

Sharpe v. MCI Commc'n Servs.,
    684 F. Supp. 2d 394 (S.D.N.Y. 2010) ...................................................................19

Sharpe v. Utica Mut. Ins. Co.,
    756 F. Supp. 2d 230 (N.D.N.Y. 2010) ...................................................................21

Silver v. City Univ. of N.Y.,
    947 F.2d 1021 (2d Cir. 1991)...................................................................................5

Simpri v. City of New York,
    No. 00 Civ. 6712, 2003 U.S. Dist. LEXIS 23266 (S.D.N.Y. Dec. 30, 2003)..........13

Stembridge v. City of New York,
    88 F. Supp. 2d 276 (S.D.N.Y. 2000).......................................................................19

Taylor v. City of New York,
    207 F. Supp. 3d 292 (S.D.N.Y. 2016).......................................................................7

Turner v. NYU Hosp. Ctr.,
    784 F. Supp. 2d 266 (S.D.N.Y. 2011) (Daniels, J.) ..............................................5, 8

Univ. of Texas Sw. Med. Ctr. v. Nassar,
    570 U.S. 338 (2013)................................................................................................21

Vivenzio v. City of Syracuse,
    611 F.3d 98 (2d Cir. 2010).......................................................................................9

Wu v. Good Samaritan Hosp. Med. Ctr.,
    815 F. App'x 575 (2d Cir. 2020) ...........................................................................7, 8

## PRELIMINARY STATEMENT

Defendant Fashion Institute of Technology ("FIT") submits this memorandum of law with the accompanying Declaration of Tara E. Daub, Esq. ("Daub Decl."), the Affidavits of Dr. Cynthia Glass ("Glass Aff.") and Anton Baptiste ("Baptiste Aff."), the Defendants' Joint Local Rule 56.1 Statement of Material Facts, and the accompanying exhibits, in support of FIT's motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Complaint filed by Plaintiff Marjorie Phillips ("Plaintiff") in its entirety.

Plaintiff filed this action claiming that FIT should be liable for race discrimination, race-based harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981").

FIT hired Plaintiff, who is African-American, in 1995 as a clerical assistant. Throughout Plaintiff's employment, the terms and conditions of her employment were governed by the collective bargaining agreement ("CBA") between FIT and her union. Under the CBA's terms, Plaintiff received salary step increases; applied for promotions through job postings to receive an "upgrade" on the salary schedule; and obtained a "reevaluation" of her job title that resulted in the reclassification and upgrade of her job title to Office Associate in December 2005. Plaintiff reached the top step in salary for her Office Associate position in September 2017. Plaintiff remains employed at FIT as an Office Associate at the CBA's top step for her title.

Plaintiff's hostile work environment harassment claim arises from a verbal argument that occurred between her and a coworker, Defendant Marilyn Barton ("Barton"), on May 16, 2019. Plaintiff and Barton were both long-time employees of FIT with tenure rights, both in the union, and both had worked together in the School of Graduate Studies for many years.  Plaintiff does not allege that Barton used any racial slurs or that the argument itself had to do with Plaintiff's race.  Plaintiff testified that Barton yelled and pointed her finger at her over a work-related

disagreement.  Both employees reported the incident immediately to FIT and Barton apologized for her own conduct.  FIT's Human Resources office promptly investigated the matter and took remedial action, including but not limited to, suspending Barton through the CBA's discipline procedures after consultation with the union, as required, imposing mandatory counseling and training for Barton, and offering both employees dispute resolution services.  Plaintiff admits that Barton engaged in no further hostile behavior toward her.  Despite this, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC Charge") in August 2019 asserting that Barton created a racially hostile work environment by yelling at her that day.

Plaintiff's race-based hostile work environment claim against FIT based on the May 2019 Barton incident fails as a matter of law.  Plaintiff cannot show that Barton yelled or pointed at her that day based on her race, or that her conduct was objectively and racially offensive, or severe or pervasive. Nor is there any basis to impute liability to FIT.

Despite Plaintiff's EEOC Charge mentioning nothing about it, she now speculates that Barton yelled at her on May 16, 2019 due to Plaintiff having filed an internal complaint with FIT's Affirmative Action Office ("AA Office") in April 2018 – over a year earlier – about Barton's alleged comment to a student aide in Fall 2016 that Plaintiff partially overheard.  The day after Hillary Clinton lost the 2016 presidential election, Barton was speaking with the student aide about their shared disappointment with the election result.  The student aide was unable to understand how Donald Trump could win the election despite losing the popular vote. Barton, who has a Bachelor's Degree in History, was explaining the problems created by the electoral college system to the student aide and discussing the historical "three-fifths compromise" between delegates from the Northern and the Southern states at the United States Constitutional Convention in 1787, that three-fifths of the slave population would be counted for determining representation in the House of Representatives.  Plaintiff overheard only Barton's

reference to the "three-fifths" compromise, expressed offense, and Barton clarified the nature of the discussion.  For similar reasons, Plaintiff's retaliation claim against FIT based on the May 2019 Barton incident also fails as a matter of law.

Other than Barton's 2016 explanation of the "three-fifths compromise", Plaintiff's allegations regarding a racially hostile work environment rest on two (2) similarly isolated comments by other coworkers from years earlier – which she also did not include in her August 2019 EEOC Charge.  Specifically, Plaintiff alleges that: (1) in 2014, her coworker Brenda Cowan invited her to join a gossip session with another coworker by jokingly saying, "come and join us at the back of the bus"; and (2) in 2017, Plaintiff's coworker Kyle Farmer misguidedly complimented Plaintiff's fashion sense as she put on her coat, by saying that she looked like she was "going to the hood." The next day, Plaintiff spoke to Farmer about his word choice, and she reported that he "apologized profusely" and "thanked [Plaintiff] for saying something to him."

Plaintiff did not report these alleged comments by Cowan (2014), Barton (2016) and Farmer (2017) internally to anyone at FIT until years later, when she filed her AA Office complaint in 2018, after she overheard Barton tell a story about her cousin referring to himself as a "bastard."  At her deposition, Plaintiff conceded that while she believed this comment was insensitive, it was not made to discriminate against her.

Plaintiff's race harassment claims against FIT based on these coworker comments fail as a matter of law.  Not only is the Title VII claim barred as untimely and under the exhaustion doctrine, but Plaintiff cannot show that the alleged comments were based on her race, objectively offensive, or severe or pervasive. Nor is there any basis to impute liability to FIT.

Plaintiff also claims that she suffered adverse employment actions after the May 2019 incident between her and Barton, based on either race discrimination or retaliation.  But Plaintiff cannot point to any adverse employment action as a result of this incident. While Plaintiff's seat

was relocated, at her own request, after she expressed discomfort working near Barton, Second Circuit courts have held that a seat relocation is not an adverse employment action.

Attempting to show disparate treatment or retaliation, Plaintiff alleges that Defendant FIT denied her a promotion with salary increase.  Specifically, Plaintiff alleges that in July or early August 2017, she had a discussion with Defendant Dr. Mary Davis ("Dean Davis") about Dean Davis's interest in assigning her additional responsibilities in the future that could result in a promotional "upgrade" in her job title and salary.  According to Plaintiff, Dean Davis tasked her with obtaining some examples of potential job titles and job descriptions from Human Resources, but Plaintiff admits she simply never followed up with her.  Plaintiff was aware in 2017 that she had not been promoted.  Plaintiff admits that she simply assumed that Dean Davis would not support her for a promotion after Plaintiff filed her AA Office complaint against her coworkers in April 2018.  Further, to the extent that Plaintiff had any interest in an upgrade, she admits she never applied for any posted vacancy, nor did she do anything to pursue a reevaluation of her position under the CBA's procedures.  As a result of these undisputed facts, she cannot show an adverse employment action or causation.  Further, Plaintiff failed to assert these allegations in her EEOC Charge in August 2019, requiring dismissal of her Title VII claim.

Simply stated, Plaintiff's claims against FIT for race discrimination, race-based hostile work environment and retaliation under Title VII and Section 1981 must be dismissed because she cannot show any connection to her race or protected activity, or any adverse employment actions with an inference of race discrimination or a causal connection to protected activity. Plaintiff remains employed as an Office Associate at the top salary step for her title.  Further, Plaintiff's negligence claim against FIT is clearly barred by the Workers Compensation Law and failure to file a notice of claim.  For these reasons, Defendant FIT's motion for summary judgment should be granted, in all respects.

## STATEMENT OF FACTS

The salient facts and procedural history are contained in the Defendants' Joint Rule 56.1 Statement of Material Facts ("Defs. JSMF") and incorporated herein by reference.

## ARGUMENT

## POINT I

## DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Summary judgment dismissing an employment discrimination action is warranted where, as here, the non-moving party can provide no probative evidence to support an essential element of his claim. Silver v. City Univ. of N.Y., 947 F.2d 1021, 1022 (2d Cir. 1991). If the moving party satisfies its initial summary judgment burden, then the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). She must come forward with "specific facts showing that there is a genuine issue for trial." Id. at 587 (emphasis added). "For there to be a 'genuine' issue of material fact, the evidence must be such 'that a reasonable jury could return a verdict for the non-moving party.'" Turner v. NYU Hosp. Ctr., 784 F. Supp. 2d 266, 275 (S.D.N.Y. 2011) (Daniels, J.) (quoting Liberty Lobby, Inc., 477 U.S. at 248).

As discussed below, the undisputed material facts demonstrate that Defendants are entitled to summary judgment and that Plaintiff's claims fail as a matter of law. Accordingly, the Complaint should be dismissed in its entirety.

## POINT II

### ALL OF PLAINTIFF'S TITLE VII CLAIMS ARE TIME-BARRED AND BARRED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES, EXCEPT FOR HER HOSTILE WORK ENVIRONMENT CLAIM BASED ON THE MAY 2019 INCIDENT WITH BARTON

### A. Plaintiff Failed to Exhaust Administrative Remedies Except for the May 2019 Barton Incident

All of Plaintiff's Title VII claims against FIT must be dismissed based on the exhaustion doctrine, except for the hostile work environment harassment claim she asserted based on the single Barton incident on May 16, 2019 that she asserted in her EEOC Charge.  Plaintiff's EEOC Charge filed on August 19, 2019, alleged only one incident of race discrimination:

> I believe I was discriminated against by my employer when I was subjected to a hostile work environment when I was harassed by a Caucasian coworker, Marilyn Barton. She yelled at me and came into very close proximity to my fact telling me, I don't give a fuck; I cant stand you; I don't give a fuck about what you think and I'm going to fucking kill you and she pushed me.

(Plaintiff's EEOC Charge ("EEOC Charge") dated August 19, 2019, attached as Ex. "F" to Daub Decl., at DFIT000312; Defs. JSMF, ¶ 217-220, 226).

A plaintiff cannot assert Title VII claims in court if those claims were not previously raised in an EEOC charge and administrative remedies exhausted regarding those claims. Fort Bend Cty. v. Davis, 139 S. Ct. 1843 (2019). Only those claims that are reasonably related to claims in the original charge can be included in a federal lawsuit. See Faktorovich v. Mem'l Sloane-Kettering Cancer Ctr., 578 F. App'x 41, 42 (2d Cir. 2014).

All of Plaintiff's other Title VII claims must be dismissed, including but not limited to those asserting a hostile work environment based on her various coworkers' comments prior to the August 2019 EEOC Charge, her disparate treatment claim alleging Dean Davis' inaction on her interest in job reclassification in 2017, and any claims of retaliation for protected activity including but not limited to the alleged relocation of her work area.

6

**B.  Plaintiff's Claims are Time-Barred Except for the May 2019 Barton Incident**

Even if Plaintiff's Title VII claims were not barred under the exhaustion doctrine, all of Plaintiff's claims arising before October 16, 2018 must be dismissed as untimely, except for the single incident of alleged harassment in May 2019 that she asserted in her EEOC Charge.  A plaintiff has three hundred (300) days from the date of the alleged discriminatory act to timely file an EEOC charge. See Wu v. Good Samaritan Hosp. Med. Ctr., 815 F. App'x 575, 579 (2d Cir. 2020) (citing Delaware State Coll. v. Ricks, 449 U.S. 250, 258 (1980)) ("It has long been settled that a claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct.").[1]

### POINT III

### PLAINTIFF CANNOT ESTABLISH A
### PRIMA FACIE CASE OF RACE DISCRIMINATION BASED
### ON DISPARATE TREATMENT UNDER TITLE VII OR SECTION 1981

Plaintiff claims she was denied a promotion with salary increase in 2017 and her seat was relocated in 2019 based on race discrimination.  Plaintiff also appears to claim that FIT's AA Office delayed finalizing its investigation report on her April 2018 AA Office complaint due to race discrimination.  The Second Circuit applies the same burden-shifting analysis established by

---

[1] Each alleged "discrete discriminatory act" starts a new clock for filing charges alleging that act. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("discrete acts" are "not actionable if time barred, even when they are related to acts alleged in timely filed charges"). Here, Plaintiff filed her EEOC Charge on or about August 12, 2019, making any alleged discriminatory act prior to October 16, 2018 untimely. In her EEOC Charge, Plaintiff alleged only one incident involving a coworker, which allegedly took place on May 16, 2019. Indeed, in the section titled "Date(s) Discrimination Took Place," Plaintiff listed May 16, 2019 as the "Earliest" and May 16, 2019 as the "Latest."  Id.  Among the time-barred Title VII claims is Plaintiff's failure to promote claim, alleging that she spoke with Dean Davis in 2017 regarding an "upgrade" but Davis took no action.  As such, Plaintiff's failure to promote claim is also time-barred. See Taylor v. City of New York, 207 F. Supp. 3d 292, 301 (S.D.N.Y. 2016) (holding that the continuing violation doctrine does not apply to failure to hire and failure to promote claims under Title VII).

the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973) for

discrimination claims under both Title VII and Section 1981 (including for retaliation and

disparate treatment). <u>See</u> <u>Wu</u>, 815 F. App'x at 581; <u>Turner</u>, 784 F. Supp. 2d at 276 (Daniels, J.).

Under <u>McDonnell Douglas</u>, the plaintiff bears the initial burden of producing evidence sufficient

to support a <u>prima facie</u> case of discrimination.

In order to make out a <u>prima facie</u> case, a plaintiff must show that: (1) she is a member of

a protected class; (2) she was qualified for her position; (3) she was subject to an adverse

employment action; and (4) the adverse employment action occurred under circumstances giving

rise to an inference of discrimination.  <u>See</u> <u>James v. New York Racing Ass'n</u>, 233 F.3d 149, 154

(2d Cir. 2000).  If a plaintiff is able to establish a <u>prima facie</u> case, the burden shifts to the

employer to offer a legitimate, non-discriminatory reason for the adverse employment action.  If

the employer does so, the burden shifts back to the employee to "produce evidence and carry the

burden of persuasion that the proffered reason is a pretext."  <u>McBride v. BIC Consumer Prods.</u>

<u>Mfg. Co.</u>, 583 F.3d 92, 96 (2d Cir. 2009).  Furthermore, the Supreme Court in <u>Comcast Corp. v.</u>

<u>Nat'l Ass'n of African Am.-Owned Media</u>, 140 S. Ct. 1009 (2020), held that a plaintiff bringing

a Section 1981 claim must plead and prove that race was the "but for" cause of the

discriminatory action – a more stringent test than the Title VII "motivating factor" test.

For the reasons that follow, Plaintiff is unable to establish a prima facie case against FIT

under Title VII or Section 1981 for race discrimination.

## A.  <u>Plaintiff Did Not Suffer Any Adverse Employment Actions</u>

Plaintiff appears to claim that FIT took the following adverse employment actions against

her based on her race:  (1) in 2017, Dean Davis discussed with Plaintiff a potential upgrade to a

new position and asked Plaintiff to take certain steps, but Plaintiff never followed up with Dean

Davis (Compl. 19); (2) Plaintiff filed a complaint with FIT's AA Office in April 2018 regarding

her coworkers' past comments but FIT's investigation did not conclude until over a year later (i.e., on or around October 7, 2019) (Compl. 20, 21, 22, 24); and (3) in or around August 2019, at Plaintiff's request after the May 16, 2019 incident, FIT moved Plaintiff's seat location.

Case law is explicitly clear that a "plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012). "The Second Circuit has explained that adverse employment actions must be more severe than mere 'inconveniences or an alteration of job responsibilities.'" Harrison v. U.S. Postal Service, No. 06 Civ. 13131 (GBD), 2010 U.S. Dist. LEXIS 83801, at *12 (S.D.N.Y. Aug. 10, 2010) (Daniels, J.) (quoting Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006)). As discussed below, Plaintiff is unable to establish a legally cognizable adverse employment actions. Plaintiff remains employed at FIT in the same position.

1. **Plaintiff's Failure Apply for Promotion Was Not an Adverse Employment Action**

Plaintiff's claim relating to her non-promotion and salary also fails. As a matter of law, Plaintiff's inaction following her expression of interest in a potential promotion is not an adverse employment action.

The terms of Plaintiff's employment were governed by the CBA. (Defs. JSMF ¶ 3; Ex. "A" to Glass Aff.) In accordance with the CBA, Plaintiff received all "contractual increases" to her salary from year to year; and Plaintiff also received all "incremental step increases" on the salary scale for her Office Associate job title until she reached the top step on September 1, 2017. (Defs. JSMF ¶¶ 24-27). Plaintiff could not receive higher step increases without receiving an "upgrade" (i.e., "promotion" to a job title and classification with a higher salary).

To make out a failure to promote claim, a plaintiff must satisfy the McDonnell Douglas burden-shifting framework. Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010). To establish a prima facie case, Plaintiff "must demonstrate that: '(1) she is a member of a protected

9

class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.'" Noel v. Interpublic Grp. of Co's Inc., No. 12 Civ. 2996 (HB), 2013 U.S. Dist. LEXIS 68067, at *6 (S.D.N.Y. May 13, 2013).

Plaintiff fails to meet the second, third and fourth elements.  As to the second element, there was no alleged vacancy – only Dean Davis' alleged expression of potential future interest in assigning Plaintiff additional duties that could lead to an upgrade through FIT's reevaluation procedures under the CBA – and Plaintiff never applied for a vacancy. In fact, as further discussed below, Plaintiff admits that in their single discussion about the subject, Dean Davis asked Plaintiff to take certain steps to further their discussion, and Plaintiff never followed up with her.  (Defs. JSMF ¶¶ 48-49). Third, it is undisputed that Dean Davis did not seek any other applicants for the potential new role they discussed.  No vacancy existed – thus, Plaintiff clearly was not "rejected" for any vacancy in favor of any other employee.

Under well-established Second Circuit law, "[a] plaintiff may not establish the second element of the prima facie case 'merely with evidence that a plaintiff generally requested promotion consideration.'" Jones v. Int'l Union of Operating Engineers, 155 F. Supp. 3d 191, 205 (N.D.N.Y. 2015), aff'd, 671 F. App'x 10 (2d Cir. 2016) (quoting Petrosino v. Bell Atlantic, 385 F.3d 210, 226 (2d Cir. 2004)). "A specific application is required to 'ensure that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer.'" Id.

Plaintiff alleges that in July or early August 2017, she had one discussion with Dean Davis about Dean Davis's interest in assigning her additional duties in the future that could result

in a promotional "upgrade" in her job title and salary under the CBA's procedures.[2]  According

to Plaintiff, during this single conversation, Dean Davis tasked her with obtaining some

examples of potential job titles and job descriptions from Human Resources.  But Plaintiff

admits she simply never followed up with giving those items to Dean Davis.  In fact, Plaintiff

never raised the subject with Dean Davis again.  Plaintiff knew in 2017 that she had not been

promoted.  Plaintiff admits that she simply assumed Dean Davis would not support her for a

promotion after Plaintiff filed her AA Office complaint against her coworkers in April 2018.

(Defs. JSMF ¶¶ 30-51).

Further, to the extent that Plaintiff had any interest in an upgrade after 2006, she admits

she never applied for any posted vacancies to obtain an upgrade, nor did she do anything to

pursue the reevaluation procedure required to seek approval of a reclassification and upgrade of

her job title under the CBA's procedures if she believed her job duties had significantly changed.

Under the CBA, these were the only procedures that could lead to an upgrade of her job title.  It

is undisputed that Plaintiff did neither.  (Defs. JSMF ¶¶ 49-54, 59).  Plaintiff's own inaction

requires dismissal of her claim for failure to promote.

2. **Any Purported "Delay" in FIT Completing its Investigation of the April 2018 AA Office Complaint Does Not Constitute An Adverse Employment Action**

Plaintiff alleges that she filed a complaint with FIT's AA Office in April 2018, reporting

various past comments by her coworkers (Compl. 20) but FIT's investigation did not conclude

---

[2]   Tellingly, Plaintiff did not raise any issue about her job title in her April 2018 AA Office Complaint, but actually mentioned her 2017 conversation with Dean Davis about it as context for another issue, specifically acknowledging that Dean Davis was "just trying to prepare for what might happen at some point in time" if she needed to transfer a coworker's responsibilities relating to the Exhibition and Experience and Art Market programs to someone else.  (Defs. JSMF ¶¶ 31; Exhibit "K-1" to Daub Decl.).  Plaintiff's April 2018 admission directly contradicts her deposition testimony about an alleged 2017 "agreement" on a plan, subject to her contacting Human Resources for example job titles.

until over a year later (i.e., on or around October 7, 2019) (Compl. 20, 21, 22, 24). Plaintiff's claim that FIT's purported "delay" was based on race discrimination fails as a matter of law.

The Second Circuit has held that an employer's failure to investigate an employee's complaint does not constitute an adverse employment action. See Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 721 (2d Cir. 2010). Here, the undisputed record evidence shows that Deliwe Kekana, FIT's AA Officer and Title IX Coordinator, promptly handled Plaintiff's April 2018 complaint. Indeed, she commenced FIT's investigation immediately, meeting with all witnesses and receiving their statements during April, May, June, and July 2018. (Defs. JSMF ¶¶ 133-59). While the final investigation report was not finalized until October 7, 2019, these facts are not in dispute. Ms. Kekana endeavors to complete investigation reports within 45-60 days, but that is not always possible and matters must at time be prioritized. (Defs. JSMF ¶¶ 162). Any purported "delay" in the completion of the investigation report is not an adverse employment action.

3. **Plaintiff's Office Relocation Was Not an Adverse Employment Action**

In or around August 2019, in response to Plaintiff's request due to her expressed discomfort with working in the same office as Barton after the May 16, 2019 incident, FIT moved Plaintiff's seating location. Plaintiff's claim that her relocation was based on race discrimination also fails as a matter of law. The Second Circuit has held that "[a]lthough perhaps inconvenient, the relocation of [a] plaintiff's office does not rise to [the] level of an adverse employment action." Cunningham v. N.Y. State Dep't of Labor, No. 1:05-CV-1127-DNH-RFT, 2010 U.S. Dist. LEXIS 42943, at *17 (N.D.N.Y. Apr. 30, 2010) aff'd, 2011 U.S. App. LEXIS 9977 (2d Cir. May 16, 2011); see also Grimes v. Sil, No. 19-cv-01066 (AMD), 2020 U.S. Dist. LEXIS 54290, at *24 (E.D.N.Y. Mar. 27, 2020) (holding that "relocations and reassignments are not adverse actions"). As such, Plaintiff's claim fails as a matter of law.

B. **The Alleged Coworker "Stray Remarks" Do Not Raise an Inference of Discrimination**

Plaintiff admits that none of the FIT supervisors or decision-makers who allegedly made the above decisions – Dean Davis regarding her alleged inaction on a potential promotion to a new role in 2017, the AA Office regarding the timing of completion of its investigation of her complaint in 2018, and Human Resources regarding her seat relocation in August 2019 – made any comments relating to her race in any way.  (Defs. JSMF ¶¶ 124-127).

To the extent that Plaintiff is attempting to use isolated comments by her coworkers from 2014 to 2018 as evidence of discriminatory intent for any alleged adverse employment actions by FIT supervisors, her attempt fails.  It is well-established that stray workplace remarks, in the absence of a clearly demonstrated nexus to the adverse employment action at issue, do not alone suffice to defeat a motion for summary judgment.  See O'Connor v. Viacom, Inc., No. 96-7641, 1996 U.S. App. LEXIS 32986, at *8 (2d Cir. Dec. 16, 1996).  Here, the alleged coworker remarks have nothing to do with race and provide no evidence of discriminatory animus by any decision-maker.  For example, nothing about Ms. Cowan's alleged invitation for Plaintiff to join a gossip session "at the back of the bus" in 2014 has any connection to Dean Davis' alleged inaction to promote Plaintiff in 2017.

C. **Plaintiff Cannot Establish An Inference of Discrimination Because There is No Evidence of Disparate Treatment**

Even if Plaintiff could show any adverse employment actions, she cannot point to any evidence that she was treated differently than any similarly situated employees, including with respect to Barton's job title and salary, which was set by the CBA.

It is beyond cavil that a plaintiff's status as a member of protected classes is not itself evidence of discrimination.  See Simpri v. City of New York, No. 00 Civ. 6712, 2003 U.S. Dist.

LEXIS 23266, at *4 (S.D.N.Y. Dec. 30, 2003) ("[T]here must be some evidence to support an inference of discrimination other than the fact that plaintiff is a member of a protected class.").  In order to create an inference of discrimination based on disparate treatment, a plaintiff must show that she was similarly situated in all material respects to the individual with whom she seeks to compare herself.  See Nurse v. Lutheran Med. Ctr., 854 F. Supp. 2d 300, 312 (E.D.N.Y. 2012).

Plaintiff's attempt to compare herself to Barton is without merit.  As discussed above, a plaintiff who did not apply for a promotional vacancy cannot prove a failure to promote claim by pointing to another employee who earlier received a promotion to a different position.  To be sure, Plaintiff is not claiming that she applied for promotion to a vacant position and that she was rejected in favor of Barton being selected for the vacancy.  Accordingly, Plaintiff cannot establish a *prima facie* claim of discrimination where she cannot proffer evidence identifying any specific vacancy to which she applied and was rejected.  See, e.g., Sekyere v. City of New York, No. 05 Civ. 7192 (BSJ) (DCF), 2009 U.S. Dist. LEXIS 28960, at *15 (S.D.N.Y. Mar. 18, 2009) (dismissing failure to promote claims where plaintiff could not identify any specific position for which she applied and was rejected).

After Barton transferred to the School of Graduate Studies in 2016, her job duties changed significantly.  (Defs. JSMF ¶¶ 68-71).  In 2017, a title reevaluation was requested and approved to go forward in November 2017 under the CBA procedures. Plaintiff's union representative (Isolina Perez) was on the two-person Reevaluation Committee that recommended Barton's title upgrade shortly thereafter.  After the CBA steps proceeded, the Reevaluation Committee notified Barton in April 2018 that her title would be upgraded from Schedule 91, Step 10 as a Research Associate to Schedule 95, Step 1 as an Executive Assistant. Id.

Furthermore, with respect to her salary increases, Plaintiff was clearly not similarly situated in all material aspects to Barton.  As discussed above, Barton was the Executive

Assistant to the Dean and held a different job title under the CBA than Plaintiff.  Id.  In accordance with the CBA, Barton was entitled to receive incremental step increases until she reached the "top step" on her title's respective salary schedule. (Defs. JSMF ¶¶ 72-73).  As such, in terms of salary increases, Plaintiff and Barton were not similarly situated in all material aspects. See Damon v. UPS, No. 04-CV-0746S, 2010 U.S. Dist. LEXIS 116634, at *21 (W.D.N.Y. Oct. 31, 2010).  Accordingly, Plaintiff is unable to point to any evidence to raise an inference of race discrimination, as necessary to establish a prima facie case.

**D. Plaintiff Can Point to No Evidence From Which a Reasonable Jury Could Conclude That FIT's Legitimate, Non-Discriminatory Reasons were Pretextual**

Even if Plaintiff could somehow establish a prima facie case of discrimination, her Complaint should nonetheless be dismissed because FIT articulated legitimate, non-discriminatory reasons for her title and salary under the CBA, the AA Office's timing of the final investigation report on her April 2018 complaint, and her seat relocation, as discussed above.  To defeat Defendants' motion for summary judgment, "plaintiff must come forward with evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001) (citing Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 143 (2000)). Since Plaintiff can present no evidence that the Defendants' reasons were pretextual, her claim should be dismissed.

**E. Plaintiff Cannot Prove her Race was the "But For" Cause of the Purported Discrimination to Satisfy Her Burden Under Section 1981**

The Supreme Court in Comcast Corp., held that a plaintiff bringing a Section 1981 claim of race discrimination must plead and prove that race was the "but for" cause of the discrimination – a more stringent test than the Title VII "motivating factor" test.  140 S. Ct. at 1014.  For the reasons set forth above, Plaintiff cannot prove that her race was the "but for"

cause of any of the alleged actions. As such, Plaintiff's claims for race discrimination under Section 1981 must be dismissed.

## POINT IV

### PLAINTIFF'S HOSTILE WORK ENVIRONMENT
### CLAIM CANNOT WITHSTAND SUMMARY JUDGMENT

To prevail on a hostile work environment claim, Plaintiff must produce admissible evidence to establish: (i) a hostile work environment; and (ii) a specific basis for imputing liability to the Hospital.  See Chansamone v. IBEW Local 97, 523 F. App'x 820, 823 (2d Cir. 2013).  To constitute a hostile work environment, the complained of conduct must: (1) be objectively severe or pervasive to a reasonable person; (2) be subjectively perceived by plaintiff as hostile or abusive; and (3) create such an environment because of the plaintiff's protected characteristic.  See Robinson v. Harvard Prot. Servs., 495 F. App'x 140, 141 (2d Cir. 2012).  "To assert a viable claim that [the plaintiff] endured a hostile work environment, 'plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" Sealy v. Hertz Corporation, 688 F. Supp. 2d 247, 258 (S.D.N.Y. 2009) (Daniels, J.) (quoting Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006)).

The courts in this Circuit consider "(1) the frequency of the [complained of] conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance to determine whether a work environment is sufficiently abusive to be actionable under Title VII." Sealy, 688 F. Supp. 2d at 258 (internal quotations and citation omitted). "Isolated instances of harassment ordinarily do not rise to this level." Id. (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)).  Once a plaintiff demonstrates the

existence of a hostile work environment, he or she must provide "a basis for imputing liability to the employer" for the hostile work environment.  See Addo v. N.Y. Health & Hosps. Corp., No. 15-CV-8103 (RA), 2017 U.S. Dist. LEXIS 176916, at *10 (S.D.N.Y. Oct. 25, 2017).  Under Title VII, an employer's liability for a hostile work environment depends on whether the harassment is perpetrated by a supervisor or co-worker.  Litten v. GM Components Holdings, LLC, No. 19-CV-926S, 2022 U.S. Dist. LEXIS 41768, at *16 (W.D.N.Y. Mar. 9, 2022) (citing Wiercinski, 787 F.3d at 113).  Here, there is no dispute that Cowan, Barton, and Farmer were Plaintiff's coworkers.  (Defs. JSMF ¶ 102, 113, 188).  "If the harasser is a non-supervisory coworker, an employer is liable only if it either 'failed to provide a reasonable avenue for complaint' or 'knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action."  Litten, 2022 U.S. Dist. LEXIS 41768, at *17 (quoting Duch v. Jakubek, 588 F.3d 757, 762 (2d Cir. 2009)).  As discussed below, the complained of conduct is insufficient to sustain a hostile work environment claim under Title VII and Section 1981.

**A. Plaintiff is Unable to Establish that the Earlier Remarks by her Coworkers Constitute a Hostile Work Environment Based on Race**

The record is devoid of any evidence that Plaintiff's coworkers' alleged remarks were made "because of" her race.  See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001).  To sustain a hostile work environment claim, a "plaintiff must show that she was subjected to the hostile work environment because of her membership in a protected class." Early v. Wyeth Pharms., Inc., 603 F. Supp. 2d 556, 578 (S.D.N.Y. 2009); see Desardouin v. City of Rochester, 708 F.3d 102, 105 (2d Cir. 2013); see also Camoia v. City of New York, No. 09 CV 2545 (NGG) (LB), 2018 U.S. Dist. LEXIS 120184, at *43 (E.D.N.Y. July 16, 2018).

Here, the three alleged coworker remarks each had an innocuous connotation, completely

divorced from Plaintiff's race.  Ms. Cowan's comment in 2014 inviting Plaintiff to join her and

Ms. Allsop in gossiping at the "back of the bus" was referring to them acting like children

gossiping in the back of a school bus.  (Defs. JSMF ¶ 89).  Barton's conversation in 2016 after

the Presidential election – which Plaintiff was not a party to – was in the context of educating a

student aide about the "three-fifths compromise" and the electoral college.  (Defs. JSMF ¶¶ 97).

In fact, Plaintiff believed that Barton's point was that "Donald Trump was being very racist."

(Defs. JSMF ¶¶ 94-95).  Mr. Farmer's comment in 2017 to Plaintiff about her hat was described

as a misguided effort to compliment her fashion sense, for which he immediately apologized

profusely when she advised him that she was offended.  (Defs. JSMF ¶ 104).  Finally, Barton's

conversation in 2018 – which Plaintiff was not a party to – involved her quoting her cousin's use

of the word "bastard" to refer to himself after discovering that he was born out of wedlock.

During her deposition, Plaintiff conceded that while she believed this comment was insensitive,

it was not made to discriminate against Plaintiff.  (Defs. JSMF ¶¶ 119-123).  The fact that

Plaintiff misperceived the speakers' undisputed meaning as racially offensive cannot prove a

hostile work environment.  See Bickerstaff v. Vassar Coll., 196 F.3d 435, 456 (2d Cir. 1999)

(holding plaintiff's feelings and perceptions of being discriminated against are not evidence of

discrimination.

    Plaintiff also fails to establish that the alleged "harassment" was severe or pervasive.  The

four comments allegedly made by Plaintiff's coworkers, over the span of approximately four

years, are insufficiently severe or pervasive.  See Hahn v. Bank of Am. Inc., No. 12 Civ. 4151

(DF), 2014 U.S. Dist. LEXIS 45886, at *69-73 (S.D.N.Y. Mar. 31, 2014) (eight incidents over

three months where manager berated subordinate, including yelling and screaming at her in front

of coworkers, found to be insufficient).  Indeed, more egregious conduct involving abusive

language, ethnic slurs and sexually-inappropriate acts has been found to be insufficient to rise to

the level of an actionable hostile work environment claim.  See id. at *72 (collecting cases); see also Lane v. Collins & Aikman Floorcoverings, Inc., No. 00 Civ. 3241 (RMB), 2001 U.S. Dist. LEXIS 17757, at *21-22 (S.D.N.Y. Oct. 30, 2001) (six demeaning comments over the span of two years did not rise to the level of a hostile work environment); Stembridge v. City of New York, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000) (seven racial comments over three years did not create a hostile work environment).

Finally, there is no basis to impute any of these isolated coworker remarks to FIT. Plaintiff cannot show that FIT failed to provide a reasonable avenue for a complaint. Plaintiff was fully aware of FIT's internal complaint procedure at all times and in fact made use of it, including by contacting the AA Office in March 2018, after which she finalized her AA Office complaint in April 2018.  (Defs. JSMF ¶¶ 85-88).  Once the remarks were brought to FIT's attention, FIT's AA Office investigated them and found no discriminatory animus.  (Defs. JSMF ¶¶ 159).  Plaintiff does not allege that any of the comments re-occurred after her complaint.

To defeat summary judgment, a plaintiff "must present concrete particulars and cannot succeed with purely conclusory allegations."  Sharpe v. MCI Commc'n Servs., 684 F. Supp. 2d 394, 400 (S.D.N.Y. 2010); see also Boise v. N.Y. Univ., No. 03 Civ. 582 (RWS), 2005 U.S. Dist. LEXIS 26378, at *4 (S.D.N.Y. Nov. 3, 2005) ("Personal speculation is insufficient as a matter of law to raise an inference of discrimination.").  Accordingly, Plaintiff's hostile work environment claim fails as a matter of law under Title VII and Section 1981.

B. **The Undisputed Record Demonstrates that the Alleged May 2019 Barton Incident was Neither "Because of" Plaintiff's Race Nor Sufficiently Severe or Pervasive to Create a Hostile Work Environment**

Plaintiff is similarly unable to show that the incident of Barton yelling at her in May 2019 created a hostile work environment "because of" Plaintiff's race.  Plaintiff acknowledged that Barton said nothing during the incident relating to Plaintiff's race.  (Defs. JSMF ¶ 179-80.)

Neither Plaintiff (prior to this action) nor any witness expressed a belief that the incident was based on race. (Defs. JSMF ¶¶ 205). Barton testified that, on the day of the incident, Plaintiff repeatedly chided Barton that she should not have provided a student with graduation regalia because it was unfair to other students who had paid. Barton attempted to end the discussion by telling Plaintiff to speak with the Dean if she continued to take issue with it. However, Plaintiff continued pressing, and Barton responded with an unprofessional outburst, for which she apologized and was suspended with various conditions after consultation with the union and others. (Defs. JSMF ¶¶ 209-210).

Nor was this single incident severe or pervasive. Barton allegedly raised her voice, cursed, and pointed her finger at Plaintiff's chest. At the time, Barton was a 55-year-old woman. During her deposition, Plaintiff conceded that Barton did not physically push her. (Defs. JSMF ¶¶ 174, 176-77).

Finally, Plaintiff has no basis to impute Barton's actions to FIT. In this regard, Barton was a coworker with no supervisory authority. Once FIT was made aware of this verbal altercation, FIT took immediate remedial action, including by suspending Barton pending an investigation pursuant to the CBA, conducting an internal investigation, coordinating a "mediation" with a psychologist to remedy the relationship between Barton and Plaintiff (which Plaintiff originally refused to participate), and separating Barton and Plaintiff's seating locations in the office at Plaintiff's request. (Defs. JSMF ¶¶ 213-16).

Accordingly, Plaintiff's hostile work environment claims against FIT fail as a matter of law under Title VII and Section 1981.[3]

---

[3]  Plaintiff does not assert NYSHRL or NYCHRL discrimination claims against FIT. Even if she had, those claims would be barred for failure to serve a notice of claim. Rodriguez v. Hostos Cmty. Coll., No. 20-cv-8143, 2021 U.S. Dist. LEXIS 192080, at *4 (S.D.N.Y. Oct. 5,

*(Footnote continued on next page)*

**POINT V**

**PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW**

To establish a prima facie case of retaliation under Title VII or Section 1981, a plaintiff must demonstrate that: (1) she participated in protected activity; (2) the employer was aware of that activity; (3) an adverse action was taken against her; and (4) a causal connection between the protected activity and the adverse action.  See Fleming v. MaxMara USA, Inc., 371 F. App'x 115, 117 (2d Cir. 2010).  The term "protected activity" refers to action taken to protest or oppose statutorily-prohibited discrimination. Benn v. City of New York, 482 F. App'x 637, 638 (2d Cir. 2012). An adverse action must be sufficient to dissuade a reasonable person from exercising his or her rights under the law and does not include trivial harms. Burlington Northern & Santa Fe Railway v. White, 548 U.S. 53 (2006). Crucially, the "but for" standard must be satisfied; that is, "[c]ausation in retaliation claims 'must meet a stricter standard' than discrimination claims because the plaintiff needs to show 'that the employer would not have taken the adverse employment action but for a design to retaliate.'" Morris v. New York City Health & Hosp. Corp., No. 09-CV-5692 (MKB) (ST), 2018 U.S. Dist. LEXIS 136621, at *16 (E.D.N.Y. Aug. 10, 2018) (quoting Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 364 (2013)). Plaintiff cannot point to any evidence in the record sufficient to establish any of these elements.

If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action.  Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010).  Upon doing so, "the presumption

2021) (dismissing NYSHRL and NYCHRL claims for failure to file notice of claim).  In any event, to the extent that Plaintiff asserts aider and abettor claims against the individual defendants, Plaintiff would be unable to meet the standards to prove those claims in the first instance against FIT as her employer, under the NYSHRL and/or NYCHRL, for the same reasons as set forth above.

dissipates and the plaintiff must demonstrate the legitimate reason offered is mere pretext for

retaliation."  Sharpe v. Utica Mut. Ins. Co., 756 F. Supp. 2d 230, 238-39 (N.D.N.Y. 2010) (citing

Hicks v. Baines, 593 F.3d 159, 164-65 (2d Cir. 2010)).

### A.  FIT Did Not Take Any Adverse Employment Action After The Protected Activity

Plaintiff appears to allege that FIT took the following adverse employment actions

against her in retaliation for her April 2018 AA Office complaint about her coworkers'

comments: (1) denial of an "upgrade" in title; (2) FIT's purported lack of discipline against

Barton; and (3) Plaintiff's seat relocation.  None are sufficient to support an adverse employment

action as a matter of law.

Plaintiff appears to allege that FIT took the following adverse employment actions

As discussed above, Plaintiff was not denied an "upgrade" to any vacant position and

never applied for one through the available CBA channels during the relevant period.  Plaintiff

alleges that Dean Davis discussed a potential upgrade with Plaintiff in 2017, but Plaintiff never

followed up with her.  Plaintiff was aware in 2017 that she had not been promoted, but did

nothing.  Because there is no dispute that Plaintiff failed to apply for any vacancy or request a

title reevaluation through the available channels, she cannot show an adverse employment action.

Second, Plaintiff takes issue that Barton was suspended with pay after the incident in

May 2019. Barton was a tenured employee and union member; FIT could not take disciplinary

action beyond that without the union's involvement under CBA's procedures.  (Defs. JSMF ¶¶

196-98, 202; CBA, Ex. "A" to Glass Aff.).  It is undisputed that FIT must follow the CBA's

required procedures for discipline – which FIT did in fact follow.  In this regard, FIT launched

an immediate investigation into the incident by obtaining statements by witnesses, meeting with

Plaintiff, suspending and meeting with Barton (and her union representatives); required Plaintiff

to receive counseling; engaged with a third party psychologist to provide mediation services for

Barton and Plaintiff to reconcile any professional relationship that may have; and also conducted

radical empathy workshops.  (Defs. JSMF ¶¶ 208-12).  In any event, Plaintiff's dissatisfaction with the degree of FIT's discipline imposed on Barton does not qualify as adverse employment action toward Plaintiff.  In Fincher, 604 F.3d at 712 (holding that an employer's failure to investigate a complaint of discrimination cannot be considered adverse employment action taken in retaliation for filing a complaint of discrimination).  Further, it is worth noting that a coworker yelling at Plaintiff on May 16, 2019 was not itself an adverse employment action by FIT.

Third, FIT's relocation of Plaintiff's seat in August 2019 was based on her request after both employees eventually returned to work after the May 2019 incident. (Defs. JSMF ¶¶ 213-16).  Now, Plaintiff alleges that her seat relocation was somehow retaliatory.  However, it is settled law that "relocations and reassignments are not adverse actions." Cunningham, 2010 U.S. Dist. LEXIS 42943, at *17 ("Although perhaps inconvenient, the relocation of plaintiff's office does not rise to level of an adverse employment action . . . [e]ven if the decision to move plaintiff to the first floor was the product of a retaliatory motive.").

Since Plaintiff cannot show she suffered any adverse employment action in retaliation for protected activity, her Title VII and Section 1981 retaliation claims must be dismissed.

**B. <u>Plaintiff Cannot Establish Any Causal Connection to An Adverse Action</u>**

Even if Plaintiff could show an adverse employment action arising from Dean Davis' alleged inaction on Plaintiff's upgrade in 2017, there is clearly no causal link to Plaintiff's April 2018 complaint regarding her coworkers' various isolated remarks. Plaintiff did not file her AA Office complaint about her coworkers until April 2018 – ***after*** the purported failure to promote occurred in 2017.  As a result, no causal connection is possible.

Similarly, there is no evidence in the record to demonstrate any retaliatory causal connection between Plaintiff's April 2018 AA Office complaint and her seat relocation in August 2019, well over a year later.  Rather, Plaintiff requested the move after stating she did not

23

feel comfortable in the same office as Barton after the May 2019 incident.

Finally, Barton yelling at Plaintiff in May 2019 is plainly not an adverse employment action by FIT against Plaintiff, but in any event, there is no evidence to suggest that Barton's actions in May 2019 had any relation to Plaintiff's protected activity in April 2018, well over a year earlier. While "[t]here is no bright line rule regarding the temporal proximity required to establish a causal connection between protected activity and" adverse employment action, courts in the Second Circuit have held that a plaintiff would fail to show a causal connection between the protected activity and the adverse employment action even if only four months had elapsed. See e.g., Sealy, 688 F. Supp. 2d at 257 (Daniels, J.) (dismissing the plaintiff's retaliation claim as nearly one year elapsed between the plaintiff's protected activity and his termination).

Since Plaintiff did not suffer any adverse employment action and cannot show a causal link between the protected activity and the purported adverse employment action as it happened over one year later, Plaintiff's retaliation claim against FIT must be dismissed.[4]

## POINT VI

## PLAINTIFF'S NEGLIGENCE CLAIM AGAINST FIT IS BARRED

Plaintiff claims that FIT was negligent in failing to select, train, and supervise its management employees such that incidents of harassment are properly investigated and promptly prevented/corrected. This negligence claim fails as a matter of law because it is barred against FIT under New York State Workers' Compensation Law, which is the exclusive remedy for

---

[4]   Plaintiff does not assert NYSHRL or NYCHRL retaliation claims against FIT. Even if she had, those claims would be barred for failure to serve a notice of claim. Rodriguez v. Hostos Cmty. Coll., No. 20-cv-8143, 2021 U.S. Dist. LEXIS 192080, at *4. In any event, to the extent that Plaintiff asserts aider and abettor claims against the individual defendants, Plaintiff would be unable to meet the standards to prove those claims in the first instance against FIT as her employer, under the NYSHRL and/or NYCHRL, for the same reasons as set forth above.

negligence against an employer. N.Y. Workers' Comp. Law § 29(6). New York courts routinely dismiss employee state law negligence claims based on this exclusivity provision. <u>Arbouin v. Bob's Disc. Furniture, LLC</u>, 2021 U.S. Dis. LEXIS 124119, at *27 (E.D.N.Y. June 30, 2021) (discussing prior cases on the issue and the Second Circuit's pattern of dismissing negligence claims such as "negligent supervision, hiring, and retention) due to New York's Workers' Compensation Law).  Furthermore, even if it were not, Plaintiff's negligence claim would also be barred based on her failure to serve a notice of claim.  <u>Rodriguez</u>, 2021 U.S. Dist. LEXIS 192080, at *4 (S.D.N.Y. Oct. 5, 2021) (dismissing NYSHRL and NYCHRL claims for failure to file notice of claim).

## **<u>CONCLUSION</u>**

Based on the undisputed facts and the applicable law, Plaintiff's claims lack merit and should be dismissed.  Accordingly, the Defendants' motion for summary judgment should be granted, Plaintiff's claims should be dismissed in their entirety, and the Court should award Defendants such other and further relief it deems proper and just.

Dated: June 9, 2022
      Melville, New York            **NIXON PEABODY LLP**

                             By:    *<u>/s/ Tara Eyer Daub</u>*
                                   Tara Eyer Daub