UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X          CIVIL ACTION
MARJORIE PHILLIPS,

                                          Case No.: 1:20-cv-00221 (GBD)(SN)

                    Plaintiff,

                             -against-
                                        **AFFIDAVIT**

THE FASHION INSTITUTE OF TECHNOLOGY,
MARY DAVIS, and MARILYN BARTON,

                  Defendants.
-------------------------------------------------------------X

        **MARJORIE PHILLIPS**, being duly deposed, sworn and says under the penalty of perjury:

1. I am the plaintiff in this lawsuit, and I am over 18 years old. I submit this Affidavit in opposition to the defendants' motions for summary judgment.

2. I have been employed by defendant The Fashion Institute of Technology ("FIT") since around 1995. In approximately 2006, I was upgraded by defendant FIT to the position of "Office Associate" in the Executive Education program in the School of Graduate Studies.

3. I stopped working as an Office Associate for the FIT Executive Education Program in approximately 2013 when defendant Davis gave me a new position as Office Associate for the Fashion and Textile Studies program.

4. From approximately 2012 through May 16, 2019, my work location was in FIT's Goodman Building E, Room E315. Defendant Marilyn Barton ("Barton") was one of my co-workers in the School of Graduate Studies. From approximately 2012 through May 16, 2019, Barton and I worked in the same office suite: Room E315.

5. Barton was my co-worker in the School of Graduate Studies. I did not supervise her, and she did not supervise me.

6. Defendant Mary Davis ("Davis") was employed by FIT as the Dean of the School of Graduate Studies from approximately 2012-2020, during which time she was my direct supervisor and I reported directly to her.

7. I have read the affidavit submitted by Cynthia Glass ("Glass"), the Vice President of Human Resources Management and Labor Relations, for defendant FIT. Glass' affidavit does not discuss or describe my job duties as an "Office Associate" in the Fashion and Textile Studies program in the School of Graduate Studies.

8. Moreover, the employment documents that Glass attached as Exhibit B to her affidavit, are old, outdated documents: One document is from April 2006 solely concerning my prior job as an Office Associate for the FIT Executive Education Program, and the other pages are from the 1990s.

9. The April 2006 document lists my job responsibilities at such time for the FIT Executive Education Program. However, I stopped working as an Office Associate for the FIT Executive Education Program in approximately 2013 when defendant Davis gave me a new position as Office Associate for the Fashion and Textile Studies program.

10. Therefore, this April 2006 document, which defendant FIT submits and relies upon, has nothing to do with my job responsibilities as an Office Associate in the Fashion and Textile Studies program of the School of Graduate Studies, from approximately 2013 onward, under the supervision of defendant Davis and chairperson, Denyse Montegut.

11. From approximately 2013 through mid-2017, my job responsibilities as an Office Associate in the Fashion and Textile Studies program, under the supervision of defendant Davis,

were expanded.

12. Moreover, in approximately mid-2017/Summer 2017, defendant Davis started assigning me additional job responsibilities over and above what I had been doing from 2013-2017. These new and additional responsibilities were as follows:

Oversee and manage the day-to-day department operations
Daily review and consistent oversight of department budget
Preparation and submission of necessary Action Forms for payments of Guest Speakers
Purchasing of instructional and operational supplies for faculty
Coordinate, track / organize events and meetings per department need
Evaluate department necessities and prioritize based on urgency
Track outstanding department needs for closure
Oversee Tenure & Promotion process - prepare appropriate forms
Prepare necessary documents to on-board new faculty
Guest Speakers (monitor) process Memorandum Of Understanding
Sole liaison between other offices and Fashion and Textile Studies
Respond to inquiries regarding Fashion & Textile Studies
Anticipate, coordinate, organize and follow-up on daily functions
Provide daily administrative support for chairperson and faculty;
Assist and support chairperson's initiatives
Planning, arranging and follow-up of deliverables, handling logistics; preparing documents for review and submission; (researching) and compiling information for committee meetings as requested
Act as primary contact for department faculty questions and concerns congruently with chairperson
Schedule and/or coordinate meetings
Monitor, coordinate and review departmental budget update for chairperson
Prepare vouchers and purchase requisitions; track and expedite purchase order requests; order supplies; submit invoices for payment
Work with FIT Facilities Rental and process 25Live to schedule campus events/spaces, required (i.e. technology, food etc.) services and specialized equipment. Coordinate special events with Facilities Rental and Media Information Technology.
Carryout miscellaneous special projects related to office business as assigned.
Support the program's students and faculty by providing direction, answering questions, technical guidance, coordination as needed.
Provide faculty support and coordination of program curriculum and administrative matters.
Administer program pedagogical reporting within college's Banner system: coordinate curriculum materials; maintain and organize course schedules
Budget:
Support chairperson in monitoring the department budget, tracking expenditures
Coordinate logistics in developing and monitoring budgets (i.e., OTPS, transfers, instructional supplies and supply inventory needs). Review and work on departmental budgets to prepare

paperwork necessary to facilitate payments. Track and reconcile expenses and close out all fiscal budgets for the department.
Track outstanding requisitions and purchase orders, conduct meetings to ensure all transactions, and supply purchasers are completed. Assess for approval of all purchase requisitions/vouchers. Prepare vouchers and purchase requisitions; track and expedite purchase order requests; order supplies; submit invoices for payment
Meeting Management:
Attend Qualifying Paper meetings; Tenure & Promotion Reappointment process meetings.

Conduct special projects as needed
Anticipate, coordinate and follow up on the Chairperson's activities and projects. Lead, research, plan, coordinate and execute special projects, as may be required by the department according to deadlines and within the budget.
Coordinate meetings, special events with faculty and Facilities Rental and IT Media technology
Department Functionality:
Assign approved timesheets
Track, provide direction and guidance to the technologist as needed to ensure consistent workflow and productivity, address and resolve issues, discuss time management.
Enter the pedagogy for day and evening faculty in Fashion and Textile Studies
Track and maintain release time
Tenure and promotion process, including CCE, appointments and promotions.
Support the department in logistics related to curriculum.
Work with the Office of the Registrar to ensure student reports are created and distributed (i.e., current students and candidates for graduation)
Assist students and faculty with accurate information on policies and procedures.

13. Because of these new and additional job responsibilities, in mid-2017/Summer 2017, defendant Davis and I discussed an "Upgrade", meaning a promotion and increase in salary, and she agreed to recommend me for an Upgrade and submit the necessary paperwork for me to obtain an Upgrade.

14. However, a new job title would be required for the Upgrade, and defendant Davis and I decided that I would speak with FIT's Human Resources Department to obtain a job title that was applicable to the Upgrade that defendant Davis had agreed to.

15. I then met with Natacha Unelus of FIT's Human Resources Department to discuss a new job title and had email exchanges with her in August and September 2017 regarding new job titles and/or new job descriptions for the Upgrade that defendant Davis had agreed to. These

emails are attached hereto as **Exhibit A**, and I attest that these are the emails that I sent to Natacha Unelus, and received from her, regarding job titles/job descriptions for the Upgrade.

16. Contrary to the defendants' claim, I never "abandoned" the Upgrade, for which defendant Davis had already agreed to recommend me and submit the necessary paperwork. As my supervisor, defendant Davis was the one in control of submitting the necessary paperwork for the Upgrade.

17. Based upon experience from my prior upgrade in 2006, I knew that I was not the one to submit the paperwork necessary for the upgrade. Rather, I knew that it was my supervisor who was to submit paperwork necessary for the Upgrade. I had to wait for defendant Davis to submit the paperwork for the Upgrade. She was in full and sole control of submitting the recommendation and/or request for the Upgrade. Likewise, if defendant Davis was waiting for a new job title for upgrade that she had agreed to, she could have easily contacted the Human Resources department for such information.

18. Defendant Davis has not denied and/or contradicted my prior deposition testimony that she had agreed to recommend me for an Upgrade because I was performing new and additional job responsibilities as per my deposition testimony and as discussed herein.

19. Notably, defendant Davis did not submit an affidavit to explain why she did not recommend me for an Upgrade from August/September 2017 until the time of my March 2018 Affirmative Action Complaint against her. She likewise does not contest that submission of an Upgrade request was in her hands, not mine. Defendant Davis has never stated that she was waiting for me to supply a new job title. She was the supervisor; she had all power, not me.

20. However, after I filed the Affirmative Action Complaint against defendant Davis in or about March 2018, our relationship changed for the worse. Unlike her previously friendly

Page 5 of 10

demeanor towards me, after I filed the Affirmative Action Complaint against her, defendant Davis became cold and brusque towards me, and she never again raised the subject of the Upgrade and/or submission of the necessary paperwork for me to obtain an Upgrade.

21. Indeed, after I filed the Affirmative Action Complaint against defendant Davis, she did not submit the necessary paperwork for me to obtain an Upgrade, and therefore I did not obtain the Upgrade that she had previously agreed to.

22. As defendant Davis was my direct supervisor, I was intimidated and uncomfortable by the way defendant Davis had changed our relationship for the worse after I filed the Affirmative Action Complaint against her. I felt she was retaliating against me for filing the Affirmative Action Complaint.

23. I also felt that defendant Davis retaliated against me for filing the Affirmative Action Complaint, because thereafter she never raised the subject of the Upgrade and/or submission of the necessary paperwork for me to obtain an Upgrade, despite her prior agreement to do so. At FIT, an employee's Upgrade is dependent upon a supervisor's submission of the necessary paperwork.

24. Because of the defendant Davis' changed attitude and cold demeanor towards me after I filed the Affirmative Action Complaint, I did not bring up the Upgrade for further discussion with her. It would have been futile to do so since she changed the nature of our relationship for the worse, as she became cold and brusque, and no longer raised the Upgrade issue after I filed Affirmative Action Complaint against her. Because of this change in her demeanor and attitude towards me, I did not believe that she would honor her prior agreement to submit the necessary paperwork for me to obtain an Upgrade.

25. The same Affirmative Action Complaint that I filed in or about March 2018,

named Davis as well as defendant Barton. My prior deposition testimony fully discusses the May 16, 2019, incident at FIT, during the pendency of my Affirmative Action Complaint against defendant Barton, when defendant Barton verbally attacked me, threatened to kill me and pushed her finger into my chest.

26. Although I had an open Affirmative Action Complaint against defendant Barton at the time of the May 16, 2019, incident, defendant FIT did not separate our work areas during the pendency of my Affirmative Action Complaint against defendant Barton. Defendant Barton and I, therefore, continued to work in the same shared office space in Room E315, where the May 16, 2019, incident occurred.

27. After the May 16, 2019, incident where defendant Barton verbally attacked me, threatened to kill me and pushed her finger into my chest, I took a leave of absence from defendant FIT on August 15, 2019, and returned to work on November 11, 2019. The reason I took the leave of absence was because I was in fear for my life each and every day that I had to go to work following the May 16, 2019, attack. I had been traumatized with fear and my attempts to have FIT assure my safety while I was at work were not met. FIT did not fire Marilyn Barton and her presence on the FIT property left me violently ill with fear. With each passing day, my work suffered because I believed that at any given moment, Marilyn Barton would come barging into my office to kill me. My nights were sleepless and my concentration suffered. It got to the point that by August 2019, I could no longer function at work and needed to take a leave of absence. I sought out and obtained therapy to help me deal with my overwhelming and paralyzing fear.

28. When I returned to work at FIT on November 11, 2019, defendant Davis transferred me to a different work location, at an FIT building located at 236 27th Street, Suite 5N. Defendant Davis, however, did not transfer defendant Barton to another work location, but had her remain in Room E315, in the suite she previously shared with me prior to the May 16, 2019 incident.

29. I did not agree to be moved to this new work location on 27th Street. As my direct supervisor, defendant Davis transferred me to this new work location over my objection to the move.

30. As I explained during my deposition, when defendant Davis transferred my work location to the 27th Street building, it disrupted my department, the Fashion and Textile Studies program of the School of Graduate Studies. The Fashion and Textile Studies program was located in my prior building, the Goodman Building E. I was now removed by defendant Davis to an entirely different building on 27th Street away from my department and the Goodman Building E.

31. Moreover, when defendant Davis transferred my work location to the 27th Street building, my work on behalf of my department --- The Fashion and Textile Studies program --- was adversely impacted. To begin, I am isolated and segregated away from my assigned supervisor. Every administrative coordinator, except me, in the School of Graduate Studies works in close proximity to their department Chairperson and in some cases the program students. Having this close proximity is vital since it allows the coordinator to engage with the

Chairperson, those that interact on a daily basis with the Chairperson and otherwise keep a hand on the pulse of the department. Not having this proximity has caused me to be isolated from the Chair of my department making me feel like a stranger instead of an important part of the department. I am not close enough to see students interact with the Fashion & Textile Studies Chairperson in such a way that I can immediately respond to a simple request and remove the burden from the Chairperson. There have been many occasions where this has happened, and the chairperson would just do things herself rather than walk down the street and go into the other building where I am located or wait for me to arrive in her office to assist her. In this fashion, I am viewed as a burden and not someone who effectively handles my assigned responsibilities unlike the other administrative coordinators. This puts me at a disadvantage as compared to my peers.

In addition, the segregation away from the Chair creates needless obstacles to my ability to communicate with her. Issues that could be resolved quickly and thereby giving me more time to do my other tasks, instead take 10-15 more minutes simply because I have to take an elevator, leave my building and go to another building where my chairperson is located and vice versa. Adding up this time over the course of weeks and months means that I have many hours of unproductive time as compared to other administrative coordinators who do not have the same issue of working in a segregated environment.

32. As part of my responsibilities beginning in approximately 2014-2015, I was tasked with coordinating special projects/events for each of the Departments in the School of Graduate Studies. In this capacity, Defendant Davis directed me to work under the supervision and direction of both Kyle Farmer and Brenda Cowan as well as the other Chairs. And I did so.

33. I attest that I sent the following emails, attached hereto as **Exhibit B**:

    A.     2-15-19 email to Deliwe Kekana, with a cc to Isolina Perez and Amy Zaborowski.

    B.     5-16-19 email to Deliwe Kekana and Isolina Perez.

    C.     11-5-19 email to Isolina Perez, Ellen Lynch, Amy Zabrowski (and myself).

    D.     11-8-19 email to Mary Davis.

_____
MARJORIE PHILLIPS

Sworn to before me this
_____ day of _____ 2022.

_____
NOTARY PUBLIC

MARIA PETERMAN
Notary Public, State of New York
Registration #01PE6173138
Qualified In Putnam County
Commission Expires _____