UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MARJORIE PHILLIPS,

                         Plaintiff,

     -against-

THE FASHION INSTITUTE OF TECHNOLOGY,
MARY DAVIS, and MARILYN BARTON,

                         Defendants.
-----------------------------------------------------------X

CIVIL ACTION

Case No.: 1:20-cv-00221 GBD)(SN)

**PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW
IN OPPOSITION TO THE SEPARATE MOTIONS FOR SUMMARY JUDGMENT
BY DEFENDANT THE FASHION INSTITUTE OF TECHNOLOGY,
<u>DEFENDANT MARY DAVIS AND DEFENDANT MARILYN BARTON</u>**

THE COCHRAN FIRM
Attorneys for Plaintiff
55 Broadway, 23rd Floor
New York, NY 10006
212-553-9215

**DEREK SELLS, ESQ.**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................vi

PRELIMINARY STATEMENT.....................................................................................1

POINTS OF LAW.......................................................................................................1

POINT I:      PHILLIPS' TITLE VII CLAIMS INCLUDE ALL MATTERS
REASONABLY RELATED TO THE MAY 16, 2019 BARTON
INCIDENT IN THE EEOC CHARGE, AND OTHER CONTINUING
HOSTILE WORK ENVIRONMENT VIOLATIONS; PHILLIPS'
CLAIMS UNDER SECTION 1981 ARE NOT LIMITED BY HER EEOC
CHARGE.........................................................................................1

         A.  MATTERS REASONABLY RELATED TO PHILLIPS'
EEOC CHARGE.................................................................2
         B.  CONTINUING HOSTILE WORK ENVIRONMENT
VIOLATIONS.....................................................................3

POINT II:     DEFENDANT FIT IS NOT ENTITLED TO SUMMARY JUDGMENT
AS EVIDENCE RAISES QUESTIONS OF FACT AS TO WHETHER
BARTON'S 2019 VERBAL ATTACK AND THREAT TO KILL
PHILLIPS CONSTITUTED A HOSTILE WORK ENVIRONMENT,
VIOLATING TITLE VII AND SECTION 1981...............................4

         A.  BARTON'S MAY 2019 VERBAL ATTACK AND THREAT
TO KILL PHILLIPS.............................................................5
         B.  BARTON'S VERBAL ATTACK AND THREAT TO KILL
PHILLIPS: OBJECTIVELY SEVERE TO ALTER
EMPLOYMENT CONDITIONS...........................................6
         C.  PHILLIPS' TESTIMONY RAISES A QUESTION OF FACT
AS TO WHETHER BARTON'S MAY 2019 ATTACK WAS
BECAUSE OF RACE.......................................................10
         D.  DEFENDANTS' CLAIM OF NON-DISCRIMINATORY
CONDUCT BY BARTON IS PRETEXTUAL...................13

POINT III:    DEFENDANT FIT IS NOT ENTITLED TO SUMMARY JUDGMENT
AS EVIDENCE RAISES QUESTIONS OF FACT AS TO WHETHER
BARTON'S 2019 VERBAL ATTACK AND THREAT TO KILL
PHILLIPS CONSTITUTED RETALIATORY HOSTILE WORK
ENVIRONMENT AND/OR RETALIATORY HARASSMENT FOR
PHILLIPS' AFFIRMATIVE ACTION COMPLAINT.....................14

i

A. THE FOUR ELEMENTS OF RETALIATION; PHILLIPS SATISFIES ELEMENTS ONE AND TWO AS A MATTER OF LAW………………………….……………..…..16

B. THE THIRD ELEMENT OF RETALIATION: ADVERSE EMPLOYMENT ACTION DUE TO RETALIATORY HOSTILE WORK ENVIRONMENT AND/OR RETALIATORY HARASSMENT...………………………..17

C. THE FOURTH ELEMENT OF RETALIATION: CAUSAL CONNECTION SHOWN BY EVIDENCE OF BARTON'S RETALIATORY ANIMUS...…….……………………............18

D. DEFENDANTS' CLAIM OF NON-DISCRIMINATORY CONDUCT BY BARTON IS PRETEXUTAL...………..........21

POINT IV:    DEFENDANT FIT IS NOT ENTITLED TO SUMMARY JUDGMENT SINCE EVIDENCE RAISES QUESTIONS OF FACT AS TO WHETHER FIT PERFORMED AN EFFECTIVELY REMEDIAL AND PROMPT INVESTIGATION INTO PHILLIPS' MARCH 2018 AFFIRMATIVE ACTION COMPLAINT, AND THUS WHETHER FIT IS LIABLE FOR BARTON'S MAY 2019 VERBAL ATTACK  AND THREAT TO KILL PHILLIPS……………………………………………………...22

A. FIT'S DUTY TO ELIMINATE RACIAL DISCRIMINATION; FIT KNEW OF A RACIALLY COMBATIVE WORKPLACE BEFORE BARTON'S MAY 2019 THREAT TO KILL PHILLIPS...………………………...24

B. QUESTION OF FACT AS TO WHETHER FIT PERFORMED AN EFFECTIVELY REMEDIAL AND PROMPT INVESTIGATION INTO PHILLIPS' MARCH 2018 AFFIRMATIVE ACTION COMPLAINT...…………...25

C. DEFENDANT FIT'S CLAIM OF NON-DISCRIMINATION IS CONTRARY TO LAW AND THUS PRETEXTUAL.......28

POINT V:    DEFENDANT FIT IS NOT ENTITLED TO SUMMARY JUDGMENT SINCE EVIDENCE RAISES QUESTIONS OF FACT AS TO WHETHER DEFENDANT DAVIS RETALIATED AGAINST PHILLIPS BY NOT REQUESTING AN UPGRADE FOR PHILLIPS AFTER THE MARCH 2018 AFFIRMATIVE ACTION COMPLAINT………………………………………………………………30

A. THE UPGRADE DID NOT REQUIRE A JOB VACANCY; PHILLIPS WAS QUALIFIED FOR THE UPGRADE AS SHE HAD ALREADY BEEN PERFORMING BEYOND HER CURRENT JOB TITLE/POSITION...………………………...31

B. DAVIS DID NOT REQUEST THE UPGRADE AFTER THE AFFIRMATIVE ACTION COMPLAINT; THE

RELATIONSHIP BETWEEN DAVIS AND PHILLIPS
DETERIORATED, LEAVING IT FUTILE FOR PHILLIPS
TO SEEK AN UPGRADE FROM DAVIS……..…………...34

C.  FAILURE TO PROMOTE AS AN ADVERSE
EMPLOYMENT ACTION; A QUESTION OF FACT AS TO
WHETHER DAVIS RETALIATED AGAINST PHILLIPS BY
NOT REQUESTING AN UPGRADE………………........37

D.  DEFENDANT FIT'S CLAIM OF NON-DISCRIMINATION
IS PRETEXTUAL.…………………………..………........39

POINT VI:    DEFENDANT FIT IS NOT ENTITLED TO SUMMARY JUDGMENT
SINCE EVIDENCE RAISES QUESTIONS OF FACT AS TO
WHETHER PHILLIPS AND BARTON WERE SIMILARLY
SITUATED EMPLOYEES AND WHETHER DEFENDANT DAVIS
SUBJECTED PHILLIPS TO DISPARATE TREATMENT IN NOT
REQUESTING AN UPGRADE FOR PHILLIPS WHO IS AFRICAN-
AMERICAN, BUT REQUESTED AN UPGRADE FOR BARTON,
WHO IS WHITE.……………………………………………...41

A.  QUESTION OF FACT: WHETHER PHILLIPS AND
BARTON ARE SIMILARLY SITUATED
EMPLOYEES…………………………………………43
   1.  PHILLIPS AND BARTON WERE SUBJECT TO THE
       SAME STANDARDS FOR UPGRADE AND
       DISCIPLINE..…………………………………43
   2.  PHILLIPS AND BARTON HAD THE SAME
       SUPERVISOR: DAVIS……………………………...45
   3.  PHILLIPS AND BARTON HAD SIMILAR JOB
       DUTIES…………………………………………...46

B.  THE TOTALITY OF THE EVIDENCE RAISES
QUESTIONS OF FACT AS TO DISPARATE
TREATMENT……………………………………..………47

C.  THE EVIDENCE DEMONSTRATES BUT-FOR
PROXIMATE CAUSATION AND PRETEXT BY
DEFENDANT FIT.……………………………..………........48

POINT VII:   DEFENDANT FIT IS NOT ENTITLED TO SUMMARY JUDGMENT
AS EVIDENCE RAISES QUESTIONS OF FACT AS TO WHETHER
DEFENDANT DAVIS SUBJECTED PHILLIPS TO DISPARATE
TREATMENT AND/OR RETALIATION IN MOVING HER WORK-
AREA TO ANOTHER BUILDING, BUT HAVING BARTON REMAIN
IN THE SUITE WHICH SHE SHARED WITH PHILLIPS ON MAY 16,
2019..……………………………………………..……………...49

A.  DISPARATE TREATMENT.…………….…...…………….49

           B.  RETALIATION BY DAVIS…………..………………..…....51

POINT VIII:   DEFENDANT FIT IS NOT ENTITLED TO SUMMARY JUDGMENT
                 AS EVIDENCE RAISES QUESTIONS OF FACT AS TO WHETHER
                 COWAN AND FARMER CREATED A HOSTILE WORK
                 ENVIRONMENT VIOLATING TITLE VII AND SECTION 1981…....52

POINT IX:    DEFENDANT DAVIS IS NOT ENTITLED TO SUMMARY
                 JUDGMENT AS TO RETALIATION AND DISPARATE TREATMENT
                 UNDER SECTION 1981 AND/OR NEW YORK STATE HUMAN
                 RIGHTS LAW SINCE PHILLIPS HAS SATISFIED REQUIREMENTS
                 OF THOSE CLAIMS UNDER TITLE VII AND/OR RAISED
                 QUESTIONS OF FACT IN THAT REGARD…………………..……54

           A.  RETALIATION UNDER 42 U.S.C. 1981 AND
               NYSHRL……………………………………………………56
           B.  VIOLATION OF 42 U.S.C. 1981 FOR DISPARATE
               TREATMENT…..…………………………..………………57
           C.  AIDING AND ABETTING DISCRIMINATION: NYSHRL
               LAW 296(6) AND NEW YORK CITY HUMAN RIGHTS
               LAW 8-107(6)……………….……………………....…...57

POINT X:     DEFENDANT DAVIS IS NOT ENTITLED TO SUMMARY
                 JUDGMENT UNDER NEW YORK CITY HUMAN RIGHTS LAW FOR
                 RETALIATION AND DISPARATE TREATMENT, AS PHILLIPS HAS
                 SATISFIED THOSE CLAIMS UNDER TITLE VII, SECTION 1981
                 AND NYSHRL, AND EVIDENCE LIKEWISE RAISES QUESTIONS
                 OF FACT UNDER THE MORE LIBERAL NYCHRL…..…..………59

           A.  RETALIATION UNDER NYCHRL: DAVIS FAILED TO
               SUSTAIN HER EVIDENTIARY BURDEN; QUESTIONS OF
               FACT REQUIRE DENIAL OF SUMMARY
               JUDGMENT………………………………………………60
           B.  DISPARATE TREATMENT UNDER NYCHRL: DAVIS
               TREATED PHILLIPS "LESS WELL" THAN
               BARTON..............................................................................62

POINT XI:    DEFENDANT BARTON IS NOT ENTITLED TO SUMMARY
                 JUDGMENT UNDER 42 U.S.C. 1981, NEW YORK STATE HUMAN
                 RIGHTS LAW AND/OR NEW YORK CITY HUMAN RIGHTS LAW;
                 PHILLIPS HAS SHOWN HOSTILE WORK ENVIRONMENT AND
                 RETALIATION UNDER THOSE STATUTES, AND/OR EVIDENCE
                 RAISES QUESTIONS OF FACT UNDER THE MORE LIBERAL
                 NYCHRL..…………………………………………………….....64

iv

      A.  NYCHRL AND HOSTILE WORK ENVIRONMENT:
           BARTON'S MAY 2019 VERBAL ATTACK AND THREAT
           TO KILL PHILLIPS; BARTON'S "3/5 OF A HUMAN
           BEING" STATEMENT……………………………………..66
      B.  NYCHRL: BARTON'S MAY 2019 VERBAL ATTACK AND
           THREAT TO KILL PHILLIPS AS RETALIATION…..........70
      C.  NYCHRL: BARTON'S MAY 2019 THREAT TO KILL
           PHILLIPS AS PROHIBITED INTIMIDATION, THREAT
           AND/OR INTERFERENCE WITH A PROTECTED
           RIGHT……………………………………………………73

POINT XII:    DEFENDANT BARTON IS NOT ENTITLED TO SUMMARY
             JUDGMENT ON PHILLIPS' CLAIMS OF ASSAULT AND/OR
             INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;
             EVIDENCE RAISES QUESTIONS OF FACT WHETHER BARTON'S
             THREAT TO KILL PHILLIPS CAUSED FEAR OF IMMINENT HARM
             AND WHETHER THE THREAT TO KILL PHILLIPS WAS
             EXTREME, OUTRAGEOUS CONDUCT…………………………...75

      A.  NYCHRL AND HOSTILE WORK ENVIRONMENT:
           BARTON'S MAY 2019 VERBAL ATTACK AND THREAT
           TO KILL PHILLIPS; BARTON'S "3/5 OF A HUMAN
           BEING" STATEMENT……………………………………..66
      B.  NYCHRL: BARTON'S MAY 2019 VERBAL ATTACK AND
           THREAT TO KILL PHILLIPS AS RETALIATION……....70
      C.  NYCHRL: BARTON'S MAY 2019 THREAT TO KILL
           PHILLIPS AS PROHIBITED INTIMIDATION, THREAT
           AND/OR INTERFERENCE WITH A PROTECTED
           RIGHT……………………………………………………73

CONCLUSION…………………………………………………………………………..78

## LEGAL AUTHORITIES

*Cases Cited*

*AMTRAK v. Morgan*, 55 U.S. 101 (2002)…………………………………………………....3

*Akinyemi v. Chertoff*, 2008 U.S. Dist. LEXIS 33793 (S.D.N.Y. 2008) …………………......43, 45

*Bennett v. Health Mgt. Sys., Inc.*, 92 A.D.3d 29 (1st Dept. 2011)……………………………60

*Berger-Rothberg v. City of New York*, 803 F. Supp.2d 155 (E.D.N.Y. 2011)……………….17, 19

*Bilitch v. New York City Health & Hosps. Corp.*, 194 A.D.3d 999 (2d Dept. 2021)…..…..….70, 71

*Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)………………….17, 18, 71

*Cadet v. Ayers*, 203 A.D.3d 539 (1st Dept. 2022)…………………………………………..75

*Camoia v. City of New York*, 2018 U.S. Dist. LEXIS 120184 (E.D.N.Y. 2018)………..…..59, 65

*Castagna v. Luceno*, 558 Fed. Appx. 19 (2d Cir. 2014)……………….....…………………*passim*

*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media,* 140 S. Ct. 1009 (2020)…12, 13

*Conway v. Microsoft Corp.*, 414 F. Supp.2d 450 (S.D.N.Y. 2006)……………..……………*passim*

*D'Alessio v. Charter Communs., LLC*, 2020 U.S. Dist. LEXIS 173332 (E.D.N.Y. 2021)……....…71

*Dall v. St. Catherine of Siena Med. Ctr.*, 966 F. Supp.2d 167 (E.D.N.Y. 2013)……………..…….45

*Duplan v. City of New York*, 888 F.3d 612 (2d Cir. 2018)…………………………….21, 39

*Duverny v. Hercules Med. P.C.*, 2020 U.S. Dist. LEXIS 37547 (S.D.N.Y. 2020)………….....…12

*Ebel v. G/O Media, Inc.*, 2022 U.S. Dist. LEXIS 116095 (S.D.N.Y.2022)……………..43, 47

*Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp.2d 569 (S.D.N.Y. 2012)………………....70

*Sumner v. United States Postal Service,* 899 F.2d 203 (2d Cir. 1990)……………………….…70

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010)…………….……..29

*Garcia v. New York City Health & Hosp. Corp.*, 2019 U.S. Dist. LEXIS 219048 (S.D.N.Y. 2019)……………………………………………………………………………………….52

*Gioia v. Forbes Media LLC*, 501 Fed. Appx. 52 (2d Cir. 2012)…………………………59, 60, 64

*Gordon v. New York City Bd of Educ.*, 232 F.3d 111 (2d Cir. 2000)………………………37, 52

*Graham v. Long Island R.R.,* 230 F.3d 34 (2d Cir. 2000)…………………………..……...*passim*

*Grimes-Jenkins v. Consol. Edison Co. of N.Y.*, 2021 U.S. Dist. LEXIS 62975 (S.D.N.Y. 2021)...................................................................................................17

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)...........................................7, 54

*Holohan v. Newmark & Co. Real Estate*, 2019 U.S. Dist. LEXIS 160061 (S.D.N.Y. 2019).......54

*Holtz v. Wildenstein & Co.*, 261 A.D.2d 336 (1st Dept. 1999)....................75, 77

*Howley v. Town of Strafford*, 217 F.3d 141 (2d Cir. 2000).....................32, 38

*Huffman v. Brooklyn College*, 2022 U.S. Dist. LEXIS 2134 (E.D.N.Y. 2022)....................56

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977)....................31, 37

*Kaytor v. Elec. Boat Corp.*, 609 F.3d 537 (2d Cir. 2010)...........................*passim*

*Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*, 120 A.D.3d 18 (1st Dept. 2014)..............70

*La Grande v. DeCrescente Distrib. Co.*, 370 Fed. Appx. 206 (2d Cir. 2010)....................53

*Lamarr-Arruz v. CVS Pharm., Inc.*, 271 F. Supp.3d 646 (S.D.N.Y. 2017)..................6, 55, 65

*Langlois v. Hartford Bd. of Educ.*, 831 Fed. Appx. 548 (2d Cir. 2020).....................4, 13, 54

*Lenzi v. Systemax, Inc.*, 944 F.3d 97 (2d Cir. 2019)....................................16, 19

*Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp.2d 376 (S.D.N.Y. 1999)................58

*Lichtenstein v. Triarc Cos.*, 2004 U.S. Dist. LEXIS 8610 (S.D.N.Y. 2004).....................43, 47

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015)......................19, 37

*Macias v. Barrier Free Living, Inc.*, 2018 U.S. Dist. LEXIS 52018 (S.D.N.Y. 2018).........73, 74

*Malarkey v. Texaco, Inc.*, 983 F.2d 1204 (2d Cir. 1993)..............................31, 37

*Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp.2d 349 (S.D.N.Y. 2012).........54, 59, 65

*McGuinness v. Lincoln Hall*, 263 F.3d 49 (2d Cir. 2001).................41, 42, 48, 49

*McHenry v. Fox News Network, LLC*, 510 F. Supp.3d 51 (S.D.N.Y. 2020)..................62, 72

*Mikolaenko v. New York Univ.*, 2017 U.S. Dist. LEXIS 146776 (S.D.N.Y.2017)..............51

*Morris v. Lindau*, 196 F.3d 102 (2d Cir. 1999).....................................37, 42

*Nazario v. Promed Pers. Servs. NY*, 2017 U.S. Dist. LEXIS 94877 (S.D.N.Y. 2017)..................................................60, 61, 62, 64

*Nelson v. HSBC Bank USA*, 87 A.D.3d 995 (2d Dept. 2011).....................63, 67

*Nokaj v. North East Dental Mgmt., LLC*, 2019 U.S. Dist. LEXIS 24396 (S.D.N.Y. 2019)......76

*Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89 (2d Cir. 1999)……………………..………….42

*Patterson v. County of Oneida*, 375 F.3d 206 (2d Cir. 2004)……………………………....……….65

*Philbert v. City of New York*, 2022 U.S. Dist. LEXIS 3997 (S.D.N.Y. 2022)………..……...16, 70

*Quezada v. Roy*, 2015 U.S. Dist. LEXIS 140653 (S.D.N.Y. 2015)…………………….…..18, 71

*Ramos v. Marriott Int'l*, 134 F. Supp.2d 328 (S.D.N.Y. 2001)……………………………......*passim*

*Rasco v. BT Radianz*, 2009 U.S. Dist. LEXIS 21540 (S.D.N.Y. 2009)…………………….…..14, 23

*Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426 (2d Cir. 1999)….*passim*

*Robinson v. Concentra Health Servs.*, 781 F.3d 42 (2d Cir. 2015)……………………….....55, 64

*Robinson v. De Niro*, 2022 U.S. Dist. LEXIS 124208 (S.D.N.Y. 2022)………………....………47

*Rose v. N.Y.C. Bd. of Educ.*, 257 F.3d 156 (2d Cir. 2001)………………………….…………….2

*Scé v. City of New York*, 2022 U.S. App. LEXIS 5352 (2d Cir. 2022)……...……….....60, 61, 72

*Scollar v. City of New York*, 160 A.D.3d 140 (1st Dept. 2018)…………………………….....77

*Sherman v. Fivesky, LLC*, 2020 U.S. Dist. LEXIS 78801 (S.D.N.Y. 2020)……………..14, 55, 64

*Singhal v. Doughnut Plant, Inc.*, 2022 U.S. Dist. LEXIS 60674, *11-12 (S.D.N.Y. 2022)……74

*Small v. Garland*, 2021 U.S. Dist. LEXIS 63010 (S.D.N.Y. 2021)………………….………24

*Snell v. Suffolk County*, 782 F.2d 1094 (2d Cir. 1986)……………………………..…24, 25, 29

*Sumner v. United States Postal Service*, 899 F.2d 203 (2d Cir. 1990)……………………….16

*Swiderski v. Urban Outfitters, Inc.*, 2017 U.S. Dist. LEXIS 207451 (S.D.N.Y. 2017)….…..59, 65

*Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003) …………………………………11, 12, 68, 69

*Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995)………………………...………....…2, 7

*Treglia v. Town of Manlius*, 313 F.3d 713 (2d Cir. 2002)……………………………….…...37

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015)……………………21, 39

*Watson v. Emblem Health Servs.*, 158 A.D.3d 179 (1st Dept. 2018)…………………… ……..69

*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62 (2d Cir. 2000)………..……….*passim*

*Williams v. New York City Hous. Auth.*, 61 A.D.3d 62 (1st Dept. 2009)……………63, 64, 67, 68

*Woods v. Fitzcon Construction/Ren Corp.*, 2022 U.S. Dist. LEXIS 138554 (S.D.N.Y. 2022)….55

***Statutes Cited***

New York State Human Rights Law ("NYSHRL")………………………………………*passim*

New York City Human Rights Law ("NYCHRL")………………………………………*passim*

FRCP  12(b)(6)………………………………………………………………………......*74*

42 U.S.C. §1981………………………………………………………………… *passim*

**PRELIMINARY STATEMENT**

Plaintiff Marjorie Phillips ("Phillips") respectfully submits the instant Omnibus Memorandum of Law in opposition to the three, separate summary judgment motions of defendant The Fashion Institute of Technology ("FIT"), defendant Mary Davis and defendant Marilyn Barton.

The Court is respectfully referred to Plaintiff's Rule 56.1 Counter-Statement of Material Facts and the affidavit of plaintiff Phillips, which comprehensively discuss the facts applicable to the instant action, as well as the EEOC Charge of Discrimination and the pleadings.

All exhibits noted herein correspond to those listed in the accompanying Declaration of Derek Sells, Esq. and plaintiff's Rule 56.1 Counter-Statement of Material Facts.

**POINTS OF LAW**

**POINT I**

**PHILLIPS' TITLE VII CLAIMS INCLUDE ALL MATTERS REASONABLY RELATED TO THE MAY 16, 2019 BARTON INCIDENT IN THE EEOC CHARGE, AND OTHER CONTINUING HOSTILE WORK ENVIRONMENT VIOLATIONS; PHILLIPS' CLAIMS UNDER SECTION 1981 ARE NOT LIMITED BY HER EEOC CHARGE.**

Defendant FIT incorrectly argues that "All of Plaintiff's Title VII claims against FIT must be dismissed" except for the May 16, 2019 Barton incident asserted in Phillips' EEOC Charge of Discrimination.[1]   Contrary to defendant FIT, Phillips' Title VII claims properly include all matters reasonably related to the May 16, 2019 Barton incident in the EEOC Charge, and other continuing hostile work environment violations.   Further, as a matter of law, Phillips' claims under Section 1981 are not subject to, or limited by, her EEOC Charge of Discrimination.   *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1316 (2d Cir. 1995).

---

[1] Defendant FIT's Memorandum of Law, p. 6.

## A.    MATTERS REASONABLY RELATED TO PHILLIPS' EEOC CHARGE.

It is well settled that a Court may entertain Title VII claims which are not specified in an EEOC charge but "are reasonably related to the claims in the plaintiff's EEOC charge." *Small v. Garland*, 2021 U.S. Dist. LEXIS 63010, *44 (S.D.N.Y. 2021).  Such reasonably related matters include "where the claim concerns conduct that would fall within the scope of the EEOC investigation that can reasonably be expected to grow out of the charge[.]" *Id.*

In *Small*, the Southern District held that it would consider the plaintiff's Title VII claim for conduct committed by "the same individual implicated by the EEOC charge", which was "similar in nature to the behavior alleged in the EEOC charge", as that would fall within the scope of the EEOC's investigation.   *Id.*   Notably, *Small* specifically relied upon *Rose v. N.Y.C. Bd. of Educ.*, 257 F.3d 156, 163 (2d Cir. 2001) which it described as "finding that an investigation following an EEOC charge of discrimination involving a specific individual , could reasonably be expected to inquire into other instances of alleged discrimination by the same actor."

Pursuant to the Second Circuit in *Rose* and the Southern District in *Small*, an EEOC investigation into the Barton 2019 incident would reasonably include that incident's roots in: 1) defendant Barton's 2016 statement that African Americans were considered 3/5 of a human being; 2) Phillips' March 2018 Affirmative Action Complaint against Barton for such statement; 3) defendant FIT's investigation into Phillips' March 2018 complaint against Barton; and 4) whether FIT failed to take "effectively remedial and prompt"[2] action as to Barton, upon Phillips' March 2018 Affirmative Action Complaint against Barton.

---

[2]  *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 441 (2d Cir. 1999); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000).

Accordingly, contrary to defendant FIT, Phillips' Title VII claims are not limited to the May 16, 2019 Barton incident alone.   Phillips' Title VII claims properly include all of the foregoing matters under hostile work environment and co-worker retaliation, and whether FIT's actions were "effectively remedial and prompt"[3] as to Barton, upon Phillips' March 2018 Affirmative Action Complaint against Barton.

### B.   CONTINUING HOSTILE WORK ENVIRONMENT VIOLATIONS.

Under the continuing violations doctrine, Phillips' Title VII claim also properly includes the prior, underlying hostile work environment arising from racist statements by co-workers, including defendant Barton ("3/5 of a human being" statement).   In addressing a Title VII claim of hostile work environment, the United States Supreme Court ruled that under the continuing violation doctrine, discriminatory acts prior to the 300-day EEOC charge period may also be considered for determining a defendant's liability for alleged discrimination.   *AMTRAK v. Morgan*, 55 U.S. 101 (2002). As the May 16, 2019 Barton incident was timely alleged in the EEOC charge, and it is a continuation of the prior racist statements made by Phillips' co-workers in 2014, 2016 and 2017 as asserted in Phillips' March 2018 Affirmative Action Complaint, all such statements may be considered for the purposes of Phillip's Title VII hostile work environment claim.

Alternatively, even were the Court to rule otherwise, the 2014-2017 statements by Phillips' co-workers could be utilized "as 'background evidence in support of a timely claim.'" *Small v. Garland*, 2021 U.S. Dist. LEXIS 63010, *44 (S.D.N.Y. 2021).

---

[3] *Richardson v. New York State Dep=t of Correctional Serv.*, 180 F.3d 426, 441 (2d Cir. 1999); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000).

### POINT II

### DEFENDANT FIT IS NOT ENTITLED TO SUMMARY JUDGMENT AS EVIDENCE RAISES QUESTIONS OF FACT AS TO WHETHER BARTON'S 2019 VERBAL ATTACK AND THREAT TO KILL PHILLIPS CONSTITUTED A HOSTILE WORK ENVIRONMENT, VIOLATING TITLE VII AND SECTION 1981.

Defendant FIT's summary judgment motion does not address a central aspect of plaintiff Phillips' Complaint and the evidentiary record: Barton's May 16, 2019 verbal attack and threat to kill Phillips as constituting a hostile work environment, in violation of Title VII and 42 U.S.C. 1981. Defendant FIT, therefore, does not sustain its burden "to demonstrate that no genuine issue exists with respect to any material facts." *Langlois v. Hartford Bd. of Educ.*, 831 Fed. Appx. 548, 550 (2d Cir. 2020).[4]

Defendant FIT's attorney asked Phillips why she believed Barton's May 2019 verbal attack and threat to kill her was "discrimination".[5]   Phillips responded:

> **"I have never seen her act that way with a white person. I have never seen her behave that way with any white person.**   And the only other person that was in the office was another African-American, so she felt free to do what she wanted to do because the college wasn't doing anything.   **The college had not reprimanded her [as to the open 2018 Affirmative Action Complaint].**   Whatever was going on at that time, she felt free enough...**And because this Affirmative Action case was hovering over all of our heads...She just went off on me...Telling me she's going to fucking kill me.   Retaliation, discrimination. Never saw her behave like that with any white person."**[6]

---

[4] Evidence raising questions of fact as to defendant FIT's liability under hostile work environment and retaliation, for Barton's May 2019 verbal attack and threat to kill Phillips, is further discussed in Point IV herein.

[5] Plaintiff Phillips' 9-9-21 deposition, p. 136, lines 13-14 **[Exhibit K]**

[6] *Id.*, at p. 136, lines 15-25; p. 137-138, lines 2-3.

Pursuant to Second Circuit caselaw, plaintiff Phillips raises questions of fact as to whether Barton's May 2019 verbal attack and threat to kill Phillips was objectively severe to alter Phillips' employment conditions and because of race, so as to constitute a discriminatory hostile work environment.

### A.    BARTON'S MAY 2019 VERBAL ATTACK AND THREAT TO KILL PHILLIPS.

In its Memorandum of Law, defendant FIT does not mention Barton's threat to kill Phillips, and reduces Barton's behavior to mere "yell[ing] and point[ing] a finger."[7]   Plaintiff Phillips' deposition testimony presents a far more graphic and frightening description of Barton's conduct:

Q:    **Did you have an incident with Defendant Barton on May 16, 2019?**

A:    **Yes, I did.**

Q:    **Okay.   Tell me about this incident.[8]**
            **\*\*\***

A:    **And so she got really angry that I was asking her questions and she said to me that she made this executive decision.   She doesn't give a fuck what I do. Fuck you.   Shut the fuck up. *Fucking I'll kill you.*   And she just got louder and louder and louder.   *And she said, I'm tired of your bullshit.   I'm tired of your shit.   Fuck you.* Fuck you.   Fuck you.   *I'll fucking kill you.*   I'm so fucking sick and tired of you, like that, but worse.[9]**

      **...And she was in my face.   *She had walked over to me from her desk and she was in my face,* and she was foaming at the mouth...She's like I'm tired of your shit.   *I'm tired of your bullshit.   Shut the fuck up...I'll fucking kill you...And she told me she was going to fucking kill me and to shut the fuck up.*   Over and over.   I am tired of your shit.   Over and over.[10]**

      **And then...she put her hands on my chest like to push me...*I was so afraid that she was going to fucking kill me.   That she had a weapon or something, because***

---

[7]  Defendant FIT's Memorandum of Law, pp. 1, 2.

[8]  Plaintiff Phillips' deposition of 9-9-21, p. 126, lines 21-25 [**Exhibit K**].

[9]  *Id.*, at p. 130, lines 7-18.

[10]  *Id.*, at p. 130, lines 21-25; p. 131, lines 2-9.

> *she just kept saying, I'm going to fucking kill you.   And I was scared for my*
> *life...I was paralyzed with fear...I thought she was going to kill me.*[11]

During this verbal attack and threat to kill Phillips, Barton placed her index finger on Phillips' chest and prodded it back and forth, pushing Phillips.[12]

In her deposition, defendant Barton conceded that she told Phillips multiple times: "*If you don't shut the fuck up, I'm going to kill you.*"[13]

## B.   BARTON'S VERBAL ATTACK AND THREAT TO KILL PHILLIPS: OBJECTIVELY SEVERE TO ALTER EMPLOYMENT CONDITIONS.

The Complaint alleges hostile work environment under Title VII and Section 1981, due to Barton's May 2019 verbal attack and threat to kill Phillips.   "The standard for hostile work environment claims under Title VII, '1981, '1983, and the NYSHRL is the same.   Cases interpreting hostile work environment claims under these provisions are generally cited interchangeably." *Lamarr-Arruz v. CVS Pharm., Inc.*, 271 F. Supp.3d 646, 655, n.6 (S.D.N.Y. 2017).

In *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), the Supreme Court defined hostile work environment as "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (citations omitted).

Aside from the subjective perception of the victim, *Harris* held the severe or pervasive discriminatory conduct must create an "objectively hostile or abusive work environment -- an

---

[11] *Id.*, at p. 131, lines 10-25; p. 132, lines 2-11.

[12] Plaintiff Phillips' deposition of 9-10-21, p. 372, lines 2-25; p. 373, lines 2-13 [**Exhibit K**]; Plaintiff Phillips' deposition of 10-20-21, p. 396, lines 23-25; p. 397, line 2 [**Exhibit M**].

[13] Defendant Barton deposition, p. 137, lines 13-21 [**Exhibit Q**].

environment that a reasonable person would find hostile or abusive...." *Id.*, at 21-22 (1993).   Such

an objectively hostile work environment is determined "only by looking at all the circumstances",

**including "severity" of the conduct at issue and "whether it is it physically threatening**...."

*Id.*, at 23 (1993) (emphasis added).

Subsequent to *Harris*, the Second Circuit held, "Of course, even a single episode of

harassment, if severe enough, can establish a hostile work environment."   *Torres v. Pisano*, 116

F.3d 625, 631 (2d Cir. 1997) n.4, citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995).

Plaintiff Phillips testified, that on May 16, 2019, defendant Barton violently screamed in

her face and threatened to kill her numerous times:

> **"Fucking I'll kill you", "I'll fucking kill you", "Shut the fuck
> up...I'll fucking kill you...And she told me she was going to
> fucking kill me and to shut the fuck up.   Over and over."[14]**

During this verbal attack and threat to kill Phillips, Barton "was foaming at the mouth"[15]

and placed her index finger on Phillips' chest and prodded it back and forth, pushing Phillips.[16]

Although Barton's May 2019 verbal attack and threat to kill Phillips was a single event, it

was certainly "physically threatening" to constitute objectively severe conduct for hostile

workplace environment.   *Harris*, 510 U.S. at 23 (1993).   Moreover, under Second Circuit

precedent, Barton's May 2019 threat of physical violence -- threat to kill Phillips -- was objectively

severe to constitute hostile work environment.   *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537 (2d Cir.

2010); *Castagna v. Luceno*, 558 Fed. Appx. 19 (2d Cir. 2014).

---

[14]  Plaintiff Phillips' deposition of 9-9-21, p. 130, lines 7-18, lines 21-25; p. 131, lines 2-9 [**Exhibit K**].

[15]  *Id.*, p. 130, lines 21-25; p. 131, lines 2-9.

[16]  Plaintiff Phillips' deposition of 9-10-21, p. 372, lines 2-25; p. 373, lines 2-13 [**Exhibit L**]; Plaintiff
Phillips= deposition of 10-20-21, p. 396, lines 23-25; p. 397, line 2 [**Exhibit M**].

In *Kaytor*, the Second Circuit reversed the District Court's grant of summary judgment to the defendant employer where the plaintiff's supervisor "wished her dead, saying 'I'd like to see you in your coffin'", told the plaintiff "he wanted to 'choke'" her, **and said "I'll kill you."** *Kaytor,* 609 F.3d at 540, 541 (2d Cir. 2010) (emphasis added).

The Second Circuit in *Kaytor* held that such threats of physical harm and/or death "permit an inference that Kaytor's working environment was objectively abusive, i.e., that a reasonable person would find it abusive." *Id.*, at 552 (2d Cir. 2010). Similarly, the Second Circuit in *Castagna v. Luceno*, 558 Fed. Appx. 19, 21 (2d Cir. 2014), cited *Kaytor* and held, "Under our precedents, such evidence of physical threats is highly probative of the severity of the alleged hostile work environment."

Instructive to the instant action, the Second Circuit in *Kaytor* further held:

> **"A rational juror may permissibly find that a reasonable employee would view any serious death threat or threat of physical harm as sufficiently severe to alter the employee's working conditions and create an abusive environment."[17]**

Thus, pursuant to *Kaytor*, "a rational juror" may well find that Barton's May 2019 verbal attack and threat to kill Phillips was objectively severe to constitute hostile work environment – "that a reasonable person would find it abusive" and "sufficiently severe to alter...working conditions...." *Id.*, at 552 (2d Cir. 2010).

Phillips' working conditions at FIT were indeed altered as a result of Barton's May 2019 attack and threat to kill her. Phillips reported the matter to FIT's campus security and emailed SUNY's Chancellor of her concern for "personal safety" and that she has "had difficulty sleeping

---

[17] *Kaytor,* 609 F.3d at 552 (2d Cir. 2010).

and fear[s] that this behavior [by Barton] will only escalate if she is allowed back in the office."[18]

Phillips testified that because of Barton's attack and threat to kill her in May 2019, she "absolutely"

suffered emotional distress[19], and still "fear[s] for her life from Marilyn Barton as of today. She

threatened to kill me."[20]   Further, as explained in her affidavit, Phillips took a leave of absence

from work at FIT from August 15, 2019 until November 11, 2019, due to the fear and trauma she

suffered as a result of Barton's verbal attack and threat to kill Phillips.[21]

Defendant FIT's Memorandum of Law avoids mention of the Second Circuit's holdings in

*Kaytor* and/or *Castagna*.   Moreover, defendant FIT fails to cite any legal authority for its

conclusory assertion that Barton's May 2019 verbal attack and threat to kill Phillips was not

"severe" within the meaning of hostile work environment.[22]

## C.   PHILLIPS' TESTIMONY RAISES A QUESTION OF FACT AS TO WHETHER BARTON'S MAY 2019 ATTACK WAS BECAUSE OF RACE.

Pursuant to Title VII and/or Section 1981, Phillips' claim of hostile work environment is

predicated upon her race as an African American.   Defendant FIT claims that plaintiff Phillips

cannot show that Barton's May 2019 verbal attack and threat to kill Phillips was "because of" race,

as is required for a prima facie case of hostile work environment.[23]   Defendant FIT, however,

fails to realize that its attorney elicited deposition testimony from Phillips that raises a question of

fact: Whether Barton's May 2019 verbal attack and threat to kill was because of Phillips' race as

---

[18] Exhibit G.

[19] Phillips' 10-20-21 deposition, p. 430, lines 4-14 [**Exhibit M**].

[20] *Id.*, at p. 445, line 25; p. 446, lines 2-4.

[21] Phillips affidavit, para. 27 [**Exhibit R**].

[22] Defendant FIT's Memorandum of Law, p. 20.

[23] *Id.*, at p. 19.

an African American.

Defendant FIT's attorney asked Phillips why she believed Barton's May 2019 verbal attack and threat to kill her was "discrimination".[24]    Answering the deposition question posed by counsel for defendant FIT, Phillips responded:

> **I have never seen her act that way with a white person. I have never seen her behave that way with any white person.**   And the only other person that was in the office was another African-American, so she felt free to do what she wanted to do because the college wasn't doing anything.   **The college had not reprimanded her [as to the open 2018 Affirmative Action Complaint]**.   Whatever was going on at that time, she felt free enough...**And because this Affirmative Action case was hovering over all of our heads...She just went off on me...Telling me she's going to fucking kill me.   Retaliation, discrimination. Never saw her behave like that with any white person.**"[25]

This deposition testimony raises a question a fact as to whether Barton's May 2019 verbal attack and threat to kill Phillips was based upon racial animus against Phillips as an African American, since Barton had never "behav[ed] that way with any white person."[26]

In a similar matter, the Second Circuit in *Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003) reversed the District Court's grant of summary judgment to the defendant employer on hostile work environment.   In *Terry,* the alleged perpetrator of discriminatory harassment treated the plaintiff, a Caucasian, with "contempt" in contrast to the "warm" manner in which he treated "non-white employees."   *Id.*, at 150 (2d Cir. 2003).   The Second Circuit held under such facts, "a reasonable fact-finder could conclude that race was a motivating factor in the harassment."   *Id.*,

---

[24] Plaintiff Phillips='9-9-21 deposition, p. 136, lines 13-14 **[Exhibit K]**

[25] *Id.*, at p. 136, lines 13-25; pp. 137-138, lines 2-3.

[26] *Id.*

at 150 (2d Cir. 2003).

Barton did not use racial epithets during her May 2019 verbal attack and threat to kill Phillips.   However, no racial epithets were used against the plaintiff in *Terry*.   The Second Circuit in *Terry* rather focused on the contemptuous manner in which the harasser treated the plaintiff as a Caucasian.

Here, upon questioning by counsel for defendant FIT, plaintiff Phillips testified that Barton never verbally attacked and threatened to kill "any white person."[27]   Thus, under Second Circuit precedent in *Terry*, "a reasonable fact finder could conclude" that Phillips' race as an African American "was a motivating factor"[28] in Barton's May 2019 verbal attack and threat to kill Phillips. Phillips therefore satisfies Title VII's requirement of race as a motivating factor for the hostile work environment and/or raises a question of fact in this regard.   *Duverny v. Hercules Med. P.C.*, 2020 U.S. Dist. LEXIS 37547, *21 (S.D.N.Y. 2020) ("On summary judgment, a plaintiff seeking to prove a national-origin-based hostile work environment need only 'show [that] a reasonable fact finder could conclude that race or national origin *was a motivating factor* in the harassment.'"); *Terry v. Ashcroft*, 336 F.3d 128, 150 (2d Cir. 2003).

Phillips likewise satisfies Section 1981's but-for causation test for hostile work environment under *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media,* 140 S. Ct. 1009 (2020).   As Section 1981 "guarantee[s] that each person is entitled to the 'same right…as is enjoyed by white citizens'", the Supreme Court in *Comcast* held but-for causation under Section

---

[27]   Plaintiff Phillips' 9-9-21 deposition, p. 136, lines 15-25; pp. 137-138, lines 2-3 [**Exhibit K**].

[28]   *Terry,* 336 F.3d at 150 (2d Cir. 2003).

1981 is analyzed under "the counterfactual -- what would have happened if the plaintiff had been white?" *Id.*, at 1015 (2020).

Under the counter-factual, "[I]f the defendant would have responded differently [to the plaintiff] but for the plaintiff's race, it follows that the plaintiff has not received the same right as a white person", and thus plaintiff has satisfied but-for causation under Section 1981. *Id.*

Here, upon questioning by counsel for defendant FIT, plaintiff Phillips testified that Barton never verbally attacked and threatened to kill "any white person"[29] as she did to Phillips: "**I have never seen her behave that way with any white person...Telling me she's going to fucking kill me.   Retaliation, discrimination.   Never saw her behave like that with any white person.**"[30]

Under *Comcast*, therefore, Barton "would have responded differently [to the plaintiff] but for the plaintiff's race [and] it follows that the plaintiff has not received the same right as a white person."[31] Thus, plaintiff Phillips has satisfied but-for causation under Section 1981 and/or raised a question of fact in this regard, requiring denial of defendant FIT's summary judgment motion.

Defendant FIT failed to analyze causation under Title VII and/or Section 1981 with regard to Phillips' testimony that Barton never verbally attacked and threatened to kill "any white person"[32] as she did to Phillips on May 16, 2019.   Thus, defendant FIT did not sustain its burden "to demonstrate that no genuine issue exists with respect to any material facts." *Langlois v. Hartford Bd. of Educ.*, 831 Fed. Appx. 548, 550 (2d Cir. 2020).

---

[29]  Phillips' 9-9-21 deposition, p. 136, lines 15-25; p. 137-138, lines 2-3 [**Exhibit K**].

[30]  *Id.*, at p. 136, lines 15-25; p. 137-138, lines 2-3.

[31]  *Comcast*, 140 S. Ct. at 1015 (2020).

[32]  Phillips' 9-9-21 deposition, p. 136, lines 15-25; p. 137-138, lines 2-3.

### D.   DEFENDANTS' CLAIM OF NON-DISCRIMINATORY CONDUCT BY BARTON IS PRETEXUTAL.

The very same evidence that raises a question of fact as to whether defendant Barton's conduct on May 16, 2019, was because of race, demonstrates the pretextual nature of the non-discriminatory reason suggested for Barton's behavior by defendants FIT and Barton.

In their separate Memoranda of Law, defendants FIT and Barton claim that Barton's conduct on May 16, 2019, was due to an office dispute concerning a student's graduation regalia.[33] However, neither defendant addressed Phillips' deposition testimony showing Barton's May 2019 verbal attack and threat to kill Phillips was based upon racial animus against Phillips as an African American.   As Phillips testified, **"I have never seen her [Barton] behave that way with any white person...Telling me she's going to fucking kill me.   Retaliation, discrimination. Never saw her behave like that with any white person."**[34]

Defendants prefer to ignore this testimony by plaintiff Phillips, and thus their claim of non-discriminatory conduct is rendered pretextual.   *Conway v. Microsoft Corp.*, 414 F. Supp.2d 450, 461 (S.D.N.Y. 2006) ("Pretext may be demonstrated either by presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more."); *Ramos v. Marriott Int'l*, 134 F. Supp.2d 328, 343 (S.D.N.Y. 2001) ("It is well settled that a plaintiff may 'establish pretext and thereby successfully oppose summary judgment,...by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reason for its action.'").

---

[33]   Defendant FIT Memorandum of Law, p. 20; defendant Barton Memorandum of Law, p. 17.

[34]   Plaintiff Phillips deposition of 9-9-21, at p. 136, lines 15-25; p. 137-138, lines 2-3 **[Exhibit K]**.

## POINT III

**DEFENDANT FIT IS NOT ENTITLED TO SUMMARY JUDGMENT
AS EVIDENCE RAISES QUESTIONS OF FACT AS TO WHETHER BARTON'S
2019 VERBAL ATTACK AND THREAT TO KILL PHILLIPS CONSTITUTED
RETALIATORY HOSTILE WORK ENVIRONMENT AND/OR RETALIATORY
HARASSMENT FOR PHILLIPS' AFFIRMATIVE ACTION COMPLAINT.**

Title VII and Section 1981 prohibit an employer from retaliating against an employee who opposed an unlawful employment practice, such as discrimination. *Sherman v. Fivesky, LLC*, 2020 U.S. Dist. LEXIS 78801, *21 (S.D.N.Y. 2020); *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 443 (2d Cir. 1999). Defendant FIT may be held liable for co-worker retaliation, which is "sufficiently severe", and arises from FIT's failure to take "effectively remedial and prompt"[35] action upon an initial complaint of discriminatory conduct, such as Phillips' March 2018 Affirmative Action Complaint against Barton.[36]

Under a heading of "Retaliation", paragraph 25 of the Complaint alleges that defendant Barton's May 2019 verbal attack and threat to kill Phillips occurred while they were "still awaiting the outcome" of Phillips' March 2018 Affirmative Action Complaint. Defendant FIT's summary judgment motion fails to address record evidence that Barton's May 2019 verbal attack and threat to kill Phillips constituted retaliatory hostile work environment and/or retaliatory harassment for Phillips' March 2018 Affirmative Action Complaint against Barton.

Indeed, defendant FIT shuts its eyes to Barton's own statement to FIT[37], concerning the May 2019 incident, which evidences Barton's retaliatory animus against Phillips. In her

---

[35] *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62 (2d Cir. 2000); *Richardson*, 180 F.3d 426, 443 (2d Cir. 1999); *Rasco v. BT Radianz*, 2009 U.S. Dist. LEXIS 21540 (S.D.N.Y. 2009).

[36] Evidence raising questions of fact as to defendant FIT's liability under hostile work environment and retaliation, for Barton's May 2019 verbal attack and threat to kill Phillips, is further discussed in Point IV herein.

[37] **Exhibit D.**

statement to FIT, Barton specifically mentioned: 1) Phillips had previously accused Barton of racism; and 2) Phillips' then-pending Affirmative Action Complaint against Barton (arising from alleged racism).   Defendant FIT's Memorandum of Law likewise omits that FIT's Affirmative Action Officer, Deliwe Kekana, reviewed Barton's statement to FIT and testified that it is *"evidence"* that Barton retaliated against Phillips at the time of the May 16, 2019 incident.[38]

The evidentiary record ignored by defendant FIT, thus raises a question of fact, defeating defendant FIT's summary judgment motion: **Whether Barton's 2019 verbal attack and threat to kill Phillips constituted retaliatory hostile work environment and/or retaliatory harassment for Phillips' prior Affirmative Action Complaint.**

## A.   THE FOUR ELEMENTS OF RETALIATION; PHILLIPS SATISFIES ELEMENTS ONE AND TWO AS A MATTER OF LAW.

A plaintiff establishes a prima facie case of retaliation by satisfying four elements: "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'"   *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019) (citation omitted). The "'burden in this regard is de minimis.'" *Id.*

Phillips satisfies the first two elements of retaliation as a matter of law.   The first element of "protected activity" is satisfied by Phillips' March 2018 Affirmative Action complaint, which concerned discrimination in the form of racist statements from co-workers, including Barton.[39] Phillips does not need to prove the underlying merits of her March 2018 Affirmative Action complaint.   Rather, she may rely on her good-faith basis for the complaint as delineated in

---

[38] Kekana deposition, p. 235, lines 2-18 [**Exhibit N**].

[39] *Richardson*, 180 F.3d at 443 (2d Cir. 1999).

Plaintiff's Counter-Statement of Material Facts. *Philbert v. City of New York*, 2022 U.S. Dist. LEXIS 3997 (S.D.N.Y. 2022); *Sumner v. United States Postal Service*, 899 F.2d 203 (2d Cir. 1990).

The second element, "defendant knew of the protected activity", is likewise met since Barton knew of Phillip's March 2018 Affirmative Action Complaint by "spring of 2018", and submitted a response on May 2, 2018.[40]

### B.   THE THIRD ELEMENT OF RETALIATION: ADVERSE EMPLOYMENT ACTION DUE TO RETALIATORY HOSTILE WORK ENVIRONMENT AND/OR RETALIATORY HARASSMENT.

It is well settled that "A hostile work environment itself can constitute an adverse employment action, the third prong required to establish retaliation." *Berger-Rothberg v. City of New York*, 803 F. Supp.2d 155, 166 (E.D.N.Y. 2011); *Grimes-Jenkins v. Consol. Edison Co. of N.Y.*, 2021 U.S. Dist. LEXIS 62975, *30-31 (S.D.N.Y. 2021)("A plaintiff may establish that a retaliatory  hostile work environment constitutes a materially adverse change by satisfying the same standard that is applied generally to hostile work environment claims regarding the severity of the alleged conduct.").

Thus, as Phillips has made a prima facie case of hostile work environment arising from Barton's May 2019 verbal attack and threat to kill Phillips, and/or raised a question of fact in that regard, she has likewise done so with Barton's conduct as retaliatory hostile work environment. "Because Plaintiff has satisfied the hostile work environment standard, Defendant is not entitled to summary judgment on this claim [of retaliatory hostile work environment]." *Grimes-Jenkins*

---

[40] Defendant Barton deposition, pp. 66-67 [**Exhibit Q**]; Kekana=s October 2019 report with timeline [**Exhibit J**].

*v. Consol. Edison Co. of N.Y.*, 2021 U.S. Dist. LEXIS 62975, *31 (S.D.N.Y. 2021).

As an alternative to retaliatory hostile work environment, by itself Barton's May 2019 verbal attack and threat to kill Phillips constitutes an adverse employment action for the third element of retaliation. In *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006), the Supreme Court defined adverse employment action as one in which "a reasonable employee" would have been "'dissuaded...from making or supporting a charge of discrimination.'" The Supreme Court further explained this is an "objective standard" as in "other Title VII contexts", such as hostile work environment. *Id.*

We have already demonstrated that Barton's May 2019 verbal attack and threat to kill Phillips was objectively severe for hostile work environment, and/or raised a question of fact in this regard, pursuant to *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537 (2d Cir. 2010) and *Castagna v. Luceno*, 558 Fed. Appx. 19 (2d Cir. 2014).    Therefore, *a fortiori* Barton's May 2019 verbal attack and threat to kill Phillips would objectively dissuade "a reasonable employee" "from making or supporting a charge of discrimination.'"  *Burlington,* 548 U.S. at 68 (2006).    See also, *Quezada v. Roy*, 2015 U.S. Dist. LEXIS 140653,*57-58 (S.D.N.Y. 2015) ("A threat to kill someone for filing a grievance is sufficiently serious that it might well deter a person of ordinary firmness from exercising his First Amendment rights....").

Thus, Barton's May 2019 verbal attack and threat to kill Phillips constitutes an adverse employment action for retaliation and/or raises a question of fact in this regard, requiring denial of defendant FIT's summary judgment motion.    Indeed, "A rational juror may permissibly find that a reasonable employee would view any serious death threat or threat of physical harm" as a matter that would "dissuade" one "from making or supporting a charge of discrimination.'"  *Kaytor,* 609 F.3d at 552 (2d Cir. 2010); *Burlington,* 548 U.S. at 68 (2006). Finally, the Second Circuit has

likewise held that "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute an adverse employment action" for purposes of a retaliation claim. *Richardson,* 180 F.3d 426, 446 (2d Cir. 1999).

**C.    THE FOURTH ELEMENT OF RETALIATION: CAUSAL CONNECTION SHOWN BY EVIDENCE OF BARTON'S RETALIATORY ANIMUS.**

The fourth element of retaliation is "a causal connection between the protected activity and the adverse employment action." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019).

To establish a causal connection "between the protected activity" and a retaliatory hostile work environment, a plaintiff must show "'some increase in the discrimination or harassment, either a ratcheting up of the preexisting behavior, or new, additional forms of harassment....'" *Berger-Rothberg v. City of New York*, 803 F. Supp.2d 155, 166 (E.D.N.Y. 2011) (citation omitted).

Phillips' protected activity was her March 2018 Affirmative Action complaint against Barton for the racist statement that "African Americans were considered 3/5 of a human being."[41] Barton's May 2019 verbal attack and threat to kill Phillips, after the March 2018 Affirmative Action complaint, was certainly an "increase in the discrimination or harassment...or [a] new, additional form[] of harassment"[42] over her prior racist statement that African Americans were considered 3/5 of a human being.    Thus, plaintiff Phillips has satisfied causal connection for retaliatory hostile work environment and/or raised a question of fact in this regard.

In considering Barton's May 2019 verbal attack and threat to kill Phillips as retaliatory harassment unto itself, evidence of Barton's retaliatory animus provides a causal connection to

---

[41] Phillips' deposition of 9-9-21, pp. 95-101 [**Exhibit K**]; Phillips March 23, 2018 Complaint to FIT Affirmative Action Office, page bates stamped 073 [**Exhibit B**]; Complaint, para. 17.

[42] *Berger-Rothberg*, 803 F. Supp.2d 155 at 166 (E.D.N.Y. 2011).

Phillips' March 2018 Affirmative Action complaint against Barton.   *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) ("A causal connection in retaliation claim can be shown...directly through evidence of retaliatory animus directed against the plaintiff by the defendant.").

As discussed in plaintiff's Rule 56.1 Counter-Statement, Barton's own statement to FIT concerning the May 2019 incident[43], evidences Barton's retaliatory animus against Phillips.   In her statement to FIT, Barton specifically mentioned: 1) Phillips had previously accused Barton of racism; and 2) Phillips' then-pending Affirmative Action Complaint against Barton (arising from alleged racism):

> **"There was a situation where she accused me of racism."[44]**
> ***
> **"I am ashamed I lost my temper.   I was pushed, it was the last straw.   Marjorie [Phillips] complained about me, it went up to Affirmative Action and there is still no resolution."[45]**

Likewise, as discussed in plaintiff's Rule 56.1 Counter-Statement, FIT's Affirmative Action Officer, Deliwe Kekana, reviewed Barton's statement to FIT and testified that it is *"evidence"* that Barton retaliated against Phillips at the time of the May 16, 2019 incident:

> **"[A]ccording to what Marilyn Barton attests, she states that it was retal -- is evidence that it was retaliatory."[46]**

Kekana did not possess Barton's statement when she issued her October 2019 report as to Phillips' March 2018 Affirmative Action complaint. Had Kekana possessed Barton's statement,

---

[43]  Defendant Barton's Statement to FIT of the May 16, 2019 incident [**Exhibit D**].

[44]  *Id.*

[45]  *Id.*

[46]  Kekana deposition, p. 235, lines 2-18 [**Exhibit N**].

she "would have investigated it under the same investigation of discrimination" as the March 2018 Affirmative Action complaint.[47]

Finally, "but for" causation for retaliation does not require sole proximate cause.    Instead, but-for causation is satisfied, and/or a question of fact is raised in that regard, where "the adverse action would not have occurred in the absence of the retaliatory motive." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90-91 (2d Cir. 2015); *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Vega*).

Based upon Barton's statement to FIT and Kekana's testimony, a rational jury may permissibly find that Barton's May 2019 verbal attack and threat to kill Phillips "would not have occurred in the absence of"[48] Barton's retaliatory animus over: 1) Phillips' prior accusation against Barton of racism; and 2) Phillips' then-pending Affirmative Action Complaint against Barton.    Accordingly, plaintiff Phillips has raised questions of fact as to Barton's retaliatory motive and thus causal connection between Phillips' March 2018 Affirmative Action complaint against Barton and Barton's May 2019 verbal attack and threat to kill Phillips.

## D.    DEFENDANTS' CLAIM OF NON-DISCRIMINATORY CONDUCT BY BARTON IS PRETEXUAL.

The foregoing evidence of retaliatory animus demonstrates the pretextual nature of the non-discriminatory reason suggested for Barton's behavior by defendants FIT and Barton.    In their separate Memoranda of Law, defendants FIT and Barton claim that Barton's conduct on May 16,

---

[47] *Id.*, p. 246, lines 8-11.

[48] *Vega,* 801 F.3d at 90-91 (2d Cir. 2015); *Duplan,* 888 F.3d at 625 (2d Cir. 2018).

2019 was due to an office dispute concerning a student's graduation regalia.[49]    However, neither defendant addressed: 1) Barton's own statement to FIT concerning the May 2019 incident[50], evidencing Barton's retaliatory animus against Phillips; and/or 2) Kekana's deposition testimony that Barton's statement to FIT was *"evidence"* that Barton retaliated against Phillips at the time of the May 16, 2019 incident.

Defendants prefer to ignore the evidence of Barton's retaliatory animus, and thus their claim of non-discriminatory conduct is rendered pretextual.    *Conway v. Microsoft Corp.*, 414 F. Supp.2d 450, 461 (S.D.N.Y. 2006) ("Pretext may be demonstrated either by presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more."); *Ramos v. Marriott Int'l*, 134 F. Supp.2d 328, 343 (S.D.N.Y. 2001) ("'It is well settled that a plaintiff may 'establish pretext and thereby successfully oppose summary judgment,...by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reason for its action.'").

## POINT IV

**DEFENDANT FIT IS NOT ENTITLED TO SUMMARY JUDGMENT SINCE EVIDENCE RAISES QUESTIONS OF FACT AS TO WHETHER FIT PERFORMED AN EFFECTIVELY REMEDIAL AND PROMPT INVESTIGATION INTO PHILLIPS' MARCH 2018 AFFIRMATIVE ACTION COMPLAINT, AND THUS WHETHER FIT IS LIABLE FOR BARTON'S MAY 2019 VERBAL ATTACK AND THREAT TO KILL PHILLIPS.**

Defendant FIT cannot simply fob off liability for Barton's May 2019 verbal attack and

---

[49]  Defendant FIT Memorandum of Law, p. 20; defendant Barton Memorandum of Law, p. 17.

[50]  Defendant Barton's Statement to FIT of the May 16, 2019 incident [**Exhibit D**].

threat to kill Phillips, by claiming "Barton was a coworker with no supervisory authority."[51]   As a matter of law, defendant FIT may be held liable for co-worker retaliation, which is "sufficiently severe", and arises from FIT's failure to take "effectively remedial and prompt"[52] action upon an initial complaint of discriminatory conduct -- such as Phillips' March 2018 Affirmative Action Complaint against Barton.   Paragraph 45 of the Complaint in the instant action alleges, *inter alia*, "The lack of action by FIT...created the environment that led to the physical assault against Plaintiff by Defendant Barton."

FIT's investigation into Phillips' March 2018 Affirmative Action Complaint was still open and unresolved at the time of Barton's May 2019 verbal attack and threat to kill Phillips.[53] Indeed, FIT did not conclude its investigation into Phillips' March 2018 Affirmative Action Complaint until October 2019 -- after Barton's May 2019 verbal attack and threat to kill Phillips.[54]

Significantly, defendant Barton specifically referenced FIT's open and unresolved Affirmative Action investigation in her statement to FIT concerning the May 2019 incident:

> **"I am ashamed I lost my temper.   I was pushed it was the last straw.   Marjorie [Phillips] complained about me, it went up to Affirmative Action and there is still no resolution."[55]**

Thus, query whether defendant FIT's investigation into Phillips' March 2018 Affirmative Action Complaint was "effectively remedial and prompt"[56], so as to prevent any further racial

---

[51] Defendant FIT's Memorandum of Law, p. 20.

[52] *Whidbee,* 223 F.3d 62 (2d Cir. 2000); *Richardson,* 180 F.3d 426, 443 (2d Cir. 1999); *Rasco v. BT Radianz,* 2009 U.S. Dist. LEXIS 21540 (S.D.N.Y. 2009).

[53] Kekana deposition, p. 215-216 [**Exhibit N**].

[54] *Id.*

[55] **Exhibit D.**

[56] *Whidbee,* 223 F.3d 62 (2d Cir. 2000); *Richardson,* 180 F.3d 426, 443 (2d Cir. 1999); *Rasco,* 2009 U.S.

discrimination and/or retaliatory harassment by Barton against Phillips.    "If the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate."[57]

**A.    FIT'S DUTY TO ELIMINATE RACIAL DISCRIMINATION; FIT KNEW OF A RACIALLY COMBATIVE WORKPLACE BEFORE BARTON'S MAY 2019 THREAT TO KILL PHILLIPS.**

In *Snell v. Suffolk County*, 782 F.2d 1094, 1104 (2d Cir. 1986), the Second Circuit held "[O]nce an employer has knowledge of a racially combative atmosphere in the workplace, he has a duty to take reasonable steps to eliminate it."

Phillips' March 2018 Affirmative Action Complaint concerned racist statements made by co-workers, including Barton's "3/5 of a human being" statement. In her March 2018 Affirmative Action complaint, Phillips was quite explicit in complaining about Barton's racist statement that African Americans were considered 3/5 of a human being.    Phillips' March 2018 Affirmative Action complaint stated, *inter alia*:

> **"I told her [Barton] I was offended**.    I told her I was insulted...It's something that a Black person is going to be offended by. This is not something I want to hear from anybody, particularly at a job, as an African-American...**I've never in my whole life had a white person reference that African Americans were once considered 3/5 of a human being...[A]ny reasonable black person does not want to be reminded of this...**So the last thing I want to hear by white colleagues discussing at the watercooler is that my ancestors were considered 3/5 of a person...**The one time Marilyn Barton decides to discuss race...it was to belittle (in my opinion) her African-American colleagues...."**[58]

---

Dist. LEXIS 21540 (S.D.N.Y. 2009).

[57] *Richardson*, 180 F.3d at 441 (2d Cir. 1999).

[58] Plaintiff Phillips' March 23, 2018 Complaint to FIT Affirmative Action Office [**Exhibit B**].

Thus, as of March 2018, defendant FIT was already on notice of a "racially combative atmosphere"[59] in the FIT workplace involving Barton.    As the employer, defendant FIT "will be liable in negligence for a racially...hostile work environment created by a victim's coworkers if the employer know about (or reasonably should know about) that harassment but fails to take appropriately remedial action."[60]    *Richardson,* 180 F.3d 426, 446 (2d Cir. 1999); *Whidbee,* 223 F.3d 62, 72 (2d Cir. 2000).

Since defendant FIT knew of a "racially combative"[61] workplace involving Barton as of March 2018, the evidence raises a question of fact as to whether FIT should have reasonably known of Barton's May 2019 verbal attack and threat to kill Phillips.    Based upon Phillips' March 2018 Affirmative Action complaint, a rational juror may permissibly find that FIT was on notice, and should have reasonably known of Barton's May 2019 verbal attack and threat to kill Phillips, as an outgrowth of the prior racial incident involving Barton.

## B.    QUESTION OF FACT AS TO WHETHER FIT PERFORMED AN EFFECTIVELY REMEDIAL AND PROMPT INVESTIGATION INTO PHILLIPS' MARCH 2018 AFFIRMATIVE ACTION COMPLAINT.

As the employer, defendant FIT "will be liable for any hostile work environment created by [Phillips'] co-workers unless it can show that it took immediate and prompt remedial action." *Richardson,* 180 F.3d 426, 440 (2d Cir. 1999); *Whidbee,* 223 F.3d 62, 72 (2d Cir. 2000).

---

[59] *Snell v. Suffolk County,* 782 F.2d 1094, 1104 (2d Cir. 1986).

[60] In an abundance of caution, we state the obvious: A federal discrimination action under Title VII and/or 42 U.S.C. 1981 is not a state common-law negligence claim, and therefore is not subject to Workers' Compensation exclusivity. "The New York State Worker's Compensation does not bar an employee from suing his employer under federal civil rights laws." *Liss v. Nassau County,* 425 F.Supp.2d 335, 342 (E.D.N.Y. 2006); *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184. 1190 (2d Cir. 1987) ("Were state law to erect such a bar, it would clearly run afoul of the Supremacy Clause of the U.S. Const. Art. VI, Cl. 2."); *Torres v. Pisano,* 116 F.3d 625,640 (2d Cir. 1997) ("Title VII harassment" not subject to Workers Compensation).

[61] *Id.*

Thus, "If the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate." *Richardson,* 180 F.3d at 441 (2d Cir. 1999); *Whidbee,* 223 F.3d at 73 (2d Cir. 2000).   Here, the evidence raises a question of fact as to whether FIT's investigation into Phillips' March 2018 Affirmative Action Complaint, was "effectively remedial and prompt"[62], where it was still open and unresolved at the time of Barton's May 2019 verbal attack and threat to kill Phillips.

In its Memorandum of Law, defendant FIT concedes its investigation into Phillips' March 2018 Affirmative Action Complaint took "over a year", as opposed to FIT's standard of 60-days.[63] Kekana, FIT's Affirmative Action Officer, testified that it took her 1 and 1/2 years to complete her investigation, as she did not issue her report until October 2019 -- after Barton's May 2019 verbal attack and threat to kill Phillips. Kekana deposition, pp. 215-216.

Moreover, the timeline in Kekana's October 2019 report shows investigatory activity only from April-July 9, 2018.   However, absolutely no activity whatsoever is shown after July 9, 2018.[64]   From July 10, 2018, through Barton's May 16, 2019 verbal attack and threat to kill Phillips, what was Kekana and FIT doing to remedy Phillips' prior complaint of racism against Barton?   The answer is seemingly nothing, thereby causing Barton to stew in her own anger about Phillips' open and pending March 2018 Affirmative Action complaint.   Indeed, Barton specifically referenced FIT's open and unresolved Affirmative Action investigation in her statement to FIT concerning the May 2019 incident:

**"I am ashamed I lost my temper.   I was pushed it was the last**

---

[62] *Id.*

[63] Defendant FIT's Memorandum of Law, pp. 11-12.

[64] **Exhibit J** at pp. 12-13.

straw.   **Marjorie [Phillips] complained about me, it went up to Affirmative Action and there is still no resolution.**"[65]

Cynthia Glass ("Glass"), Vice President of HR Management and Labor Relations of defendant FIT, testified that "the length of the [disciplinary] process can cause disruption and stress to the parties involved."[66]  Separately, in a document produced by Barton, Glass purportedly said: **"We think part of what's happening is that there is no closure on investigation."**[67]

Thus, as plaintiff Phillips surmised: "Marilyn had to live with this uncertainty...every day, because there was no resolution.   And Marilyn cracked.   She just went off on me...Retaliation, discrimination.   Never saw her behave like that with any white person."[68]

Relatedly, despite the open and pending investigation into Phillips' Affirmative Action Complaint, defendant FIT left Phillips in the cauldron of the same office space with Barton.[69] Keeping Barton and Phillips together was certainly not "effectively remedial" of Phillip's racism complaint against Barton.

Accordingly, the overwhelming evidence raises a question of fact as to whether defendant FIT, as the employer, performed an "effectively remedial and prompt investigation"[70] into Phillips' March 2018 Affirmative Action complaint, where it was still open and unresolved at the time of Barton's May 2019 verbal attack and threat to kill Phillips.

---

[65]   **Exhibit D.**

[66]   Glass deposition, p. 47, lines 11-23 [**Exhibit O**].

[67]   **Exhibit E; See also, Exhibit F.**

[68]   Phillips 9-9-21 deposition, p. 136, lines 13-25; p. 137-138, lines 2-3 [**Exhibit K**].

[69]   Defendant Barton deposition, p. 43 [**Exhibit Q**]; Plaintiff Phillips' Affidavit, para. 4, 26 [**Exhibit R**]; Plaintiff Phillips 9-9-21 deposition, pp. 126-131 [**Exhibit K**]; Defendant Davis deposition, pp. 229-230 [**Exhibit P**].

[70]   *Richardson,* 180 F.3d at 441 (2d Cir. 1999); *Whidbee,* 223 F.3d at 73 (2d Cir. 2000).

"If the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate." *Richardson,* 180 F.3d at 441 (2d Cir. 1999); *Whidbee,* 223 F.3d at 73 (2d Cir. 2000). Further, "if harassment continues after complaints are made" -- as occurred after Phillips' March 2018 Affirmative Action complaint – "reasonable jurors may disagree as to whether an employer's response was adequate." *Whidbee,* 223 F.3d at 73 (2d Cir. 2000). This Court, therefore, should deny defendant FIT's summary judgment motion.

### C.   DEFENDANT FIT'S CLAIM OF NON-DISCRIMINATION IS CONTRARY TO LAW AND THUS PRETEXTUAL.

In its Memorandum of Law, defendant FIT asserts that the "timing" of its October 2019 investigation report -- 1 1/2 years after plaintiff Phillips' March 2018 Affirmative Action Complaint -- was "legitimate" and/or does not constitute an adverse employment action.[71] Defendant FIT defends its 1 1/2 year paralysis on the manner in which it "prioritized" matters.[72] However, this directly contradicts Second Circuit caselaw mandating an employer undertake "effectively remedial and prompt" action to investigate an employee's complaint of discrimination. *Richardson,* 180 F.3d at 441 (2d Cir. 1999).

The Second Circuit does not afford the employer with a 1 1/2 year time-period to prioritize its matters. Rather, "[O]nce an employer has knowledge of a racially combative atmosphere in the workplace, he has a duty to take reasonable steps to eliminate it." *Snell v. Suffolk County,* 782 F.2d 1094, 1104 (2d Cir. 1986). Defendant FIT's 1 1/2 years to prioritize matters cannot constitute "effectively remedial and prompt" action to investigate and resolve Phillips' March

---

[71] Defendant FIT Memorandum of Law, p. 15; p. 12.

[72] *Id.,* p. 12.

2018 complaint of discrimination.   *Richardson,* 180 F.3d at 441 (2d Cir. 1999).

Likewise, defendant misplaces reliance upon *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010).   In *Fincher*, the Second Circuit rejected the plaintiff's claim that an employer's "failure to investigate her complaint of discrimination was itself an act of retaliation for making the discrimination complaint." *Id.*, at 716 (2d Cir. 2010). This is distinguished from Phillips' Complaint, which alleges liability against defendant FIT for lack of "effectively remedial and prompt"[73] action to investigate and resolve her March 2018 complaint of discrimination.   Indeed, Phillips' Complaint alleges, *inter alia*:

> "FIT and Defendant Davis failed to address Plaintiff's 2018
> affirmative action complaint in a timely fashion and thereby allowed
> the conditions for Barton's brutal verbal and physical assault on
> Plaintiff."

Accordingly, defendant FIT's reliance on *Fincher* is inapposite as is FIT's argument that it is afforded 1 1/2 years to prioritize its matters and then issue a report resolving Phillips' March 2018 Affirmative Action Complaint. Defendant FIT's arguments are contrary to settled caselaw and thus pretextual.   *Ramos v. Marriott Int'l*, 134 F. Supp.2d 328, 343 (S.D.N.Y. 2001) ("It is well settled that a plaintiff may establish pretext and thereby successfully oppose summary judgment,...by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reason for its action.").

## POINT V

### DEFENDANT FIT IS NOT ENTITLED TO SUMMARY JUDGMENT SINCE EVIDENCE RAISES QUESTIONS OF FACT AS TO WHETHER DEFENDANT DAVIS RETALIATED AGAINST PHILLIPS BY NOT REQUESTING AN UPGRADE FOR PHILLIPS AFTER THE MARCH 2018 AFFIRMATIVE ACTION COMPLAINT.

---

[73] *Richardson,* 180 F.3d at 441 (2d Cir. 1999).

Plaintiff Phillips' 2018 Affirmative Action complaint was not just against defendant Barton -- it was against defendant Davis as well.[74]   Davis was Phillips' immediate supervisor at FIT.[75] Defendant FIT mischaracterizes the evidence when it claims that Phillips did not receive an upgrade – FIT's terminology for promotion -- because of her own "inaction" in "never appl[ying] for a vacancy."[76] Indeed, defendant FIT ignores testimony by defendant Davis that as Phillips' supervisor, she "could trigger" the upgrade[77], and corresponding testimony by Phillips that "you can't get an upgrade without your supervisor."[78]   Defendant FIT further disregards its own evidence that an upgrade at FIT did not require a job vacancy. Rather, an upgrade was a post-facto recognition of the employee's transition into a new role, providing the employee with "title 'reclassification' to a higher title."[79]

Similarly, defendant FIT seemingly forgets Phillips' testimony concerning the adverse impact the March 2018 Affirmative Action complaint had on her relationship with Davis as her supervisor.   Prior to the Affirmative Action complaint, Davis agreed to an upgrade for Phillips.[80] After Phillips filed the Affirmative Action complaint against Davis, it was Davis who changed their relationship for the worse and Davis never raised the upgrade again.[81]

---

[74] Plaintiff Phillips' March 23, 2018 Complaint to FIT Affirmative Action Office, bates stamp 076 **[Exhibit B]**.

[75] Complaint, para. 14 and Defendant FIT's Answer, para. 14; defendant Davis deposition, p. 122 **[Exhibit P]**; Plaintiff Phillips' Affidavit, para. 3, 6 **[Exhibit R]**.

[76] Defendant FIT Memorandum of Law, pp. 9, 10.

[77] Defendant Davis deposition, p. 125, lines 8-20 **[Exhibit P]**.

[78] Phillips 9-9-21 deposition, pp. 196-197 **[Exhibit K]**.

[79] Glass Affidavit, para. 16 [ECF Doc. 83].

[80] Phillips 9-9-21 deposition, pp. 194-195 **[Exhibit K]**; Phillips= affidavit, para. 12, 13 **[Exhibit R]**.

[81] Phillips 9-9-21 deposition, p. 124, lines 7-25; p. 126, lines 7-20; p. 196, lines 22-25; p. 197, lines 2-7.

Consistent with her deposition testimony, Phillips attests in an affidavit that because Davis changed their relationship for the worse after the Affirmative Action complaint, it would have been futile for her to approach Davis about the previously agreed-upon upgrade.[82]   As a matter of law, "a plaintiff's failure to apply for a position is not a bar to relief when an employer's discriminatory practices deter application or make application a futile endeavor."   *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1213 (2d Cir. 1993), citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-366 (1977).   The evidence, therefore, raises a question of fact: Whether defendant Davis retaliated against Phillips, by not requesting an upgrade for Phillips after the March 2018 Affirmative Action complaint.

### A.   THE UPGRADE DID NOT REQUIRE A JOB VACANCY; PHILLIPS WAS QUALIFIED FOR THE UPGRADE AS SHE HAD ALREADY BEEN PERFORMING BEYOND HER CURRENT JOB TITLE/POSITION.

"[T]o make out a prima facie case of discriminatory failure to promote...a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the job for which she applied, (3) she was denied the job, and (4) the denial occurred under circumstances giving rise to an inference of discrimination on a basis forbidden by Title VII."   *Howley v. Town of Strafford*, 217 F.3d 141, 150 (2d Cir. 2000). The plaintiff's burden in this regard is "de minimus."   *Id.*

Here, it is uncontested that Phillips is a member of a protected class as an African American. In its Memorandum of Law, defendant FIT claims "there was no alleged vacancy", "No vacancy existed" and thus Phillips fails to meet the second element of failure to promote.[83] Defendant FIT, however, disregards its own evidence: An upgrade at FIT did not require a job

---

[82]  Plaintiff Phillips' affidavit, para. 20-24.

[83]  Defendant FIT's Memorandum of Law, p. 10.

vacancy.

As Cynthia Glass attested in her affidavit, an employee who receives an upgrade is simply "reevaluat[ed]" based upon performance of "significant and additional job duties and responsibilities", and "approved for a title 'reclassification' to a higher title."[84]   Thus, an upgrade at   FIT does not require a job vacancy; the employee receiving the upgrade had already transitioned into a new role by virtue of prior performance of "significant and additional job duties and responsibilities".   *Id.*   The upgrade itself is simply post-facto recognition of the employee's transition into a new role, providing the employee with "title 'reclassification' to a higher title."[85]

Significantly, defendant FIT's Memorandum of Law does not contest that Phillips was qualified for the upgrade based upon Phillips' performance of "significant and additional job duties and responsibilities".   *Id.*   Glass' affidavit does not address Phillips' job duties and performance in or about 2017 and onward.   Instead, Glass' affidavit merely attaches old, outdated and irrelevant job descriptions that were long inapplicable to Phillips' job duties in 2017.[86]

Phillips' supervisor, defendant Davis, could not definitively state whether Phillips performed duties beyond her job description, testifying:   "I don't believe she [Phillips] was working out of her job description.   I would need to see that job description and re-visit the facts in order to make a definitive statement about that."[87]

Plaintiff Phillips, however, testified that in 2017 Davis agreed to an upgrade for Phillips:

---

[84]  Affidavit of Cynthia Glass, para. 16, 29 (ECF Doc 83).

[85]  *Id.*

[86]  Phillips' Affidavit, para. 6-10 [**Exhibit R**].

[87]  Defendant Davis deposition, p. 132, lines 24-25; p. 133, lines 2-3, 19-23 [**Exhibit P**].

> **"I had a conversation with Dean Mary Davis about an upgrade
> and we agreed that there would be an upgrade.**   We went as far
> as discussing what the new role, the new responsibilities would
> include...We discussed the salary, along with an upgrade, there is a
> promotion, and then there is a salary that goes along with it."[88]

Further, Phillips testified that when Davis had agreed to an upgrade for Phillips in 2017,

she was already performing beyond her job title and position:

> "...I was taking on and she was giving more and more responsibility,
> like different things that she wanted to see happen in the School of
> Graduate Studies...And I had already started C it wasn't like B
> everything wasn't in the future.   I had already started doing some
> of these things...And even before I came to the meeting, I was taking
> on more responsibility...."[89]

Notably, defendant Davis did not submit an affidavit to dispute plaintiff Phillips'

deposition testimony that: 1) Davis had agreed to an upgrade for Phillips; and 2) Phillips was

already performing beyond her job title and position.

Consistent with her deposition testimony, Phillips' affidavit provides a laundry-list of "new

and additional responsibilities" that she was already performing "in approximately mid-

2017/Summer 2017" under Davis' instruction.[90]   Phillips attests that because of these new and

additional job responsibilities, Davis "agreed to recommend me for an Upgrade and submit the

necessary paperwork for me to obtain an Upgrade."[91]

As Phillips was qualified for the upgrade, and the upgrade did not require a vacancy,

Phillips satisfied the second element of failure to promote claim.

---

[88] Plaintiff Phillips 9-9-21 deposition, p. 194, lines 20-25; p. 195, lines 2-7 [**Exhibit K**].

[89] Phillips' 9-9-21 deposition, p. 197, lines 8-25; p. 198, lines 2-8.

[90] Phillips' Affidavit, para. 11, 12 [**Exhibit R**].

[91] *Id.*, para. 13.

**B.   DAVIS DID NOT REQUEST THE UPGRADE AFTER THE AFFIRMATIVE ACTION COMPLAINT; THE RELATIONSHIP BETWEEN DAVIS AND PHILLIPS DETERIORATED, LEAVING IT FUTILE FOR PHILLIPS TO SEEK AN UPGRADE FROM DAVIS.**

As a promotion, an upgrade at FIT is dependent upon a supervisor's agreement and action in submitting a request for upgrade. Defendant Davis testified that as Phillips' supervisor, she "could trigger" the upgrade.[92] Likewise, Phillips testified: "[Y]ou can't get an upgrade without your supervisor."[93]

Defendant Davis, however, did not request an upgrade for Phillips[94] after the Affirmative Action complaint; thus, Phillips did not receive the upgrade.   Phillips therefore satisfies the third element of failure to promote: not selected for the position.

In May 2018, defendant Davis learned that Phillips filed the March 2018 Affirmative Action complaint against her.[95]   Thereafter, the relationship between Davis and Phillips changed for the worse, whereby Davis did not raise the issue of an upgrade and/or follow-up on her prior agreement for the upgrade, as Phillips testified:

> **"...I had made the complaint in the Affirmative Action case, and the temperature in the office had changed.   The relationship between the dean and I had changed."[96]**

> \*\*\*

---

[92] Defendant Davis deposition, p. 125, lines 8-20 [**Exhibit P**].

[93] Phillips 9-9-21 deposition, pp. 196-197 [**Exhibit K**].

[94] Defendant Davis deposition, p. 126, lines 12-17.

[95] *Id.*, p. 189, lines 17-24.

[96] Plaintiff Phillips 9-9-21 deposition, p. 124, lines 7-11 [**Exhibit K**].

**"I felt that the dean was the one who was going to make it happen. We had had a full discussion and she wanted it to happen, then the ball was really sort of -- the ball was in her court. And so she didn't do anything. She didn't do -- I felt very uncomfortable. I felt like she was retaliating against me. There was definite discrimination and retaliation because of the discrimination case."[97]**

*** 

**"And then the Affirmative Action complaint happened and she changed. And she was no longer proactive about making this happen for me. There was no more discussion about it at all.** And I was already uncomfortable because of the lawsuit -- of the Affirmative Action complaint. So it just became very uncomfortable. ***And you can't get an upgrade without your supervisor."*** [98]

In her affidavit, Phillips contrasts the "previously friendly demeanor" defendant Davis had towards her before the Affirmative Action complaint, with Davis' "cold and brusque" attitude thereafter.[99] Likewise, Phillips attests that she was "intimidated and uncomfortable by the way defendant Davis had changed our relationship for the worse after I filed the Affirmative Action complaint against her. I felt she was retaliating against me for filing the Affirmative Action Complaint."[100]

Accordingly, plaintiff Phillips explains that after the Affirmative Action complaint, it was futile for her to raise the issue of an upgrade with defendant Davis:

> **"Because of the defendant Davis' changed attitude and cold demeanor towards me after I filed the Affirmative Action Complaint, I did not bring up the Upgrade for further discussion with her. It would have been futile to do so since she changed the nature of our relationship for the worse, as she became cold and brusque, and no longer raised the Upgrade**

---

[97] *Id.,* at p. 126, lines 7-20.

[98] *Id.,* at p. 196, lines 22-25; p. 197, lines 2-7.

[99] Phillips' Affidavit, para. 20 **[Exhibit R]**.

[100] *Id.*, para. 22.

> **issue after I filed the Affirmative Action Complaint against her.
> Because of this change in her demeanor and attitude towards
> me, I did not believe that she would honor her prior agreement
> to submit the necessary paperwork for me to obtain an
> Upgrade."**[101]

Defendant FIT's Memorandum of Law fails to acknowledge Phillips' deposition testimony

that the relationship with Davis deteriorated to the point of no return after the Affirmative Action

complaint.    Instead, defendant FIT's Memorandum of Law harps on Phillips' purported

"inaction" in "never appl[ying] for a vacancy."[102]    However, consistent with her deposition

testimony, Phillips' affidavit makes it very clear that because of Davis' changed demeanor after

the Affirmative Action complaint, "[i]t would have been futile" for Phillips to approach Davis

about the previously agreed-upon upgrade.[103]

As a matter of law, "a plaintiff's failure to apply for a position is not a bar to relief when

an employer's discriminatory practices deter application or make application a futile endeavor."

*Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1213 (2d Cir. 1993).   Indeed, "When a person's desire

for a job is not translated into a formal application solely because of his unwillingness to engage

in a futile gesture he is as much a victim of discrimination as is he who goes through the motions

of submitting an application."   *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-366

(1977).   Thus, contrary to defendant FIT, plaintiff Phillips cannot be blamed for accepting the

reality of her situation.

> ### C.   FAILURE TO PROMOTE AS AN ADVERSE EMPLOYMENT ACTION; A QUESTION OF FACT AS TO WHETHER DAVIS RETALIATED AGAINST PHILLIPS BY NOT REQUESTING AN UPGRADE.

---

[101]  *Id.*, para. 24.

[102]  Defendant FIT Memorandum of Law, pp. 9, 10.

[103]  Phillips' Affidavit, para. 22 [**Exhibit R**].

Discriminatory failure to promote is considered an adverse employment action in the context of a retaliation claim. *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002), citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) ("defining adverse action to include, discharge, refusal to hire, refusal to promote....").

In opposing a summary judgment motion against a retaliation claim, a plaintiff may rely upon circumstantial evidence to raise a question of fact as to discriminatory intent. *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) ("A causal connection in retaliation claim can be shown...through other circumstantial evidence...."); *Gordon v. New York City Bd of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (same principle).   Indeed, a plaintiff need only show that a retaliatory failure to promote "occurred under circumstances giving rise to an inference of discrimination...." *Howley v. Town of Strafford*, 217 F.3d 141, 150 (2d Cir. 2000).

Here, plaintiff Phillips satisfies this fourth element of failure to promote: "circumstances giving rise to an inference of discrimination...." *Id.*   There is inescapable circumstantial evidence that defendant Davis retaliated against Phillips, by not requesting the upgrade for Phillips after the March 2018 Affirmative Action complaint.   As discussed herein, the evidence demonstrates:

A.   It is uncontested that Phillips was qualified for the upgrade as she performed duties beyond her job title/position.

B.   It is uncontested that a supervisor's agreement and/or action is necessary to trigger an upgrade.

C.   It is uncontested that defendant Davis agreed to request an upgrade for Phillips in 2017.   Defendant Davis and/or defendant FIT never testified or submitted an affidavit to the contrary.

D.   It is uncontested that Phillips filed an Affirmative Action complaint against Davis in or about March 2018, and Davis learned of the complaint in May 2018.

E.    It is uncontested -- through Phillips' deposition testimony and now her affidavit -- that after Phillips filed the Affirmative Action complaint against Davis, the relationship between Davis and Phillips changed for the worse, whereby Davis did not raise the issue of an upgrade and/or follow-up on her prior agreement for the upgrade.

F.    It is uncontested that Davis never requested an upgrade for Phillips.

This evidence surely "give[s] rise to an inference of discrimination"[104], raising a dispositive question of fact for the jury: Whether defendant Davis retaliated against Phillips by not requesting an upgrade for Phillips after the March 2018 Affirmative Action complaint.

Likewise, the very same evidence raises a question of fact under retaliation's but-for causation.   A rational jury viewing the foregoing evidence may permissibly find that Davis' failure to recommend Phillips for an upgrade "would not have occurred in the absence of the retaliatory motive" due to Phillips' Affirmative Action complaint.   *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90-91 (2d Cir. 2015); *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Vega*).

Accordingly, this Court should deny defendant FIT's summary judgment motion as plaintiff Phillips has established a prima facie case of retaliation/failure to promote and/or raised a question of fact in this regard.

## D.    DEFENDANT FIT'S CLAIM OF NON-DISCRIMINATION IS PRETEXTUAL.

Defendant FIT claims Phillips did not receive an upgrade because: 1) "[T]here was no alleged vacancy", "No vacancy existed"; and/or 2) Phillips' purported "inaction" in "never

---

[104] *Howley*, 217 F.3d at 150 (2d Cir. 2000).

appl[ying] for a vacancy."[105]

In response, we have demonstrated: 1) the upgrade did not require a job vacancy, as an upgrade is post-facto recognition of the employee's transition into a new role, providing the employee with "title 'reclassification' to a higher title."[106]; and 2) consistent with her deposition testimony, Phillips' affidavit attests that because of Davis' changed demeanor after the Affirmative Action complaint, "[i]t would have been futile" to approach Davis about the previously agreed-upon upgrade.[107]

Further, Phillips' email exchange with Human Resources regarding an applicable job title for the upgrade, and/or follow-up with Davis *prior* to the March 2018 Affirmative Action Complaint is a red herring. Davis already agreed to the upgrade and held all the power for submission of the upgrade paperwork.   None of the defendants' Memoranda of Law addresses Phillips' deposition testimony that: 1) "You can't get an upgrade without your supervisor"[108]; and 2) Phillips is not tasked with completing the paperwork for the upgrade.[109]

Likewise, as brought out by Phillips' affidavit:

> "She [Davis] was in full and sole control of submitting the recommendation and/or request for the Upgrade....**[I]f Davis was waiting for a new job title for upgrade that she had agreed to, she could have easily contacted the Human Resources department for such information.**"[110]
> ***
> **"Defendant Davis has never stated that she was waiting for me**

---

[105] Defendant FIT Memorandum of Law, pp. 9, 10.

[106] Glass Affidavit, para. 16 [ECF Doc. 83].

[107] Phillips' Affidavit, para. 20-24 [**Exhibit R**].

[108] Phillips 9-9-21 deposition, pp., 196-197 [**Exhibit K**].

[109] *Id.*, p. 123, lines 10-23.

[110] Plaintiff Phillips Affidavit, para. 17 [**Exhibit R**].

**to supply a new job title.   She was the supervisor; she had all
the power, not me."**[111]

Finally, Davis has not submitted an affidavit explaining why she did not recommend
Phillips for an upgrade and/or submit the paperwork necessary for an upgrade.   There is no
deposition testimony -- and certainly no affidavit -- by Davis contradicting Phillips' sworn
representations (deposition and affidavit) that Davis had already agreed to the upgrade because of
Phillips' performance of new and additional job duties beyond her job title/position.   At best,
Davis provided inconclusive deposition testimony, stating only:   "I don't believe she [Phillips]
was working out of her job description.   I would need to see that job description and re-visit the
facts in order to make a definitive statement about that."[112]

Thus, based upon falsity, weakness of defendant FIT's evidence, and submission of
Phillips' affidavit, we have demonstrated FIT's claim of non-discriminatory conduct is mere
pretext.   *McGuinness v. Lincoln Hall*, 263 F.3d at 55 (2d Cir. 2001) ("[I]n some circumstances,
'a prima facie case plus falsity of the employer's explanation can, without more, be enough to
support a reasonable finding' that an employee was treated differently on the basis of race or
gender."); *Conway v. Microsoft Corp.*, 414 F. Supp.2d 450, 461 (S.D.N.Y. 2006) ("Pretext may
be demonstrated either by presentation of additional evidence showing that the employer's
proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima
facie case, without more.'"); *Ramos v. Marriott Int'l*, 134 F. Supp.2d 328, 343 (S.D.N.Y. 2001)
("It is well settled that a plaintiff may establish pretext and thereby successfully oppose summary
judgment,...by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in

---

[111]  *Id.*, para. 19.

[112]  Defendant Davis deposition, p. 132, lines 24-25; p. 133, lines 2-3, 19-23 [**Exhibit P**].

the employer's proffered legitimate, nondiscriminatory reason for its action.").

## POINT VI

**DEFENDANT FIT IS NOT ENTITLED TO SUMMARY JUDGMENT SINCE EVIDENCE RAISES QUESTIONS OF FACT AS TO WHETHER PHILLIPS AND BARTON WERE SIMILARLY SITUATED EMPLOYEES AND WHETHER DEFENDANT DAVIS SUBJECTED PHILLIPS TO DISPARATE TREATMENT IN NOT REQUESTING AN UPGRADE FOR PHILLIPS WHO IS AFRICAN AMERICAN, BUT REQUESTED AN UPGRADE FOR BARTON, WHO IS WHITE.**

"A showing that the employer treated a similarly situated employee differently is 'a common and especially effective method' of establishing a prima facie of discrimination...." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001).   As we have already discussed, Phillips was qualified for an upgrade, an upgrade required a supervisor's recommendation and the failure to promote -- an "upgrade" at FIT -- is an adverse employment action. *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) ("defining adverse action to include, discharge, refusal to hire, refusal to promote....").

Plaintiff Phillips is African American[113] and defendant Barton is white.   We raise the necessary inference of discrimination by showing disparate treatment: Defendant Davis did not request an upgrade for Phillips but did so for defendant Barton who is white, and Barton thereby received an upgrade.[114]   *Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir. 2000) ("A plaintiff may raise such an inference [of discrimination] by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside

---

[113]  As an African American, Phillips is a member of a protected class.   *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999).

[114]  Glass Affidavit, para. 37-43 [**ECF Doc. 83**]; Defendant Barton deposition, p. 22, lines 8-22 [**Exhibit Q**]; Defendant Davis deposition, p. 128, lines 24-25; p. 129, lines 2-22; p. 189, lines 17-24 [**Exhibit P**].

his protected group.").

Contrary to defendant FIT, the evidence raises a question of fact as to whether Phillips and Barton are similarly situated in all material respects, and thus proper comparators for disparate treatment. Both Barton and Phillips are subject to the same standards for upgrades and discipline, both have Davis as their direct supervisor and both carry essentially similar job duties.

Accordingly, we likewise raise a question of fact as to whether defendant Davis subjected Phillips to disparate treatment in not requesting an upgrade for Phillips who is African American, but requested an upgrade for Barton, who is white.

## A.   QUESTION OF FACT: WHETHER PHILLIPS AND BARTON ARE SIMILARLY SITUATED EMPLOYEES.

It is well settled that for disparate treatment, a plaintiff is not required to show an identical comparator employee, but one who is "similarly situated in all material respects." *Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir. 2000).   The Second Circuit has recognized that the qualifier of "all material respects" "varies somewhat from case to case", but must be based upon an "objectively identifiable basis for comparability." *Id.,* at 40 (2d Cir. 2000).

Plaintiff Phillips has satisfied this objective element for comparability, and/or raised a question of fact for disparate treatment in this regard, since she and Barton: 1) are "subject to the same workplace standards"[115] and/or; 2) have the same supervisor[116]; and/or 3) have essentially similar job duties.[117]

### 1.   PHILLIPS AND BARTON WERE SUBJECT TO THE SAME

---

[115] *Id.* (2d Cir. 2000).

[116] *Akinyemi v. Chertoff,* 2008 U.S. Dist. LEXIS 33793, at *10 (S.D.N.Y. 2008); *Conway v. Microsoft Corp.,* 414 F. Supp.2d 450, 465 (S.D.N.Y. 2006).

[117] *Lichtenstein v. Triarc Cos.,* 2004 U.S. Dist. LEXIS 8610, at *35 (S.D.N.Y. 2004); *Ebel v. G/O Media, Inc.,* 2022 U.S. Dist. LEXIS 116095, at *61 (S.D.N.Y.2022).

## STANDARDS FOR UPGRADE AND DISCIPLINE.

Defendant FIT's own evidence demonstrates that plaintiff Phillips and Barton are subject to the same objective workplace standards for upgrade and discipline.   Glass' affidavit, submitted by defendant FIT, explains that as unionized employees, both Phillips and Barton were subject to the same objective standard for an upgrade under the collective bargaining agreement ("CBA"). Glass Affidavit, para. 8-9, 15-16, 26-41.

As Cynthia Glass attested in her affidavit, under the CBA, an employee who receives an upgrade is simply "reevaluat[ed]" based upon performance of "significant and additional job duties and responsibilities", and "approved for a title 'reclassification' to a higher title."[118]   Further, according to Glass, "The CBA also states that where an existing position has 'significantly changed in duties or responsibilities', the supervisor may request a reevaluation of the employee's job title...."[119]

Under the objective standards of the CBA, defendant Davis submitted an upgrade request for Barton, and Barton received the upgrade.   Glass Affidavit, para. 39-41.   Defendant Davis, however, did not request an upgrade for Phillips[120]; thus, Phillips did not receive the upgrade.

Pursuant to defendant Glass' affidavit and deposition, both Phillips and Barton were subject to the same disciplinary standards at FIT: the CBA and FIT's Non-Discrimination and Anti-Harassment Policy ("NDAH Policy").   Glass Affidavit, para. 44-48; Glass deposition, p. 18, lines 16-25; p. 19, lines 2-8 ("The disciplinary process is governed by the collective bargaining

---

[118]  Glass Affidavit, para. 16.

[119]  *Id.*, para. 29.

[120]  Defendant Davis deposition, p. 126, lines 12-17 **[Exhibit P]**.

agreement.").

Defendant FIT's Memorandum of Law ignores Glass' affidavit and the very CBA and NDAH Policy that it touts.   However, pursuant to Glass' affidavit, the CBA and NDAH Policy, Phillips and Barton are "similarly situated in all material respects...."[121]   Phillips and Barton are both "subject to the same workplace standards"[122] objectively contained in the CBA for the upgrade at issue, and the anti-discrimination and disciplinary policies of the NDAH Policy.   Thus, Phillips and Barton have an "'objectively identifiable basis for comparability.'"[123]   See, *Dall v. St. Catherine of Siena Med. Ctr.*, 966 F. Supp.2d 167, 184, 185 (E.D.N.Y. 2013) (Plaintiff and comparator were both subject to the same Sexual Harassment Policy; "Therefore, viewing the facts in the light most favorable to Plaintiff, it appears that Plaintiff was not subjected to different 'workplace standards' than Birmingham and that they were similarly situated in all material respects.").

### 2.    PHILLIPS AND BARTON HAD THE SAME SUPERVISOR: DAVIS.

Defendant FIT's Memorandum of Law likewise ignores the fact that Phillips and Barton had the same direct supervisor: Defendant Davis.[124]   "Whether or not a plaintiff reports to the same supervisor as her comparator is an important factor in finding that plaintiff and the comparator are similarly situated." *Akinyemi v. Chertoff*, 2008 U.S. Dist. LEXIS 33793, at *10 (S.D.N.Y. 2008); *Conway v. Microsoft Corp.*, 414 F. Supp.2d 450, 465 (S.D.N.Y. 2006) ("In the Second Circuit, whether or not co-employees report to the same supervisor is an important factor in determining

---

[121] *Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir. 2000).

[122] *Id.*, at 40 (2d Cir. 2000).

[123] *Id.*

[124] Defendant Davis deposition, p. 122, lines 3-12; p. 151, lines 2-23 [**Exhibit P**]; Phillips Affidavit, para. 3, 6 [**Exhibit R**].

whether two employees are subject to the same workplace standards for purposes of finding them similarly situated.").

Instead, defendant FIT repeats its non-vacancy argument and attempts to distinguish Barton from Phillips based upon "a different job title" and "salary schedule."[125]   In Point V, we established that an upgrade at FIT does not require a job vacancy.   The upgrade itself is simply post-facto recognition of the employee's transition into a new role, providing the employee with "title 'reclassification' to a higher title."   Glass Affidavit, para. 16.

### 3.   PHILLIPS AND BARTON HAD SIMILAR JOB DUTIES.

Defendant FIT's argument of different job titles and salary schedules likewise fails.   Both Phillips and Barton carried essentially similar administrative job duties for their respective departments under defendant Davis.   In or about 2017, when defendant Davis recommended Barton for an upgrade, Barton's job duties were:

> "[O]verseeing [Davis'] schedule and travel, assisting with management of Strategic Planning initiatives...collecting and analyzing confidential information as needed, and managing daily office coverage for the school...[L]iason to all departments...monitors infrastructure needs and upkeep, including furniture and equipment needs, and manages logistics needed to support student-centered operations...manages academic reports and student data...budget matters...and execution of events, meetings and other activities."[126]

These job duties are quite similar to those that Phillips performed in the same 2017 time-period, under Davis' instruction and supervision.   Consistent with her deposition testimony, Phillips' affidavit provides a laundry-list of "new and additional responsibilities" that she was

---

[125]  Defendant FIT Memorandum of Law, pp. 14-15.

[126]  Exhibit D to Glass Affidavit, defendant Davis' "Memorandum", bates stamped DFIT000629.

already performing at such time, including:

> "Oversee and manage the day-to-day department operations; Daily review and consistent oversight of department budget...Purchasing of instructional and operational supplies for faculty; Coordinate, track/organize events and meetings per department need...Sole liaison between other offices and Fashion and Textile Studies...Assist and support chairperson's initiatives; Planning, arranging and follow-up of deliverables, handling logistics...Schedule and coordinate meetings...Support chairperson in monitoring the department budget, tracking expenditures...Track and reconcile expenses and close out all fiscal budgets for the department...Work with the Office of the Registrar to ensure student reports are created and distributed...."[127]

Thus, both Barton and Phillips were responsible for daily operations of their respective departments under defendant Davis, including serving as liaison to other departments, logistics and meeting coordination and budget matters. Barton and Phillips, therefore, had essentially similar job duties, indicia of a proper comparator for disparate treatment. *Lichtenstein v. Triarc Cos.*, 2004 U.S. Dist. LEXIS 8610, at *35 (S.D.N.Y. 2004) ("Factors that are considered include whether the plaintiff and the comparator...have similar responsibilities, and whether the employees are required to devote the same effort."); *Robinson v. De Niro*, 2022 U.S. Dist. LEXIS 124208, at *10 (S.D.N.Y. 2022) ("Where job duties 'partially overlap,' this can 'impl[y]' that the positions are substantially equal."); *Ebel v. G/O Media, Inc.*, 2022 U.S. Dist. LEXIS 116095, at *61 (S.D.N.Y. 2022) ("Employment characteristics which can support a finding that two employees are 'similarly situated' include...similar requirements for skill, effort and responsibility for jobs performed 'under similar working conditions.'").

**B.    THE TOTALITY OF THE EVIDENCE RAISES QUESTIONS OF FACT AS TO DISPARATE TREATMENT.**

---

[127] Plaintiff Phillips Affidavit, para. 12 **[Exhibit R]**.

The totality of evidence raises a question of fact as to whether Phillips and Barton are similarly situated in all material respects, and thus proper comparators for disparate treatment. As unionized employees at FIT, they are both subject to the same standards for upgrades and discipline, both have Davis as their direct supervisor and both carry essentially similar job duties.

Despite defendant FIT's attempt to distinguish Barton from Phillips, any "differences between" them "are not so significant as a matter of logic to render defendant's disparate treatment of [Phillips] irrelevant to plaintiff's claims of discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001).

Accordingly, based upon factors articulated by the Second Circuit, evidence raises a question of fact as to whether defendant Davis subjected Phillips to disparate treatment in not requesting an upgrade for Phillips who is African American, whereas she did so for defendant Barton who is white, and Barton thereby received an upgrade.    "Were a jury to find that [Phillips] was similarly situated to [Barton], it could conclude that the disparate treatment [s]he received completes a prima facie showing of discrimination under Title VII." *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000).

## C.   THE   EVIDENCE   DEMONSTRATES   BUT-FOR   PROXIMATE   CAUSATION AND PRETEXT BY DEFENDANT FIT.

In Point V herein, we showed that Phillips was qualified for the upgrade, a supervisor's agreement and recommendation is necessary for an upgrade, Davis as the supervisor agreed to request an upgrade for Phillips, and Davis never requested an upgrade for Phillips.

In light of such matters, the very same evidence that raises a question of fact of disparate treatment, raises a question of fact under but-for proximate causation.    A rational jury viewing the totality of the evidence may permissibly find that Davis' failure to recommend Phillips for an

upgrade would not have occurred but-for a discriminatory motive: Treating Phillips "less favorably" than Barton, because Phillips was African American.   *Graham,* 230 F.3d at 39 (2d Cir. 2000).      By itself, the evidence discussed herein of disparate treatment "serve[s] as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for racial discrimination."   *Id.,* at 43 (2d Cir. 2000).    Additionally, as discussed in Point V, we have already shown the falsity and/or weakness of defendant FIT's proffered non-discriminatory reason for no upgrade for Phillips.    Thus, based upon falsity, weakness of defendant FIT's evidence, and submission of Phillips' affidavit, we have demonstrated FIT's claim of non-discriminatory conduct is mere pretext.   *McGuinness v. Lincoln Hall,* 263 F.3d at 55 (2d Cir. 2001); *Conway v. Microsoft Corp.,* 414 F. Supp.2d 450, 461 (S.D.N.Y. 2006); *Ramos v. Marriott Int=l,* 134 F. Supp.2d 328, 343 (S.D.N.Y. 2001).

### POINT VII

**DEFENDANT FIT IS NOT ENTITLED TO SUMMARY JUDGMENT AS EVIDENCE RAISES QUESTIONS OF FACT AS TO WHETHER DEFENDANT DAVIS SUBJECTED PHILLIPS TO DISPARATE TREATMENT AND/OR RETALIATION IN MOVING HER WORK-AREA TO ANOTHER BUILDING, BUT HAVING BARTON REMAIN IN THE SUITE WHICH SHE SHARED WITH PHILLIPS ON MAY 16, 2019.**

Defendant Davis discriminated against Phillips by transferring her work-area to different building after Barton's May 2019 attack, while permitting Barton to remain in the formerly-shared suite.[128]

### A.   DISPARATE TREATMENT.

Phillips testified to the disparate treatment in her forced transfer to another building, while Barton remained.

---

[128] Defendant Davis email dated 11-11-19 **[Exhibit U]**; Plaintiff Phillips' deposition of 9-9-21, p. 171, lines 10-15 **[Exhibit K]**; Defendant Davis deposition, pp. 229-230 **[Exhibit P]**.

> **"I'm not sure what I am not getting across to you where I am being treated differently.   I am an African-American woman.   Marilyn is a white woman.   And I am being treated differently.** I am being treated inferior.   I am being treated less than...I am being treated like I was the offender when I did nothing wrong....[129]

> **She threatened to end my life.   She told me I will fucking kill you...She put her hands on me.   She assaulted me."[130]**
>
> &ast;&ast;&ast;
>
> **"But then, as a result of it, I get moved to another space because Marilyn doesn't have to move.   Marilyn works for the dean.   Marilyn is a white girl.   Marjorie is a black girl...And if we -- we have to separate them, so who is going to go, Marjorie is going to go.   The black woman is going to go.   Not the person who did something wrong."[131]**

As previously shown, Barton and Phillips are similarly situated employees to trigger disparate treatment, and/or we have demonstrated questions of fact in this regard.     Further, the transfer of Phillips, but not Barton, raises questions of fact as to: 1) disparate treatment; and 2) but-for proximate causation.

Indeed, a rational jury viewing the totality of the evidence may permissibly find that Davis' transfer of Phillips to another building, while keeping Barton in the prior shared-suite, would not have occurred but-for a discriminatory motive: Treating Phillips "less favorably" than Barton, because Phillips was African American.   *Graham*, 230 F.3d at 39 (2d Cir. 2000).   As Phillips testified: **"[I]f we -- we have to separate them, so who is going to go, Marjorie is going to go. The black woman is going to go.   Not the person who did something wrong."[132]**

Moreover, as we have already discussed, this very evidence of disparate treatment "serve[s]

---

[129]  Plaintiff Phillips' deposition of 9-9-21, p. 223, lines 8-17 [**Exhibit K**].

[130]  *Id.*, at p. 224, lines 4-6.

[131]  *Id.*, at p. 224, lines 19-25; p. 225, lines 2-5.

[132]  Plaintiff Phillips' deposition of 9-9-21, at p. 224, lines 19-25; p. 225, lines 2-5 [**Exhibit K**].

as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for racial discrimination." *Graham,* 230 F.3d at 43 (2d Cir. 2000).

**B.      RETALIATION BY DAVIS.**

In her affidavit, Phillips attests that Davis' transfer of her work location to the 27th Street building "adversely impacted" her work at FIT as she was "segregated away from" her "assigned supervisor" who remained in Goodman Building E.[133]   This resulted in Phillips' inability to efficiently respond to requests from her Chairperson and students in the Fashion and Textile Studies Program, thus wasting time and causing her to be unproductive.[134]

Moreover, Phillips attested that because of the physical distance, the department Chair would sometimes bypass her entirely so as not to be bothered with having to deal with Phillips who was another building entirely.

> **"[T]he chair person would just do things herself rather than walk down the street and go into the other building where I am located or wait for me to arrive in her office to assist her.   In this fashion, I am viewed as a burden and not someone who effectively handles my assigned responsibilities unlike other administrative coordinators.   This puts me at a disadvantage as compared to my peers."[135]**

Thus, Phillips did not merely experience inconvenience as a result of the transfer to another building.   Rather, the building transfer resulted in a situation whereby "job duties were taken away" and performed by her boss -- the department Chair.   *Mikolaenko v. New York Univ.*, 2017 U.S. Dist. LEXIS 146776, \*24 (S.D.N.Y.2017); *Garcia v. New York City Health & Hosp. Corp.*, 2019 U.S. Dist. LEXIS 219048, \*22 (S.D.N.Y. 2019)("significantly diminished job

---

[133] Phillips affidavit, para. 30, 31 [**Exhibit R**].

[134] *Id.*, para 31.

[135] *Id.*, para 31.

responsibilities" constitute adverse employment action). This must be the ultimate adverse employment action, where a boss loses faith in the employee, and performs administrative tasks him/herself, viewing the employee "as a burden and not someone who effectively handles my assigned responsibilities...."[136]

Lastly, Phillips demonstrates a causal link between her transfer to another building and her protected activity -- complaining about Barton's May 2019 verbal attack and threat to kill her. "Proof of causation can be shown...(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment...."  *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

We have already demonstrated disparate treatment as Phillips was transferred, whereas Barton remained.   The timing further raises the specter of discrimination, as Phillips learned of her transfer just before returning to work at FIT after her leave of absence.

## POINT VIII

### DEFENDANT FIT IS NOT ENTITLED TO SUMMARY JUDGMENT AS EVIDENCE RAISES QUESTIONS OF FACT AS TO WHETHER COWAN AND FARMER CREATED A HOSTILE WORK ENVIRONMENT VIOLATING TITLE VII AND SECTION 1981.

As plaintiff Phillips attested in her affidavit, Brenda Cowan and Kyle Farmer were in a supervisory capacity over her at the time they made their respective racist statements.[137] "[A]n employer is presumed liable in cases where the harassment is perpetrated by the victim's supervisor...." *Richardson,* 180 F.3d at 440 (2d Cir. 1999).

Here, the statements by Cowan and Farmer were uniquely invidious and aimed at Phillips'

---

[136] Phillips affidavit, para. 31.

[137] Plaintiff Phillips affidavit, para. 32 **[Exhibit R]**.

race -- African American.   While in the FIT office, Cowan told Phillips to join her and another employee "at the back of the bus."[138]   Farmer observed Phillips put on her coat and hat to leave the office and told her, "You look like you are going to the hood."[139]

Phillips testified that Cowan "has to know that telling an African American to join them 'at the back of the bus' is going to be offensive."[140]   Indeed, African Americans experienced racial segregation and discrimination at being told and forced to ride in the back of the bus. Similarly, Farmer's comment of Phillips looking like she's "going to the hood", conjures African Americans as hoodlums, living in crime-infested slums. Certainly, therefore, the racist statements were made because of Phillips' race.

In each instance, these Caucasian supervisors made severe racist comments comparable to the "N-word".   "[P]erhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." *La Grande v. DeCrescente Distrib. Co.*, 370 Fed. Appx. 206, 210 (2d Cir. 2010) (citations omitted).   Pursuant to *La Grande*, there is a question of fact as to whether their racist comments were objectively severe to constitute hostile work environment.   *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Likewise, questions of fact exist as to causation -- whether Phillips' race as an African American "was a motivating factor" under Title VII and/or a "but-for" causation under Section

---

[138]  Plaintiff Phillips' deposition of 9-9-21, pp. 87-88 [**Exhibit K**]; Plaintiff Phillips' March 23, 2018 Complaint to FIT Affirmative Action Office at page bates stamped 073 [**Exhibit B**]; Complaint, para. 16 [ECF Doc. B].

[139]  Plaintiff Phillips' deposition of 9-9-21, pp. 102-105; Plaintiff Phillips' March 23, 2018 Complaint to FIT Affirmative Action Office, page bates stamped 074; Complaint, para. 18 [ECF Doc. B].

[140]  Plaintiff Phillips' March 23, 2018 Complaint to FIT Affirmative Action Office.

1981.   Defendant FIT did not submit deposition testimony or affidavits by either Cowan and/or

Farmer.   Thus, defendant FIT has again failed to sustain its burden "to demonstrate that no

genuine issue exists with respect to any material facts." *Langlois v. Hartford Bd. of Educ.*, 831

Fed. Appx. 548, 550 (2d Cir. 2020).

## POINT IX

### DEFENDANT DAVIS IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO RETALIATION AND DISPARATE TREATMENT UNDER SECTION 1981 AND/OR NEW YORK STATE HUMAN RIGHTS LAW SINCE PHILLIPS HAS SATISFIED REQUIREMENTS OF THOSE CLAIMS UNDER TITLE VII AND/OR <u>RAISED QUESTIONS OF FACT IN THAT REGARD.</u>

Pursuant to 42 U.S.C. 1981, as Phillips' supervisor, defendant Davis is subject to personal

liability for retaliation and/or discriminatory disparate treatment against Phillips.[141]   Likewise,

defendant Davis may be held personally liable for retaliation against Phillips, under the New York

State Human Rights Law ("NYSHRL"), codified at NY Executive Law 296(7).[142]   Relatedly,

defendant Davis may also be held personally liable for aiding and abetting discrimination pursuant

to NYSHRL/Executive Law 296(6) and under a parallel provision of the New York City Human

Rights Law.

As previously discussed, Phillips' retaliation claim arises from Davis' conduct in not

requesting an upgrade for Phillips after the March 2018 Affirmative Action Complaint.   So too,

as previously discussed, disparate treatment arises from Davis' conduct in requesting an upgrade

---

[141]   *Whidbee,* 223 F.3d 62, 75 (2d Cir. 2000) (A[I]ndividuals may be held liable under '1981", where they are supervisors and have 'personal involvement' in the discriminatory conduct at issue.").

[142]   *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp.2d 349, 366 (S.D.N.Y. 2012) (liability for retaliation under NY Exec. Law 296(7) Aapplies to 'any person', not only employers...who 'actually participates in the conduct giving rise to' the plaintiff's [discrimination or] retaliation claim.'"); *Holohan v. Newmark & Co. Real Estate,* 2019 U.S. Dist. LEXIS 160061, *15 (S.D.N.Y. 2019) ("[A]n individual can be held directly liable under the NYSHRL's...retaliation provisions also under an 'actually participates' standard.").

for defendant Barton -- who is white and received the upgrade -- and not for Phillips who is African American.

As a matter of law, the standard for claims under Section 1981 and the NYSHRL are the same as for Title VII. *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 45 (2d Cir. 2015) ("[T]he same 'core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of '1981...."); *Sherman v. Fivesky, LLC*, 2020 U.S. Dist. LEXIS 78801, *22 (S.D.N.Y. 2020) ("The language in the NYSHRL is similar to that of Title VII, and as a result, the standards for discrimination, hostile work environment, and retaliation claims are the same as under Title VII."); *Lamarr-Arruz v. CVS Pharm., Inc.*, 271 F. Supp. 3d 646, 655 fn 6 (S.D.N.Y. 2017) ("The standard for hostile work environment claims under Title VII, '1981...and the NYSHRL is the same.").

Phillips has already demonstrated a prima facie case of retaliation and/or disparate treatment under Title VII and/or Section 1981 against defendant FIT from defendant Davis' conduct, and/or raised questions of fact in that regard. *A fortiori,* therefore, Phillips has done so against defendant Davis directly, under Section 1981 for retaliation and/or disparate treatment, and NYSHRL/Executive Law 296(7) for retaliation. *Woods v. Fitzcon Construction/Ren Corp.*, 2022 U.S. Dist. LEXIS 138554, *30 (S.D.N.Y. 2022) ("Because the NYSHRL is 'analyzed under the same framework as governs...Section 1981 claims'...if Plaintiffs meet the requisite elements of their claims under Section 1981, the standards under NYCHRL and NYSHRL are met."); *Huffman v. Brooklyn College*, 2022 U.S. Dist. LEXIS 2134, *12-13 (E.D.N.Y. 2022) ("Because the court holds that the requirement was satisfied in the Title VII context, it is necessarily satisfied in the NYSHRL and NYCHRL contexts.").

A.   **RETALIATION UNDER 42 U.S.C. 1981 AND NYSHRL.**

In her Memorandum of Law, defendant Davis merely recasts defendant FIT's arguments against retaliation: 1) no vacant position; 2) no application by Phillips for vacancy/upgrade; and/or 3) no follow-up by Phillips with Davis.[143]

We have already comprehensively demonstrated the fallacy of these contentions since:

A. An upgrade at FIT did not require a vacancy and/or application; it was post-facto recognition of the employee's transition into a new role;

B. An application was not required since Davis had previously agreed to an upgrade for Phillips because Phillips had already been performing new and additional job duties beyond her job title/position;

C. An upgrade was entirely dependent upon a supervisor's agreement and action in submitting a request for upgrade;

D. Follow-up with Davis prior to the March 2018 Affirmative Action Complaint is a red herring since Davis already agreed to the upgrade, held all the power for submission of the upgrade paperwork, and Davis has not submitted an affidavit explaining why she did not recommend Phillips for an upgrade and/or submit the paperwork necessary for an upgrade; and

E. Follow-up with Davis after the March 2018 Affirmative Action Complaint was futile for Phillips because of the manner in which Davis changed her relationship with Phillips for the worse after the March 20918 Affirmative Action Complaint.

Pursuant to our prior detailed arguments, plaintiff Phillips has made a prima facie case of retaliation -- against defendants FIT and Davis -- and/or raised questions of fact in that regard. Likewise, our prior arguments of pretext as to defendant FIT's claim of non-discrimination regarding the upgrade, are equally applicable to defendant Davis.   Accordingly, defendant Davis is not entitled to summary judgment dismissal of plaintiff Phillips' claims of retaliation under 42 U.S.C. 1981 and/or NYSHRL.

---

[143] Defendant FIT Memorandum of Law, pp. 9-11, 21-22; Defendant Davis Memorandum of Law, pp. 4-8.

**B.    VIOLATION OF 42 U.S.C. 1981 FOR DISPARATE TREATMENT.**

Pursuant to Section 1981, we have already explained that the evidentiary record demonstrates the necessary inference of discrimination by showing disparate treatment: Defendant Davis did not request an upgrade for Phillips -- who is African American -- but did so for defendant Barton who is white, and Barton thereby received an upgrade.[144]    As we have previously shown, Barton and Phillips are similarly situated employees to trigger disparate treatment, and we have demonstrated questions of fact in this regard.    Likewise, our prior arguments of pretext by defendant FIT -- falsity, weakness of defendant FIT's evidence and submission of Phillips' affidavit -- are equally applicable to defendant Davis.

As plaintiff Phillips has satisfied the elements of disparate treatment under Section 1981 and/or raised questions of fact in that regard, defendant Davis is not entitled to summary judgment.

**C.    AIDING AND ABETTING DISCRIMINATION: NYSHRL LAW 296(6) AND NEW YORK CITY HUMAN RIGHTS LAW 8-107(6).**

Pursuant to NYSHRL 296(6) and NYCHRL 8-107(6), one employee cannot aid and/or abet another's discriminatory conduct.    In the first instance, defendant Davis rebuffed Phillips initial verbal complaints about racial discrimination in the office, and did not report Phillips' complaints to the Affirmative Action Office.[145]    Glass of FIT termed Davis' failure to report, "a policy violation."[146]    A supervisor who fails to report discrimination may be held liable for aiding

---

[144] *Graham,* 230 F.3d 34, 39 (2d Cir. 2000) ("A plaintiff may raise such an inference [of discrimination] by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group.").

[145] Phillips' March 23, 2018 Complaint to FIT Affirmative Action Office [**Exhibit B**]; Defendant Davis deposition, pp. 160-182 [**Exhibit P**].

[146] Glass deposition, p. 185, lines 6-16 [**Exhibit O**].

and abetting another's discriminatory conduct.    *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp.2d 376, 384 (S.D.N.Y. 1999).

Next, defendant Davis involved herself in the aftermath of Barton's May 16, 2019 verbal attack and threat to kill Phillips, diverting the matter from the Affirmative Action Office to Human Resources.   Defendant Davis called Human Resources, instead of Affirmative Action, while knowing she was a subject of Phillips' March 2018 Affirmative Action complaint.[147]   The Affirmative Action Office, therefore, never saw Barton's statement -- given to Human Resources -- wherein she admitted retaliatory animus against Phillips.[148]   The Affirmative Action Office thus did not have the benefit of this incriminating document -- which Kekana termed "evidence" of Barton's retaliation -- when it issued its October 2019 report.[149]

Had Kekana possessed Barton's incriminating statement, she would have investigated the May 2019 incident within the context of Phillips' prior March 2018 Affirmative Action complaint.[150]   Accordingly, a question of fact arises as to whether defendant Davis engaged in aiding and abetting Barton's May 16, 2019, discriminatory conduct.

## POINT X

**DEFENDANT DAVIS IS NOT ENTITLED TO SUMMARY JUDGMENT UNDER NEW YORK CITY HUMAN RIGHTS LAW FOR RETALIATION AND DISPARATE TREATMENT, AS PHILLIPS HAS SATISFIED THOSE CLAIMS UNDER TITLE VII, SECTION 1981 AND NYSHRL, AND EVIDENCE LIKEWISE RAISES QUESTIONS OF FACT UNDER THE MORE LIBERAL NYCHRL.**

As with Section 1981 and NYSHRL, defendant Davis faces personal liability for retaliation

---

[147] Deposition of defendant Davis, at pp. 213-214; p. 238, lines 8-13 **[Exhibit P]**.

[148] Kekana deposition, pp. 223, line 25; p. 224, lines 2-16 **[Exhibit N]**.

[149] *Id.*, at p. 235, lines 2-18.

[150] *Id.*, p. 246, lines 8-11.

and/or disparate treatment against Phillips under the New York City Human Rights Law (NYCHRL).[151] The NYCHRL is to be construed in a liberal fashion and "more broadly than [federal] claims and NY[S]HRL claims...." *Camoia v. City of New York*, 2018 U.S. Dist. LEXIS 120184, *48 (E.D.N.Y. 2018); *Gioia v. Forbes Media LLC*, 501 Fed. Appx. 52, 56 (2d Cir. 2012).

Accordingly, since Phillips has satisfied the stricter requirements of Title VII, Section 1981 and/or NYSHRL for retaliation and/or disparate treatment, and/or raised questions of fact thereunder, *a fortiori* she has done so with retaliation and disparate treatment under NYCHRL. *Camoia v. City of New York*, 2018 U.S. Dist. LEXIS 120184, *48 (E.D.N.Y. 2018) ("It follows that 'since NYCHRL claims are construed more broadly than [federal] claims and NY[S]HRL claims, so long as a plaintiff has made out federal and state claims, [she] has in most cases made out a city claim as well.'"); *Swiderski v. Urban Outfitters, Inc.*, 2017 U.S. Dist. LEXIS 207451, *17 n. 9 (S.D.N.Y. 2017) ("Because the evidence is sufficient to establish a genuine factual dispute as to actionable harassment under the NYSHRL, it is sufficient *a fortiori* to survive summary judgment under the more lenient standard of the NYCHRL.").

Nonetheless, were this Court to grant summary judgment to the defendants under Title VII, Section 1981 and/or NYSHRL, as shown herein Phillips' retaliation and disparate treatment claims against defendant Davis survive under the more liberal NYCHRL.

### A. RETALIATION UNDER NYCHRL: DAVIS FAILED TO SUSTAIN HER EVIDENTIARY BURDEN; QUESTIONS OF FACT REQUIRE DENIAL OF SUMMARY JUDGMENT.

To grant summary judgment in favor of a defendant in an NYCHRL retaliation claim,

---

[151] *Malena*, 886 F. Supp.2d 349, 366 (S.D.N.Y. 2012) (Under NYCHRL 8-107, "[T]he NYCHRL provides for individual liability of an employee 'regardless of ownership or decision making power.'").

however, a court must conclude as a matter of law that "retaliation played no role in the defendant's actions." *Scé v. City of New York*, 2022 U.S. App. LEXIS 5352, \*8 (2d Cir. 2022).

Thus, in moving for summary judgment under NYCHRL, it was defendant Davis' burden "to show 'no jury could find defendant liable under any of the evidentiary routes: under the McDonnell Douglas test, or as one of a number of mixed motives, by direct or circumstantial evidence.'" *Nazario v. Promed Pers. Servs. NY*, 2017 U.S. Dist. LEXIS 94877, \*15 (S.D.N.Y. 2017), quoting *Gioia v. Forbes Media LLC*, 501 Fed. Appx. 52, 56 (2d Cir. 2012) and *Bennett v. Health Mgt. Sys., Inc.*, 92 A.D.3d 29, 41 (1st Dept. 2011).

Defendant Davis, however, failed to sustain her evidentiary burden to prove no liability under the NYCHRL.   Significantly, in moving for summary judgment, defendant Davis did not file an affidavit explaining why she did not recommend Phillips for an upgrade and/or submit the paperwork necessary for an upgrade.   There is no deposition testimony -- and certainly no affidavit -- by Davis contradicting Phillips' sworn representations (deposition and affidavit) that Davis had already agreed to the upgrade because of Phillips' performance of new and additional job duties beyond her job title/position.   At best, Davis provided inconclusive deposition testimony, stating only:   "I don't believe she [Phillips] was working out of her job description. I would need to see that job description and re-visit the facts in order to make a definitive statement about that."[152]

Likewise, defendant Davis did not submit an affidavit to address Phillips' deposition testimony that after the March 2018 Affirmative Action complaint, the relationship between Davis

---

[152] Defendant Davis deposition, p. 132, lines 24-25; p. 133, lines 2-3, 19-23 [**Exhibit P**].

and Phillips changed for the worse -- by Davis' doing.[153]

Thus, the Court cannot conclude "as a matter of law that 'retaliation played no role in the defendant's actions.'" *Scé,* 2022 U.S. App. LEXIS 5352, *8 (2d Cir. 2022).    Indeed, as previously discussed herein, there is inescapable circumstantial evidence that defendant Davis retaliated against Phillips, by not requesting the upgrade for Phillips after the March 2018 Affirmative Action complaint.

Defendant Davis, therefore, has failed to sustain her burden in moving for summary judgment under NYCHRL "to show 'no jury could find defendant liable under any of the evidentiary routes: under the McDonnell Douglas test, or as one of a number of mixed motives, by direct or circumstantial evidence.'" *Nazario,* 2017 U.S. Dist. LEXIS 94877, *15 (S.D.N.Y. 2017), quoting *Gioia,* 501 Fed. Appx. 52, 56 (2d Cir. 2012) and *Bennett,* 92 A.D.3d 29, 41 (1st Dept. 2011).    Defendant Davis' Memorandum of Law argues Phillips "abandoned the process" of the upgrade "and did so before she ever filed an internal complaint with FIT's Affirmative Action Office."[154]    However, this is the same argument that we have already shown in Point V as pretexutal.

Defendant Davis is not entitled to summary judgment under NYCHRL. She has failed to prove that "no jury could find defendant liable under...the McDonnell Douglas test, or...mixed motives, by...circumstantial evidence."[155]    Indeed, under the liberal standards of the NYCHRL, but-for causation is not required to support a retaliation claim. Rather, "a plaintiff need only show that her 'protected activity was a motivating factor behind the defendant's retaliatory action.'"

---

[153] Phillips 9-9-21 deposition, p. 124, lines 7-11 [**Exhibit K**].

[154] Defendant Davis Memorandum of Law, pp. 7; pp. 11-12.

[155] *Nazario,* 2017 U.S. Dist. LEXIS 94877, *15 (S.D.N.Y. 2017).

*McHenry v. Fox News Network, LLC*, 510 F. Supp.3d 51, 72 (S.D.N.Y. 2020).

Thus, under the circumstantial evidence previously discussed herein, a rational jury may permissibly find that Phillips' March 2018 Affirmative Action Complaint against Davis was a "motivating factor behind" Davis' failure to recommend Phillips for an upgrade.   *Id.* Accordingly, defendant Davis is not entitled to summary judgment under NYCHRL with regard to retaliation.[156]

## B.   DISPARATE TREATMENT UNDER NYCHRL: DAVIS TREATED PHILLIPS "LESS WELL" THAN BARTON.

As previously discussed herein, Davis did not request an upgrade for Phillips -- who is African American -- but did so for defendant Barton who is white, and Barton thereby received an upgrade.   Defendant Davis' Memorandum of Law gives short-shrift to disparate treatment. Davis merely asserts a conclusory claim that "the undisputed evidence shows Plaintiff has not been treated 'less well'" than Barton.[157]

Defendant Davis' reference to "less well" concerns the standard under NYCHRL for discriminatory treatment.   Under NYCHRL, New York's appellate courts have adopted the "Less-Well Doctrine"[158] to determine liability under NYCHRL for discrimination/disparate treatment.   Thus, under NYCHRL, liability for discrimination/disparate treatment is shown where the plaintiff "was treated *less well* than other employees because of the relevant characteristic." *Nelson v. HSBC Bank USA*, 87 A.D.3d 995, 999 (2d Dept. 2011) (emphasis added);

---

[156] Our prior arguments of pretext by defendant FIT and/or defendant Davis as to retaliation and the upgrade, are equally applicable to defendant Davis under NYCHRL, and are incorporated herein by reference.

[157] Defendant Davis' Memorandum of Law, p. 8.

[158] Although appellate authority has not used the name "Less-Well Doctrine", we utilize this term as a short-hand for the rule decided in *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 76 (1st Dept. 2009) and *Nelson v. HSBC Bank USA*, 87 A.D.3d 995, 999 (2d Dept. 2011).

*Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dept. 2009).   In the instant action, the "relevant characteristic" is Phillips' race -- African American.

We have already explained that the evidentiary record demonstrates the necessary inference of discrimination by showing disparate treatment: Defendant Davis did not request an upgrade for Phillips -- who is African-American -- but did so for defendant Barton who is white, and Barton thereby received an upgrade.[159]   Further, as previously discussed, in moving for summary judgment, defendant Davis did not file an affidavit explaining why she did not recommend Phillips for an upgrade and/or submit the paperwork necessary for an upgrade. Hence, the evidence demonstrates an inference of discrimination that defendant Davis treated Phillips "less well" than Barton because of race.   *Nelson v. HSBC Bank USA*, 87 A.D.3d 995, 999 (2d Dept. 2011); *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dept. 2009).   As previously shown, Barton and Phillips are similarly situated employees to trigger disparate treatment, and/or we have demonstrated questions of fact in this regard.

As plaintiff Phillips has satisfied the elements of discrimination/disparate treatment under NYCHRL -- treated less well because of race -- and/or raised questions of fact in that regard (as discussed previously), defendant Davis is not entitled to summary judgment.[160]   Indeed, defendant Davis has failed to sustain the evidentiary burden "to show 'no jury could find defendant liable under any of the evidentiary routes: under the McDonnell Douglas test, or as one of a number of mixed motives, by direct or circumstantial evidence.'" *Nazario,* 2017 U.S. Dist. LEXIS 94877,

---

[159] *Graham,*230 F.3d 34, 39 (2d Cir. 2000) ("A plaintiff may raise such an inference [of discrimination] by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group.").

[160] Our prior arguments of pretext by defendant FIT and/or defendant Davis as to disparate treatment, are equally applicable to defendant Davis under NYCHRL, and are incorporated herein by reference.

*15 (S.D.N.Y. 2017), quoting *Gioia,* 501 Fed. Appx. 52, 56 (2d Cir. 2012) and *Bennett*, 92 A.D.3d 29, 41 (1st Dept. 2011).

## POINT XI

**DEFENDANT BARTON IS NOT ENTITLED TO SUMMARY JUDGMENT UNDER 42 U.S.C. 1981, NEW YORK STATE HUMAN RIGHTS LAW AND/OR NEW YORK CITY HUMAN RIGHTS LAW; PHILLIPS HAS SHOWN HOSTILE WORK ENVIRONMENT AND RETALIATION UNDER THOSE STATUTES, AND/OR EVIDENCE RAISES QUESTIONS OF FACT UNDER THE MORE LIBERAL NYCHRL.**

We have already demonstrated that Phillips has satisfied the requirements of Title VII, and/or raised questions of fact thereunder, for hostile work environment and/or retaliation arising from Barton's May 2019 verbal attack and threat to kill Phillips.    As a matter of law, the standard for claims under Section 1981 and the NYSHRL are the same as for Title VII.    *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 45 (2d Cir. 2015); *Sherman v. Fivesky, LLC*, 2020 U.S. Dist. LEXIS 78801, *22 (S.D.N.Y. 2020); *Lamarr-Arruz v. CVS Pharm., Inc.*, 271 F. Supp. 3d 646, 655 fn 6 (S.D.N.Y. 2017).

Therefore, pursuant to our prior arguments as to hostile work environment and/or retaliation arising from Barton's May 2019 verbal attack and threat to kill Phillips, as well as Barton's prior "3/5 of a human being" statement, defendant Barton faces personal liability under 42 U.S.C. 1981 and the New York State Human Rights Law/Executive Law 296(7).[161]

Moreover, defendant Barton faces personal liability for hostile work environment, retaliation and interference with protected rights under the New York City Human Rights Law

---

[161]    *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) ("[I]individuals may be held liable under " 1981 and 1983 for certain types of discriminatory acts, including those giving rise to a hostile work environment...."); *Malena*, 886 F. Supp.2d 349, 366 (S.D.N.Y. 2012) (liability for retaliation under NY Exec. Law 296(7) "applies to 'any person', not only employers...who 'actually participates in the conduct giving rise to' the plaintiff's [discrimination or] retaliation claim.'").

(NYCHRL).   *Malena,* 886 F. Supp.2d 349, 366 (S.D.N.Y. 2012) (Under NYCHRL 8-107, "[T]he NYCHRL provides for individual liability of an employee 'regardless of ownership or decision making power.'").

Since Phillips has satisfied the stricter requirements of Title VII, Section 1981 and/or NYSHRL, and/or raised questions of fact thereunder, as to hostile work environment and/or retaliation, *a fortiori,* Phillips has done so with such claims under NYCHRL arising from Barton's May 2019 verbal attack and threat to kill Phillips.   *Camoia v. City of New York*, 2018 U.S. Dist. LEXIS 120184, *48 (E.D.N.Y. 2018); *Swiderski v. Urban Outfitters, Inc.*, 2017 U.S. Dist. LEXIS 207451, *17 n. 9 (S.D.N.Y. 2017).   Nonetheless, were this Court to grant summary judgment to the defendants under Title VII, Section 1981 and/or NYSHRL, Phillips' claims against defendant Barton for hostile work environment, retaliation and interference with protected rights, survive under the more liberal NYCHRL.

### A.  NYCHRL AND HOSTILE WORK ENVIRONMENT: BARTON'S MAY 2019 VERBAL ATTACK AND THREAT TO KILL PHILLIPS; BARTON'S "3/5 OF A HUMAN BEING" STATEMENT.

In her Memorandum of Law, defendant Barton never mentions that she threatened to kill Phillips in May 2019.   Instead, defendant Barton's Memorandum of Law reduces her behavior to "[s]creaming and yelling." [162]   Defendant Barton thus attempts to avoid the graphic and frightening description of her conduct contained in Phillips' deposition:

> **"And so she [Barton] got really angry that I was asking her questions and she said to me that she made this executive decision.   She doesn't give a fuck what I do.   Fuck you.   Shut the fuck up.   *Fucking I'll kill you.*   And she just got louder and louder and louder.   *And she said, I'm tired of your bullshit. I'm tired of your shit.   Fuck you.*   Fuck you.   Fuck you.   *I'll***

---

[162] Defendant Barton Memorandum of Law, p. 5.

*fucking kill you.*   I'm so fucking sick and tired of you, like that, but worse.[163]

...And she was in my face.   *She had walked over to me from her desk and she was in my face,* and she was foaming at the mouth...She's like I'm tired of your shit.   *I'm tired of your bullshit.   Shut the fuck up...I'll fucking kill you...And she told me she was going to fucking kill me and to shut the fuck up.*   Over and over.   I am tired of your shit.   Over and over.[164]

And then...she put her hands on my chest like to push me...*I was so afraid that she was going to fucking kill me.   That she had a weapon or something, because she just kept saying, I'm   going to fucking kill you.   And I was scared for my life...I was paralyzed with fear...I thought she was going to kill me.*[165]

During this verbal attack and threat to kill Phillips, Barton placed her index finger on Phillips' chest and prodded it back and forth, pushing Phillips.[166]   In her deposition, defendant Barton conceded that she told Phillips multiple times: "*If you don't shut the fuck up, I'm going to kill you.*"[167]

Defendant Barton claims her conduct in threatening to kill Phillips was not "severe enough to create a hostile work environment"[168] and otherwise describes such behavior as "innocuous".[169] In Point II herein, we have already demonstrated that Second Circuit caselaw holds Barton's May 2019 threat to kill Phillips was objectively severe to constitute hostile work environment.   *Kaytor*

---

[163] Plaintiff Phillips deposition of 9-9-21, at p. 130, lines 7-18 [**Exhibit K**].

[164] *Id.*, at p. 130, lines 21-25; p. 131, lines 2-9.

[165] *Id.*, at p. 131, lines 10-25; p. 132, lines 2-11.

[166] Plaintiff Phillips' deposition of 9-10-21, p. 372, lines 2-25; p. 373, lines 2-13 [**Exhibit L**]; Plaintiff Phillips' deposition of 10-20-21, p. 396, lines 23-25; p. 397, line 2 [**Exhibit M**].

[167] Defendant Barton deposition, p. 137, lines 13-21 [**Exhibit P**].

[168] Defendant Barton Memorandum of Law, p. 9.

[169] *Id.*, at p. 14.

*v. Elec. Boat Corp.*, 609 F.3d 537 (2d Cir. 2010); *Castagna v. Luceno*, 558 Fed. Appx. 19 (2d Cir. 2014).

Under NYCHRL, severe and/or pervasive conduct is not required to establish a hostile work environment.   Rather, pursuant to NYCHRL, New York State's Appellate Division adopted the "Less-Well Doctrine"[170] to determine liability under NYCHRL for discrimination/disparate treatment. Thus, under the NYCHRL, liability for discrimination/disparate treatment is shown where the plaintiff "was treated *less well* than other employees because of the relevant characteristic." *Nelson v. HSBC Bank USA*, 87 A.D.3d 995, 999 (2d Dept. 2011) (emphasis added); *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dept. 2009).

In the instant action, the relevant characteristic is Phillips' race -- African American. Barton's Memorandum of Law claims "there is no evidence at all to suggest" that her May 2019 verbal attack and threat to kill Phillips was "racially motivated."[171]   However, as discussed in Point II herein, counsel for defendant FIT elicited deposition testimony from Phillips that raises a question of fact as to whether Barton's May 2019 verbal attack and threat to kill was because of Phillips' race as an African American.

Defendant FIT's attorney asked Phillips why she believed Barton's May 2019 verbal attack and threat to kill her was "discrimination".[172]   Answering the deposition question posed by counsel for defendant FIT, Phillips responded:

> **"I have never seen her act that way with a white person. I have never seen her behave that way with any white person.**   And the

---

[170]   Although appellate authority has not used the name "Less-Well Doctrine," we utilize this term as a short-hand for the rule decided in *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 76 (1st Dept. 2009) and *Nelson v. HSBC Bank USA*, 87 A.D.3d 995, 999 (2d Dept. 2011).

[171]   Defendant Barton Memorandum of Law, p. 9.

[172]   Plaintiff Phillips' 9-9-21 deposition, p. 136, lines 13-14 **[Exhibit K]**

only other person that was in the office was another African American, so she felt free to do what she wanted to do because the college wasn't doing anything. **The college had not reprimanded her [as to the open 2018 Affirmative Action Complaint].** Whatever was going on at that time, she felt free enough...**And because this Affirmative Action case was hovering over all of our heads...She just went off on me...Telling me she's going to fucking kill me. Retaliation, discrimination. Never saw her behave like that with any white person.**"[173]

As we explained in Point II, the Second Circuit in *Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003) reversed summary judgment to the defendant employer on hostile work environment.   In *Terry*, the alleged perpetrator of discriminatory harassment treated the plaintiff, a Caucasian, with "contempt" in contrast to the "warm" manner in which he treated "non-white employees."   *Id.*, at 150 (2d Cir. 2003).   The Second Circuit held under such facts, "a reasonable fact-finder could conclude that race was a motivating factor in the harassment."   *Id.*, at 150 (2d Cir. 2003).

Pursuant to her deposition testimony and Second Circuit precedent in *Terry*, plaintiff Phillips has indeed raised questions of fact as to: 1) whether Barton's May 2019 verbal attack and threat to kill was based upon Phillips' race as an African American; and 2) thus whether Barton treated Phillips as an African American "less well" than white co-workers at FIT.

Further, as Phillips testified that Barton never verbally attacked and threatened to kill "any white person"[174], "a reasonable fact finder could conclude" that Phillips' race as an African American "was a motivating factor" in Barton's May 2019 verbal attack and threat to kill Phillips.[175] Phillips therefore satisfies NYCHRL's proximate cause requirement of unlawful discrimination as "one of the motivating factors, even if it was not the sole motivating factor...."

---

[173] *Id.*, at p. 136, lines 15-25; pp. 137-138, lines 2-3.

[174] Plaintiff Phillips' 9-9-21 deposition, p. 136, lines 15-25; pp. 137-138, lines 2-3 **[Exhibit K]**.

[175] *Terry*, 336 F.3d at 150 (2d Cir. 2003).

*Watson v. Emblem Health Servs.*, 158 A.D.3d 179, 182-183 (1st Dept. 2018).

Finally, Barton's prior statement that "African-Americans were considered 3/5 of a human being", is subject to the "Less-Well Doctrine" of the NYCHRL.   Barton's statement on its face concerned race and raises the specter of invidious discrimination no different than the statements made by Cowan and Farmer.   As Phillips stated in her March 2018 Affirmative Action complaint to FIT, "So the last thing I want to hear by white colleagues…is that my ancestors were considered 3/5 of person…."176

### B.   NYCHRL: BARTON'S MAY 2019 VERBAL ATTACK AND THREAT TO KILL PHILLIPS AS RETALIATION.

Defendant Barton's Memorandum of Law fails to discuss Barton's May 2019 verbal attack and threat to kill Phillips in terms of retaliation under NYCHRL.   Pursuant to NYCHRL, the elements of retaliation are: "(1) he or she engaged in a protected activity as that term is defined under the NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct."   *Bilitch v. New York City Health & Hosps. Corp.*, 194 A.D.3d 999, 1004 (2d Dept. 2021).

Applying these elements against Barton as a co-worker, Phillips engaged in protected activity through her March 2018 Affirmative Action complaint, which concerned discrimination in the form of racist statements from co-workers, including Barton.[177]   Phillips does not need to

---

176 **Exhibit B.**

[177] *Richardson*, 180 F.3d at 443 (2d Cir. 1999); *Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*, 120 A.D.3d 18, 26 (1st Dept. 2014) ("There is no dispute that plaintiff engaged in protected activity by making two complaints opposing discriminatory treatment.").

prove the underlying merits of her March 2018 Affirmative Action complaint.   Rather, she may

rely on her good-faith basis for the complaint as delineated in Plaintiff's Counter-Statement of

Material Facts. *Philbert v. City of New York*, 2022 U.S. Dist. LEXIS 3997 (S.D.N.Y. 2022);

*Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp.2d 569, 581 (S.D.N.Y. 2012). *Sumner v.

United States Postal Service*, 899 F.2d 203 (2d Cir. 1990).

The second element -- defendant Barton's knowledge of the protected activity -- is likewise

met since Barton knew of Phillip's March 2018 Affirmative Action Complaint by "spring of 2018"

and submitted a response on May 2, 2018.[178]

Next, Barton's May 2019 verbal attack and threat to kill Phillips "was reasonably likely to

deter a person from engaging in protected activity" under NYCHRL.   *Bilitch*, 194 A.D.3d at 1004

(2d Dept. 2021).   As we established in Point III, Barton's May 2019 verbal attack and threat to

kill Phillips would objectively dissuade "a reasonable employee" "from making or supporting a

charge of discrimination." *Burlington*, 548 U.S. at 68 (2006).   See also, *Quezada v. Roy*, 2015

U.S. Dist. LEXIS 140653,*57-58 (S.D.N.Y. 2015) ("A threat to kill someone for filing a grievance

is sufficiently serious that it might well deter a person of ordinary firmness from exercising his

First Amendment rights...").   Further, "A retaliatory hostile work environment is also cognizable

under the NYCHRL." *D'Alessio v. Charter Communs., LLC*, 2020 U.S. Dist. LEXIS 173332,

*18 (E.D.N.Y. 2021).

Finally, as discussed in Point III herein, evidence of Barton's retaliatory animus provides

a causal connection between Phillips' March 2018 Affirmative Action complaint against Barton

and Barton's May 2019 verbal attack and threat to kill Phillips.   Barton's own statement to FIT

---

[178] Defendant Barton deposition, pp. 66-67 [**Exhibit Q**]; Kekana's October 2019 report with timeline [**Exhibit J**].

concerning the May 2019 incident[179], evidences Barton's retaliatory animus against Phillips.   In her statement to FIT, Barton specifically mentioned: 1) Phillips had previously accused Barton of racism; and 2) Phillips' then-pending Affirmative Action Complaint against Barton (arising from alleged racism):

> **"There was a situation where she accused me of racism."[180]**
> ***
> **"I am ashamed I lost my temper.   I was pushed, it was the last straw.   Marjorie [Phillips] complained about me, it went up to Affirmative Action and there is still no resolution."[181]**

Likewise, as we previously discussed, FIT's Affirmative Action Officer, Deliwe Kekana, reviewed Barton's statement to FIT and testified that it is *"evidence"* that Barton retaliated against Phillips at the time of the May 16, 2019, incident: **"[A]ccording to what Marilyn Barton attests, she states that it was retal -- is evidence that it was retaliatory."[182]**

Based upon Barton's statement to FIT and Kekana's testimony, a rational jury may permissibly find that Phillips' March 2018 Affirmative Action complaint against Barton was motivating factor for Barton's May 2019 verbal attack and threat to kill Phillips.   *McHenry v. Fox News Network, LLC*, 510 F. Supp.3d 51, 72 (S.D.N.Y. 2020) ("Under the NYCHRL, a plaintiff is not required to show but-for causation...Rather, a plaintiff need only show that her 'protected activity was a motivating factor behind the defendant's retaliatory action.'") (citation omitted).

"To grant summary judgment in favor of a defendant in an NYCHRL retaliation claim, however, a court must conclude as a matter of law that 'retaliation played no role in the defendant's

---

179 Defendant Barton's Statement to FIT of the May 16, 2019, incident [**Exhibit D**].

180 *Id.*

181 *Id.*

182 Kekana deposition, p. 235, lines 2-18 [**Exhibit N**].

actions." *Scé v. City of New York*, 2022 U.S. App. LEXIS 5352, *8 (2d Cir. 2022).    Here, Phillips

has raised questions of fact as to Barton's retaliatory motive and thus causal connection between

Phillips' March 2018 Affirmative Action complaint against Barton and Barton's May 2019 verbal

attack and threat to kill Phillips.    This Court, therefore, should deny summary judgment to

defendant Barton under NYCHRL.

### C.     NYCHRL: BARTON'S MAY 2019 THREAT TO KILL PHILLIPS AS PROHIBITED INTIMIDATION, THREAT AND/OR INTERFERENCE WITH A PROTECTED RIGHT.

Under Section 8-107(19) of NYCHRL, "It shall be an unlawful discriminatory practice for

any person to coerce, intimidate, threaten or interfere with... any person in the exercise or

enjoyment of...any right granted or protected pursuant to this section."    Phillips' Complaint

alleges defendant Barton threatened to kill her on May 16, 2019, "while still awaiting the outcome"

of Phillips' March 2018 Affirmative Action complaint.    Complaint, para. 25, 26, 101-104.

Defendant Barton's May 2019 verbal attack and threat to kill Phillips comes within the

conduct prohibited by NYCHRL 8-107(19).    Defendant Barton's Memorandum of Law quotes

*Macias v. Barrier Free Living, Inc.*, 2018 U.S. Dist. LEXIS 52018, *24 (S.D.N.Y. 2018), holding,

"To establish interference, a plaintiff must show that a threat was made against him because of his

exercise of a protected right."

As discussed above, and in Points II and III herein, we have demonstrated that Phillips'

March 2018 Affirmative Action complaint against Barton was a motivating factor for Barton's

May 2019 threat to kill Phillips.    Indeed, Barton's own statement to FIT concerning the May 2019

incident[183], evidences Barton's retaliatory animus against Phillips.    Likewise, FIT's Affirmative

---

[183]  Defendant Barton's Statement to FIT of the May 16, 2019 incident [**Exhibit D**].

Action Officer, Deliwe Kekana, reviewed Barton's statement to FIT and testified that it is *"evidence"* that Barton retaliated against Phillips at the time of the May 16, 2019 incident.[184]

Thus, under *Macias,* Barton's threat to kill Phillips was "because of [Phillips"] exercise of a protected right" and/or raised a question of fact in that regard.    *Macias v. Barrier Free Living, Inc.*, 2018 U.S. Dist. LEXIS 52018, *24 (S.D.N.Y. 2018); *Singhal v. Doughnut Plant, Inc.*, 2022 U.S. Dist. LEXIS 60674, *11-12 (S.D.N.Y. 2022)(denying dismissal under FRCP 12(b)(6), where "Plaintiff alleges that Defendants threatened to challenge her law license and that Isreal physically blocked her office while using a threatening tone when questioning why she was at the office. Thus, Plaintiff has a stated a claim for interference under the NYCHRL.").

Moreover, contrary to defendant Barton's argument, a reasonable juror may surely find that Barton created the impression of impending injury at the time she threatened to kill Phillips.[185] Phillips testified to being "scared for her life" that Barton would indeed kill her:

> **"And then...she put her hands on my chest like to push me...*I was so afraid that she was going to fucking kill me.    That she had a weapon or something, because she just kept saying, I=m going to fucking kill you.    And I was scared for my life...I was paralyzed with fear...I thought she was going to kill me.*"**[186]

As Phillips has satisfied NYCHRL Section 8-107(19), and/or raised a question of fact in this regard, this Court should deny defendant Barton's motion for summary judgment.

---

[184] Kekana deposition, p. 235, lines 2-18 [**Exhibit N**].

[185] Defendant Barton Memorandum of Law, p. 17.

[186] Phillips 9-9-21 deposition, at p. 131, lines 10-25; p. 132, lines 2-11 [**Exhibit K**].

## POINT XII

**DEFENDANT BARTON IS NOT ENTITLED TO SUMMARY JUDGMENT ON
PHILLIPS' CLAIMS OF ASSAULT AND/OR INTENTIONAL INFLICTION
OF EMOTIONAL DISTRESS; EVIDENCE RAISES QUESTIONS OF FACT
WHETHER BARTON'S THREAT TO KILL PHILLIPS CAUSED FEAR
OF IMMINENT HARM AND WHETHER THE THREAT TO KILL PHILLIPS
WAS EXTREME, OUTRAGEOUS CONDUCT.**

Under New York State common-law, "A civil assault is an intentional placing of another person in fear of imminent harmful or offensive contact."   *Cadet v. Ayers*, 203 A.D.3d 539 (1st Dept. 2022).   Further, "To sustain a claim for assault there must be proof of physical conduct placing plaintiff in imminent apprehension of harmful contact."   *Holtz v. Wildenstein & Co.*, 261 A.D.2d 336 (1st Dept. 1999).

Defendant Barton seeks summary judgment on Phillips' civil assault claim, arguing: 1) "there is no evidence...that Barton intended to place Plaintiff in apprehension of imminent harm"[187]; and 2) "It is patently unreasonable for Plaintiff to claim that she feared imminent harm" from Barton's conduct.[188]   Defendant Barton, however, ignores evidence raising a question of fact on both matters: Whether Barton intended to place Phillips in fear of imminent harm, and whether Phillips' feared imminent harm.

Plaintiff Phillips' testimony as to Barton's intentional conduct is quite clear.   Phillips testified that Barton "got really angry", repeatedly yelled "I'll fucking kill you", and "had walked over to me from her desk and she was in my face, and she was foaming at the mouth....And she told me she was going to fucking kill me...Over and over."[189]   Such testimony on its face raises

---

[187]   Defendant Barton Memorandum of Law, p. 19.

[188]   *Id.*, at p. 20.

[189]   Phillips 9-9-21 deposition, at p. 130, lines7-18, 21-25; and p. 131, lines 2-9 **[Exhibit K]**.

a question of fact as to Barton's intention -- whether she intended to place Phillips in fear of imminent harm.     Moreover, upon considering Barton's testimony that her threat to kill Phillips was said "metaphorically" and she "didn't mean it literally"[190], a classic issue of credibility is presented for the jury.   *Nokaj v. North East Dental Mgmt., LLC*, 2019 U.S. Dist. LEXIS 24396, *35 (S.D.N.Y. 2019) ("As a general rule, 'district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage. Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'") (citations omitted).

Phillips' testimony further raises a question of fact as to whether she was in fear of imminent harm because of Barton's threat to kill her and Barton's accompanying body language. Phillips testified to being "scared for her life" that Barton would indeed kill her:

> **"And so she got really angry...And she just got louder and louder and louder.   *And she said, I'm tired of your bullshit.   I'm tired of your shit.   Fuck you*.   Fuck you.   Fuck you.   *I'll fucking kill you.*   I'm so fucking sick and tired of you, like that, but worse.**[191]
>
> ***
>
> **...And she was in my face.   *She had walked over to me from her desk and she was in my face,* and she was foaming at the mouth...*And she told me she was going to fucking kill me and to shut the fuck up.*   Over and over.**[192]
>
> **And then...she put her hands on my chest like to push me...*I was so afraid that she was going to fucking kill me.   That she had a weapon or something, because she just kept saying, I'm   going to fucking kill you.   And I was scared for my life...I was paralyzed with fear...I thought she was going to kill me.*[193]

---

[190]   Barton deposition, p. 136, lines 9-13 [**Exhibit Q**].

[191]   Phillips 9-9-21 deposition, at p. 130, lines 7-18 [**Exhibit K**].

[192]   *Id.*, at p. 130, lines 21-25; p. 131, lines 2-9.

[193]   *Id.*, at p. 131, lines 10-25; p. 132, lines 2-11.

During this verbal attack and threat to kill Phillips, Barton placed her index finger on Phillips' chest and prodded it back and forth, pushing Phillips.[194]

Barton's anger, repeated threat to kill Phillips, together with Barton's "foaming at the mouth" and chest prodding, provides the necessary "proof of physical conduct" to raise a question of fact as to whether Barton "plac[ed] plaintiff in imminent apprehension of harmful contact." *Holtz v. Wildenstein & Co.*, 261 A.D.2d 336 (1st Dept. 1999).   Contrary to defendant Barton's Memorandum of Law, a reasonable juror may surely find that Barton created the impression of impending injury when she threatened to kill Phillips.[195]   Accordingly, this Court should deny Barton's summary judgment motion as to assault based upon the foregoing questions of fact arising from the evidentiary record.

Likewise, the evidence also raises questions of fact as to whether Barton's threat to kill Phillips constituted intentional infliction of emotional distress ("IIED").   The elements of this tort are: "(I) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Scollar v City of New York*, 160 A.D.3d 140, 145-146 (1st Dept. 2018).   As Barton's May 2019 threat to kill Phillips was objectively severe to constitute hostile work environment and/or raise a question of fact in that regard[196], so too it raises a question of fact as extreme and outrageous conduct -- especially in the workplace.

Next, as previously discussed, the evidence raises a question of fact as to Barton's intent

---

[194] Plaintiff Phillips' deposition of 9-10-21, p. 372, lines 2-25; p. 373, lines 2-13 [**Exhibit L**]; Plaintiff Phillips' deposition of 10-20-21, p. 396, lines 23-25; p. 397, line 2 [**Exhibit M**].

[195] Defendant Barton Memorandum of Law, p. 17.

[196] *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537 (2d Cir. 2010); *Castagna v. Luceno*, 558 Fed. Appx. 19 (2d Cir. 2014).

to cause harm.   Further, plaintiff testified that she "absolutely" suffered emotional distress[197] because of Barton's threat to kill her, and still "fear[s] for her life from Marilyn Barton as of today. She threatened to kill me."[198]   Defendant Barton's Memorandum of Law concedes that Phillips has sought mental health treatment.   Thus, evidence raises a question of fact as to whether Barton's threat to kill Phillips constituted intentional infliction of emotional distress.

## CONCLUSION

Plaintiff Marjorie Phillips respectfully requests this Court deny the three, separate summary judgment motions of defendant The Fashion Institute of Technology, defendant Mary Davis and defendant Marilyn Barton.

Respectfully submitted,

THE COCHRAN FIRM
By: _____
      Derek Sells, Esq.
Attorneys for Plaintiff
55 Broadway, 23rd Floor
New York, NY 10006
212-553-9215

Dated: October 26, 2022

---

[197] Phillips' 10-20-21 deposition, p. 430, lines 4-14 [**Exhibit M**].

[198] *Id.*, at p. 445, line 25; p. 446, lines 2-4.