UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARJORIE PHILLIPS,

                Plaintiff,

- against -

THE FASHION INSTITUTE OF TECHNOLOGY, MARY DAVIS and MARILYN BARTON,

                Defendants.

20 Civ. 00221 (GBD)

# THE FASHION INSTITUTE OF TECHNOLOGY'S
# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
# OF SUMMARY JUDGMENT MOTION

**NIXON PEABODY LLP**
275 Broadhollow Road, Suite 300
Melville, New York 11747
(516) 832-7500

*Attorneys for Defendant*
   *The Fashion Institute of Technology*

Of Counsel:
Tara E. Daub, Esq.
Jeniffer Taylor, Esq.

# **TABLE OF CONTENTS**

Page(s)

POINT I. PLAINTIFF'S TITLE VII CLAIMS ARE BARRED, EXCEPT the RACE HARASSMENT CLAIM BASED ON THE MAY 2019 INCIDENT WITH BARTON ............... 1

    A. Plaintiff Failed to Exhaust Administrative Remedies ..................................... 1

    B. Plaintiff's Title VII Claims are Time-Barred Except the May 2019 Barton Incident ................................................................................................................ 1

POINT II. PLAINTIFF'S RACE DISCRIMINATION CLAIMS MUST BE DISMISSED .......... 2

    A. Plaintiff Suffered No Adverse Employment Actions Under Title VII or Section 1981 ................................................................................................................ 2

    B. The Record Supports No Inference of Race Discrimination On Non-Promotion ......... 4

    C. Plaintiff Fails to Show Any Evidence of Pretext For Race Discrimination ................. 5

POINT III. PLAINTIFF'S RACE-BASED HOSTILE WORK ENVIRONMENT CLAIM CANNOT WITHSTAND SUMMARY JUDGMENT ................................................................. 5

    A. The Earlier, Isolated and Race-Neutral Coworker Remarks are Insufficient ................ 5

    B. The May 2019 Barton Incident was Neither "Because of" Plaintiff's Race Nor Sufficiently Severe or Pervasive to Sustain a Co-worker Hostile Work Environment .......................................................................................................... 6

POINT IV. PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW .............. 7

    A. Plaintiff Suffered No Adverse Employment Action After The Protected Activity and Plaintiff Cannot Establish Any Causal Connection to An Adverse Action ............ 7

    B. Plaintiff's Co-worker Retaliatory Harassment Claim Fails as a Matter of Law ............ 8

POINT V. PLAINTIFF's NEGLIGENCE CLAIM AGAINST FIT IS BARRED ....................... 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

Best v. Duane Read Drugs,
   2014 U.S. Dist. LEXIS 158549 (S.D.N.Y. Nov. 6, 2014) ......................................................1

Bickerstaff v. Vassar Coll.,
   196 F.3d 435 (2d Cir. 1999) ..................................................................................................6

Brown v. Reinauer Trans. Co., L.P.,
   788 F. App'x 47 (2d Cir. 2019) ........................................................................................4, 5

Davis v. N.Y. Dep't of Corr.,
   256 F. Supp. 3d 343 (S.D.N.Y. 2017) ...................................................................................9

Fletcher v. ABM Bldg. Value,
   775 F. App'x 8 (2d Cir. May 29, 2019) ................................................................................7

Mathirampuzha v. Potter,
   548 F.3d 70 (2d Cir. 2008) ....................................................................................................1

Petrosino v. Bell Atlantic,
   385 F.3d 210 (2d Cir. 2004) ..................................................................................................3

Postema v. Nat'l League of Prof. Baseball Clubs,
   799 F. Supp. 1475 (S.D.N.Y. 1992), rev'd in part on other grounds, 998 F.2d
   60 (2d Cir. 1993) ....................................................................................................................3

Richardson v. N.Y. Dep't of Corr.,
   180 F.3d 426 (2d Cir. 1999) ..................................................................................................9

Simpri v. City of N.Y.,
   2003 U.S. Dist. LEXIS 23266 (S.D.N.Y. Dec. 30, 2003) .....................................................6

Smalls v. Garland,
   2021 U.S. Dist. LEXIS 63010 (S.D.N.Y. Mar. 31, 2021) .....................................................1

Syeed v. Bloomberg L.P.,
   568 F. Supp. 3d 314 (S.D.N.Y. 2021) ...................................................................................3

Vance v. Ball State Univ.,
   133 S.Ct. 2434 (2013) ............................................................................................................7

Wharff v. State Univ. of N.Y,
   2005 U.S. Dist. LEXIS 46977 (E.D.N.Y. Dec. 22, 2005) .....................................................4

Wharff v. State Univ. of N.Y.,
 413 F. App'x 406 (2d Cir. 2011) ..........................................................................................4, 5

Williamson v. Citibank N.A.,
 1999 U.S. Dist. LEXIS 23047 (S.D.N.Y. Dec. 13, 1999) .........................................................6

**PRELIMINARY STATEMENT**

Plaintiff's opposition to defendant FIT's motion for summary judgment rests on repetition of personal opinions and conclusions for which there is no record support.  Even as she exceeds by more than double the Court's 25-page limit for memoranda of law in opposition, Plaintiff fails to refute the lack of evidence of race discrimination or retaliation.[1]  Because the material facts remain undisputed, defendant FIT's motion should be granted in its entirety.[2]

**ARGUMENT**

**POINT I. PLAINTIFF'S TITLE VII CLAIMS ARE BARRED, EXCEPT THE RACE HARASSMENT CLAIM BASED ON THE MAY 2019 INCIDENT WITH BARTON**

   A. **Plaintiff Failed to Exhaust Administrative Remedies**

Plaintiff admits her August 2019 EEOC Charge alleged only <u>a single incident of co-worker race harassment by Barton on May 16, 2019</u>.  All her other Title VII claims relate to unmentioned events long before her EEOC Charge and must be dismissed.[3]  <u>Best v. Duane Read Drugs</u>, 2014 U.S. Dist. LEXIS 158549, *12 (S.D.N.Y. Nov. 6, 2014) (discussing cases dismissing claims as not reasonably related because they occurred prior to EEOC charge).

   B. **Plaintiff's Title VII Claims are Time-Barred Except the May 2019 Barton Incident**

---

[1] Each of the three Defendants is represented by separate counsel; each filed a motion for summary judgment on the respective claims against it; and each complied with your Honor's individual rules, limiting memoranda of law in support and opposition to 25 pages.  Plaintiff filed a 75-page omnibus brief, 53 pages of which were exclusively devoted to opposing FIT's motion.  The Court should reject Plaintiff's attempt to grossly circumvent its rules, and strike all pages beyond the 25-page limit. Defendant is complying with the 10-page limit for reply.

[2] Plaintiff failed to specifically controvert the vast majority of the statements in Defendants' 56.1 Statement and, even where she purports to do so, offers only supposition and conjecture, or gross distortions of the record.  As such, her Rule 56.1 Counter Statement fails to comport with Rule 56 and Local Rule 56.1, and the facts in Defendants' 56.1 Statement should be deemed admitted.  <u>See</u> Local Civil Rule 56.1(c), (d); Fed. R. Civ. P. 56(e).

[3] Plaintiff argues that her other Title VII claims – of (1) co-worker race harassment comments (Cowan in 2014 regarding gossiping on school bus; Barton in 2016 about the "three-fifths compromise"; Farmer in 2017 about her hat), (2) discriminatory or retaliatory non-promotion in 2017, and (3) any other alleged retaliation for her April 2018 AA Office complaint – are all "reasonably related" to the single claim in her EEOC charge. Contrary to Plaintiff's argument, <u>Smalls v. Garland</u>, 2021 U.S. Dist. LEXIS 63010 (S.D.N.Y. Mar. 31, 2021), supports dismissal of her other claims.  <u>Id</u>. (citing <u>Mathirampuzha v. Potter</u>, 548 F.3d 70, 77 (2d Cir. 2008) (where "plaintiff's administrative complaint contain[ed] no reference to repeated conduct or the cumulative effect of individual acts" but was "based on [a] single act of abuse," plaintiff failed to exhaust administrative remedies with respect to other, unrelated acts.").

Plaintiff concedes that discrete acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Plaintiff filed her EEOC Charge on or about August 12, 2019, making any discrete act prior to October 16, 2018 untimely. Plaintiff does not oppose dismissal of her Title VII failure to promote claims, alleging that Davis spoke with her in July 2017 about an upgrade but took no further action for discriminatory or retaliatory reasons.[4]

**POINT II. PLAINTIFF'S RACE DISCRIMINATION CLAIMS MUST BE DISMISSED**

**A.   Plaintiff Suffered No Adverse Employment Actions Under Title VII or Section 1981**

**1.   Plaintiff was Not Denied Promotion to Any Vacant Position Filled by Another**

Plaintiff's race-based non-promotion claims fail. Plaintiff claims that Davis took steps in 2017 to support Barton's upgrade to Executive Assistant, but did not take the same steps in 2017 to support Plaintiff's upgrade to an undetermined job title. Specifically, Davis requested reevaluation of Barton's job title in 2017, and Barton obtained a title upgrade from Research Associate to Executive Assistant, through the CBA's detailed procedures (involving review by a Reevaluation Committee comprised of a Union representative, Isolina Perez, and a Human Resources representative, Robert Brown; and approval by the President's designee).[5] Plaintiff implies that this should be an adverse action under Title VII and Section 1981.

The material facts are not in dispute: According to Plaintiff, during a single conversation in July 2017, Davis approached Plaintiff to express interest in assigning Plaintiff additional duties in the future that could support an undetermined title upgrade and tasked her with obtaining some examples of potential job titles and job descriptions from Human Resources.

---

[4] Plaintiff's race-based hostile work environment claim based on the May 2019 Barton incident, as asserted in her August 2019 EEOC charge, is the only Title VII claim that was timely filed and exhausted. Plaintiff merely argues that the three earlier co-worker comments (Cowan 2014; Barton 2016; Farmer 2017) can used as "background evidence in support of a timely claim" about the May 2019 incident. Their lack of evidentiary value for that purpose is discussed below. All of the earlier comments would be otherwise time-barred under Title VII.

[5] Plaintiff's assertion that the CBA is inadmissible hearsay is meritless; it has been authenticated as a business record. (Defs. JSMF ¶ 3, citing Glass Affidavit.)

2

Plaintiff admits she never followed up with Davis on those items and never raised the subject with Davis again. Plaintiff knew in 2017 that she had not been promoted. Plaintiff admittedly did nothing after July 2017 to pursue the reevaluation procedure through Davis, Human Resources, or her Union. (Defs. JSMF ¶¶ 49-54, 59). Nor did she mention it as an issue in her April 2018 AA Office complaint or in her October 2019 EEOC Charge.

Critically, Plaintiff's opposition confirms that there was no adverse employment action. Plaintiff admits that there was no vacancy, she submitted no application, and no one else received promotion to the undetermined title she allegedly wanted. Petrosino v. Bell Atlantic, 385 F.3d 210, 226 (2d Cir. 2004) ("A specific application is required to 'ensure that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer.'"). Plaintiff cites no case holding that a plaintiff may sue for discriminatory non-promotion where there was no vacancy or filling of the desired position. Indeed, courts routinely reject such efforts. Syeed v. Bloomberg L.P., 568 F. Supp. 3d 314, 46-48 (S.D.N.Y. 2021) (dismissing claim where plaintiff did not identify or apply for an available position and "defendant would necessarily need to create a new position to satisfy plaintiff's request for a promotion"); Postema v. Nat'l League of Prof. Baseball Clubs, 799 F. Supp. 1475 (S.D.N.Y. 1992) (granting summary judgment based on lack of vacancy and hiring of any other applicant for the job), rev'd in part on other grounds, 998 F.2d 60 (2d Cir. 1993).[6]

Plaintiff has never claimed, nor could she, that she applied for or should have been promoted to the Executive Assistant position that Barton received through the CBA title reevaluation procedure. The Executive Assistant title required a Masters Degree, which Plaintiff did not have; Plaintiff wanted a different job that did not exist as a vacancy. Here, where FIT did

---

[6] Plaintiff's citation to cases regarding "futility" of application due to an employer's discriminatory practices are simply irrelevant where there was no vacancy and no one else was hired or promoted to the higher title she wanted. Further, Plaintiff failed to apply for any other relevant promotional positions that were posted.

3

not hire or promote anyone, of any race, into the undetermined, higher title Plaintiff wanted, she cannot show treatment different from anyone else seeking it and cannot support a prima facie case.[7] As a result, Plaintiff fails to show any adverse action under Title VII or Section 1981.

### 2. Plaintiff Concedes That Neither the Investigation Report Date, Nor Her Office Relocation, Constitutes An Adverse Employment Action

As FIT established, the existence or duration of an employer's investigation of a complaint is not an adverse action under Title VII or Section 1981. Plaintiff does not argue to the contrary.[8] FIT also established an employee's office relocation is not an adverse action. Plaintiff cites no authority to the contrary.[9] Such clams must be dismissed as abandoned. The only adverse action Plaintiff asserts as such in her opposition is her 2017 non-promotion.

### B. The Record Supports No Inference of Race Discrimination On Non-Promotion

As discussed above, Plaintiff claims that Davis took steps in 2017 to support Barton's reevaluation and upgrade to Executive Assistant under the CBA procedures, but did not take the same steps in 2017 to support Plaintiff's upgrade to an undetermined job title. Her Title VII claim is time-barred but she claims race-based disparate treatment in violation of Section 1981.

In addition to failing to show that Davis took any adverse action, Plaintiff offers no

---

[7] Notably, Plaintiff's Union representative, Ms. Perez, was on the committee that reviewed and recommended Barton's title upgrade. Plaintiff does not claim the CBA's negotiated title upgrade procedures had a discriminatory purpose. Wharff v. State Univ. of N.Y., 413 F. App'x 406, 408 (2d Cir. 2011) (affirming grant of summary judgment to SUNY where male employee claimed disparate treatment based in part on female employees receiving unposted title upgrades under CBA procedures); Wharff v. State Univ. of N.Y., 2005 U.S. Dist. LEXIS 46977, *3-4 (E.D.N.Y. Dec. 22, 2005) (recommending summary judgment; describing CBA's title upgrade procedure, with no vacancy and no posting), accepted (citation omitted), affirmed at 413 F. App'x 406.

[8] Plaintiff also admits that Ms. Kekana promptly investigated her April 2018 AA Office Complaint, commencing FIT's investigation immediately, meeting with all witnesses and receiving their statements during April, May, June, and July 2018. (Defs. JSMF ¶¶ 133-59). Plaintiff does not allege that Ms. Kekana delayed the final investigation report due to Plaintiff's race. In any event, Plaintiff does not allege her coworkers made any similar comments from April 2018 to the present, over the last 4-1/2 years.

[9] Plaintiff now asserts in her affidavit that the relocation was a "disadvantage". It is well settled that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Brown v. Reinauer Trans. Co., L.P., 788 F. App'x 47, 49 (2d Cir. 2019) (citations omitted). In Complaint paragraph 36, Plaintiff alleged the move was an "inconvenience", not a "disadvantage." She testified only as to inconvenience for a short period before the pandemic and working remotely. Pl. Dep. at p. 229:2-23. Before returning from leave in November 2019, Plaintiff requested by email to work in an area "separate" from Barton; her request was granted. See Defs. JSMF ¶ 215.

evidence of disparate treatment concerning the promotion she desired. Plaintiff has never claimed, nor could she, that she should have been promoted to the Executive Assistant title that Barton received. Plaintiff pointlessly argues that she and Barton should be considered "similarly situated" for purposes of a disparate treatment analysis, while ignoring the fatal defects that the desired position vacancy did not exist (it would need to be determined and created through the CBA procedure) and no one else filled it. Wharff, 413 F. App'x at 408 (2d Cir. 2011) (female employees received unposted title upgrades under CBA procedure); Jean-Pierre v. Citizen Watch Co., 2019 U.S. Dist. LEXIS 196109, *17 (S.D.N.Y. Nov. 12, 2019) (Plaintiff's counsel's case) (no position existed or filled).[10] As a result, Plaintiff's non-promotion claim must be dismissed.

### C. Plaintiff Fails to Show Any Evidence of Pretext For Race Discrimination

Lacking evidence of pretext, Plaintiff simply opines that she was "qualified" for a promotion so she can think of no reason other than race that Davis did not raise the topic with her after July 2017.[11] Plaintiff's race alone cannot sustain a prima facie case, let alone pretext.

## POINT III. PLAINTIFF'S RACE-BASED HOSTILE WORK ENVIRONMENT CLAIM CANNOT WITHSTAND SUMMARY JUDGMENT

### A. The Earlier, Isolated and Race-Neutral Coworker Remarks are Insufficient

Even if not time-barred, the record lacks any evidence that Plaintiff's coworkers' isolated alleged remarks (Cowan 2014; Barton 2016; Farmer 2017) were made "because of" her race, let alone offensive or sufficiently severe or pervasive. Plaintiff's opinion that the race-neutral

---

[10] Plaintiff's citation to cases regarding "futility" of application due to an employer's discriminatory practices are not only irrelevant (where, as here, there was no vacancy filled), but baseless on the record. Nor does Plaintiff even attempt to argue she can meet the futility standard set out in those cases, beyond a conclusory citation. Indeed, Plaintiff alleges that Davis approached her about the potential title upgrade in July 2017, there is no allegation of any discriminatory acts by Davis, and Plaintiff admittedly failed to follow up with Davis on the items she requested. Further, as discussed below as to the retaliation claim, Davis had no knowledge of any alleged protected activity until after Plaintiff filed her AA Office complaint in April 2018, well over nine (9) months later.

[11] Plaintiff now asserts in her affidavit that she was performing additional duties. This contradicts her deposition testimony and must be disregarded. Brown, 788 F. App'x at 49. Davis also denied it. In any event, the performance of any additional duties is not material to this motion. The CBA required a process for title reevaluation and there was no vacancy in the undetermined and non-existent position she allegedly desired.

5

comments could reasonably be construed as "comparable to the 'N-word'" is meritless.

### B. The May 2019 Barton Incident was Neither "Because of" Plaintiff's Race Nor Sufficiently Severe or Pervasive to Sustain a Co-worker Hostile Work Environment

Plaintiff argues that Barton yelling at her once in May 2019 created a hostile work environment "because of" Plaintiff's race. Plaintiff admits that Barton said nothing relating to Plaintiff's race (Defs. JSMF ¶ 179-80) and was reacting to Plaintiff repeatedly chiding Barton over her decision to provide a student with graduation regalia. (Defs. JSMF ¶ 209-210.) Plaintiff never saw Barton yell at any other person, but speculates that because Plaintiff is black, that must be the reason. Plaintiff's status in a protected class is not evidence of discrimination. See Simpri v. City of N.Y., 2003 U.S. Dist. LEXIS 23266, at *4 (S.D.N.Y. Dec. 30, 2003).

Barton's November 2016 mention of the historical "three fifths compromise" is neutral, non-offensive, unrelated, and too attenuated from May 2019 to supply such evidence.[12] Bickerstaff v. Vassar Coll., 196 F.3d 435, 456 (2d Cir. 1999) (holding plaintiff's feeling and perceptions of being discriminated against are not evidence of discrimination). Cowan's 2014 comment and Farmer's 2017 comment are similarly race-neutral, remote and insufficient.[13] The comments also cannot be considered objectively offensive to a reasonable person. Plaintiff's new argument that Cowan and Farmer were her supervisors is also irrelevant and meritless.[14]

---

[12] Plaintiff cites Ashcroft, 336 F.3d 128 (2d Cir. 2003). However, unlike Ashcroft, in which the plaintiff showed evidence that the alleged discriminator showed "contempt" toward multiple black employees on the basis of their race, there is no allegation or evidence that Barton engaged in any racially discriminatory behavior.

[13] Plaintiff argues that the three co-worker comments (Cowan 2014; Barton 2016; Farmer 2017) can be used as "background evidence in support of a timely claim" that Barton's May 2019 argument with her created a race-based hostile work environment. Isolated and facially race-neutral remarks made years prior by different individuals plainly have no evidentiary value in demonstrating whether Barton's 2019 race-neutral comment was "because of" Plaintiff's race. See Williamson v. Citibank N.A., 1999 U.S. Dist. LEXIS 23047, at *38-39 (S.D.N.Y. Dec. 13, 1999) (isolated comments by different individuals over a four-year period, all of which lacked a clear or objective racial or sexual connotation, were insufficient to establish a hostile work environment).

[14] Plaintiff, for the first time, attempts to argue that Cowan and Farmer were her supervisors. While her claim fails in any event, for the reasons above, her assertion is baseless and is raised for the first time in her affidavit. All were all union employees in non-supervisory titles. (Defs. JSMF ¶ 102). Plaintiff's only support, in her affidavit at paragraph 32, is the conclusory assertion that, when she worked on "coordinating special projects/events", Davis "directed me to work under the supervision and direction of [Farmer, Cowan and others]." This is clearly

Finally, Plaintiff admits that Barton was a coworker with no supervisory authority. FIT took immediate remedial actions (Defs. JSMF ¶¶ 213-16), including suspending Barton, and they had no further interaction.[15] Accordingly, Plaintiff's race-based hostile work environment claims against FIT fail as a matter of law under Title VII and Section 1981.

**POINT IV. PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW**

### A. Plaintiff Suffered No Adverse Employment Action After The Protected Activity and Plaintiff Cannot Establish Any Causal Connection to An Adverse Action

The only adverse action Plaintiff asserts in her opposition is her 2017 non-promotion.[16] As discussed above, Plaintiff claims that Davis took steps in 2017 to support Barton's upgrade to Executive Assistant under the CBA's procedures, but did not take the same steps in 2017 to support Plaintiff's upgrade to an undetermined job title. Plaintiff's Title VII claim is barred but she claims retaliation for her April 2018 AA Office complaint in violation of Section 1981.

Specifically, Plaintiff speculates in her affidavit that "because Davis changed their relationship for the worse after the Affirmative Action complaint, it would have been futile for her to approach Davis about the previously agreed-upon upgrade." Thus, she argues there is a

---

insufficient. To establish vicarious liability under Title VII, an employee is a "supervisor" only if "he or she is empowered by the employer to take tangible employment actions against the victim." Vance v. Ball State Univ., 133 S.Ct. 2434, 2439 (2013). This requires evidence of authority "to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Id. at 2443; Andrus v. Corning, Inc., 2016 U.S. Dist. LEXIS 131413 (W.D.N.Y. Sept. 26, 2016). Since there was no adverse action, there can be no strict liability in any event. Further, Plaintiff does not allege that either of their isolated comments re-occurred at any time before or after her April 2018 AA Office complaint.

[15] Ignoring her burden to provide evidence of race discrimination, Plaintiff mainly focuses on her subjective belief that Barton, then a 55-year-old woman who she admits had never behaved in such a way before, was seriously threatening her with actual harm. During her deposition, Plaintiff conceded that Barton did not physically push her. (Defs. JSMF ¶¶ 174, 176-77).

[16] Defendant FIT argued in its motion that Plaintiff's office relocation was not an adverse employment action as a matter of law and was based on several legitimate reasons, including it being based on Plaintiff's request. In opposition, Plaintiff cites no authority to the contrary. As a result, Plaintiff concedes that the office relocation, initiated at her request, was not an adverse employment action and her retaliation claim must be dismissed on that basis alone, as well as the others set forth in Defendant FIT's opening memorandum of law and herein. See also Fletcher v. ABM Bldg. Value, 775 F. App'x 8 *12, 14 (2d Cir. May 29, 2019) (holding that transfer of position and work location were "mere inconvenience" and insufficient to support either a discrimination or retaliation claim).

7

question of fact as to "[w]hether defendant Davis retaliated against Phillips, by not requesting an upgrade for Phillips after the March 2018 Affirmative Action complaint." (Pl. Opp., at 9-10).

      As set forth above, there was no vacancy and no adverse employment action. However, if any adverse action had occurred, it would have been in 2017. According to Plaintiff, during their single conversation about the upgrade in July 2017, Davis raised the topic and expressed interest in assigning Plaintiff additional duties that could support a title upgrade and tasked her with obtaining some examples of potential job titles and job descriptions from Human Resources. Plaintiff admits she simply never followed up with Davis on those items and never raised the subject with Davis again. Plaintiff knew in 2017 that she had not been promoted. Plaintiff admits that she simply <u>did nothing to follow up with Davis for over nine (9) months before April 2018</u>, when she filed her unrelated AA Office complaint against her coworkers; and admits she <u>did nothing to follow up with Davis after April 2018</u>, because she simply assumed Davis would not support her for a promotion after she filed the complaint against her coworkers. (Defs. JSMF ¶¶ 30-51). As discussed above, the futility cases Plaintiff cites are irrelevant. For all the reasons above, and the absence of any evidence of retaliation or causation based on the record as a matter of law, Plaintiff's retaliation claim must be dismissed.

      **B.**  **Plaintiff's Co-worker Retaliatory Harassment Claim Fails as a Matter of Law**

      Plaintiff argues that FIT should be held liable for coworker retaliatory harassment, based on the single incident of Barton yelling at her in May 2019 in response to Plaintiff's criticisms about giving a student graduation regalia. Because it was a single coworker incident, Plaintiff searches in vain for some reason why FIT should be held liable. First, Plaintiff offers the novel but wholly speculative and meritless theory that, because Ms. Kekana had not yet issued the final investigation report following her investigation of Plaintiff's April 2018 AA Office complaint over a year earlier, Ms. Kekana's alleged "negligence" somehow "caused" Barton to yell at

Plaintiff.  Second, Plaintiff offers her absurd opinion that, since she reported in her April 2018 AA Office complaint that Barton explained the historical "three-fifths compromise" to a student aide in November 2016, "a rational juror may permissibly find that FIT was on notice, and should have reasonably known of Barton's May 2019 verbal attack and threat to kill Phillips, as an outgrowth of th[at] prior racial incident involving Barton."  (Pl. Opp., at 24).

Plaintiff's illogical theories suffer from multiple other fundamental defects.  First, Plaintiff cannot show that Barton yelling at her once is an adverse employment action by FIT.  To establish a co-worker retaliatory harassment claim, "a plaintiff must satisfy the same standard that governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of his employment."  Davis v. N.Y. Dep't of Corr., 256 F. Supp. 3d 343, 355 (S.D.N.Y. 2017) (citing Richardson v. N.Y. Dep't of Corr., 180 F.3d 426, 446 (2d Cir. 1999) ("[U]nchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second prong of the retaliation prima facie case.") (emphasis added).

There is no dispute this was a single incident, for which Barton apologized.  FIT took immediate remedial action, including by suspending Barton pending an investigation pursuant to the CBA, imposing conditions subject to consultation with the Union and others, conducting an internal investigation, coordinating a "mediation" with a psychologist to remedy the relationship between Barton and Plaintiff (which Plaintiff originally refused to participate), and separating Barton and Plaintiff's seating locations at Plaintiff's request.  (Defs. JSMF ¶¶ 209-16).  Plaintiff admits that Barton did nothing else after that.  Soon afterward, Plaintiff began working remotely during the pandemic.  (Id. at ¶¶ 215-16).  Plaintiff cites no case to support an argument that one incident of alleged retaliation involving a coworker can be sufficient, let alone where the employer took immediate and effective action in response.

9

Furthermore, Plaintiff lacks any evidence that her April 2018 AA Office complaint was the cause, let alone the "but for" cause, of Barton's conduct in May 2019. There is no temporal proximity, as it happened over one year later. Furthermore, Plaintiff admits that the argument was about Plaintiff interjecting and criticizing Barton for giving a student graduation regalia – this was the undisputed reason for Barton's response. Barton did not start the argument and tried to avoid the argument, by asking Plaintiff to "please stop" and by instructing her to speak with the Dean if she continued to take issue with it. (Defs. JSMF ¶¶160-71). Barton never referenced Plaintiff's long-past protected activity during the argument. (Defs. JSMF ¶¶ 209-16). During the investigation, Barton did attempt to explain to the investigator the context of her long and difficult relationship with Plaintiff going back to 2012, and did mention the April 2018 AA office complaint, but Barton later mentioning that context to the investigator as full disclosure was certainly not evidence of any retaliatory motive by Barton at the time of the incident.

**POINT V. PLAINTIFF'S NEGLIGENCE CLAIM AGAINST FIT IS BARRED**

As FIT established, Plaintiff's negligence claim against FIT fails as a matter of law, both because it is barred under the New York State Workers' Compensation Law and based on her failure to serve a notice of claim. Plaintiff has abandoned this claim, requiring dismissal.

## CONCLUSION

Defendant FIT respectfully requests that it be granted summary judgment dismissing the Complaint in its entirety, with prejudice, and that this Court also award it the costs incurred in making this motion, and in defending this action, including reasonable attorneys' fees.

Dated: January 13, 2023
      Melville, New York

**NIXON PEABODY LLP**

By: */s/ Tara Eyer Daub*