UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

MARJORIE PHILLIPS,

                Plaintiff,

      - against -

THE FASHION INSTITUTE OF TECHNOLOGY,
MARY DAVIS, and MARILYN BARTON,

                Defendants.

------------------------------------------------------------------------X

Docket No. 20-cv-00221
(GBD)


# MARY DAVIS'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF SUMMARY JUDGMENT MOTION


SARETSKY KATZ & DRANOFF, L.L.P.
Attorneys for Defendant DAVIS
*Office and P.O. Address:*
565 Taxter Road, Suite 210
Elmsford, New York 10523
(212) 973-9797

*Of Counsel:*
    Eric Dranoff

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

REPLY POINT I

    PLAINTIFF'S FAILURE TO PROMOTE DISCRIMINATION AND RETALIATION
    CLAIMS UNDER 42 U.S.C 1981, NYSHRL AND NYCHRL SHOULD BE DISMISSED ..... 2

REPLY POINT II

    PLAINTIFF'S AIDING AND ABETTING DISCRIMINATION:
    NYSHRL LAW 296(6) AND NEW YORK CITY HUMAN RIGHTS LAW 8-107(6)
    SHOULD BE DISMISSED ..................................................................................... 6

REPLY POINT III

    PLAINTIFFS DISCRIMINATION AND RETALIATION CLAIMS UNDER 42 U.S.C 1981,
    NYSHRL AND NYCHRL PREMISED UPON HER OFFICE RELOCATION SHOULD BE
    DISMISSED ....................................................................................................... 9

CONCLUSION ........................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

<u>PAGES</u>

<u>CASES</u>

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,*
   757 F.2d 523 (2d Cir.1985) ...................................................................................4

*Bickerstaff v. Vassar College,*
   196 F.3d 435 (2d Cir.1999) ...............................................................................1, 5

*Breland-Starling v. Disney Publ'g Worldwide,*
   166 F. Supp. 2d 826, 830 (S.D.N.Y. 2001) ........................................................6

*Brown v. Coach Stores, Inc.,*
   163 F.3d 706 (2d Cir.1998) ................................................................................5

*Camarda v. Selover,*
   673 F. App'x 26 (2d Cir. 2016)............................................................................1

*Cardwell v Davis, Polk * Wardwell, LLP*
   2020 WL 6274826, at *22 (S.D.N.Y. 2020) ......................................................6

*D'Amico v. City of New York,*
   132 F.3d 145 (2d Cir. 1998) ...............................................................................2

*Fletcher v. ABM Bldg. Value,*
   775 F. App'x 8 *12, 14 (2d Cir. 2019)…………………………………...……………10

*Gross v. NBC,*
   232 F. Supp. 2d 58 (S.D.N.Y. 2002) ..................................................................1

*Hayes v. New York City Dep't of Corr.,*
   84 F.3d 614 (2d Cir. 1996).).)..........................................................................10

*Howard Univ.* v. *Borders,*
   2022 WL 3568477, at *6 (S.D.N.Y. 2022) .........................................................4

*In re Castaldo,*
   No. 05-36349 CGM, 2006 WL 3531459, at *6 (Bankr. S.D.N.Y. 2006) ................2

*Jean-Pierre v. Citizen Watch Co. of Am., Inc.,*
   No. 18-CV-0507 (VEC), 2019 WL 5887479, at *9 (S.D.N.Y. 2019), *Appeal dismissed* No.
   19-4036, 2020 WL 1188326, at *1 (2d Cir. 2020).............................................1, 6

*Jones v. New York City Dep't of Correction,*
   No. 99-CV-11031, 2001 WL 262844, at *10 (S.D.N.Y. 2001) ..............................1

*Lewis* v. *Triborough Bridge & Tunnel Auth.*,
    77 F. Supp.2d 376 (S.D.N.Y. 1999) ...........................................................................8

*Martin v. City of New York*,
    627 F.Supp. 892 (E.D.N.Y.1985) ...............................................................................2

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003) ........................................................................................4

*Olin Corp. v. Lamorak Ins. Co.*,
    332 F. Supp. 3d 818 (S.D.N.Y. 2018) ........................................................................2

*Ott v. Fred Alger Mgmt.*,
    11 Civ. 4418, 2016 U.S. Dist. LEXIS 132563, *22 (S.D.N.Y. 2016) .......................2

*Perma Research & Dev. Co. v. Singer Co.*,
    410 F.2d 572 (2d Cir.1969) .........................................................................................2

*Rochetti v. New York State Dep't of Motor Vehicles*,
    No. 02 CV 1710 SLT LB, 2005 WL 2340719, at *7 (E.D.N.Y. 2005)..................1, 5

*Scott v. Harris*,
    550 U.S. 372 (2007) ....................................................................................................2

*Williams v. City of New York*,
    No. 15 CIV. 6900 (BMC), 2016 WL 5173254, at *4 (E.D.N.Y. 2016) .....................7

## STATUTES

42 U.S.C 1981.................................................................................................................2, 9
5 Charles Alan Wright & Arthur R. Miller..........................................................................7
Federal Practice and Procedure § 1183, at 23 n. 9 (3d ed. 2004) ......................................7
NYSHRL LAW 296(6).......................................................................................................6
NYCHRL 8-107(6).............................................................................................................6
Rule 56(e)(2) Fed.R.Civ.P. ................................................................................................2
Title VII, § 1981 ................................................................................................................6

## PRELIMINARY STATEMENT

In Defendants' respective submissions on this motion, it was shown that none of Plaintiff's claims have merit.[1] Plaintiff's opposition, including her seventy five page memorandum of law, does not alter this conclusion. To the contrary, Plaintiff's opposition is telling for what it fails to address. With respect to Defendant Davis ("Davis"), Plaintiff's opposition fails to address the following POINTS in Davis's initial Memorandum of Law ("MOL"):

- POINT I.A. (See Davis's MOL at p. 4)
- POINT I.C. (See Davis's MOL at pp. 9-10)
- POINT III.A. (See Davis's MOL at pp. 14-18)
- POINT III.C.(See Davis's MOL at pp. 18-20)
- POINT IV (See Davis's MOL at p. 20)
- POINT VI (See Davis's MOL at p. 21)
- POINT VII (See Davis's MOL at p. 23)

Where, as here, a party opposing summary judgment fails to address arguments in favor of summary judgment, courts may deem the unaddressed claims abandoned. Indeed, Plaintiff's counsel was faced with such an adverse abandonment finding in *Jean-Pierre v. Citizen Watch Co. of Am., Inc.*, No. 18-CV-0507 (VEC), 2019 WL 5887479, at *9 and *17 (S.D.N.Y. Nov. 12, 2019), *Appeal dismissed* No. 19-4036, 2020 WL 1188326, at *1 (2d Cir. Jan. 7, 2020); *See also, Jones v. New York City Dep't of Correction*, No. 99-CV-11031, 2001 WL 262844, at *10 (S.D.N.Y. Mar. 15, 2001); *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016).

Plaintiff's opposition is also deficient because it is based on perceptions and feelings which are grossly insufficient to defeat summary judgment. *Bickerstaff v. Vassar College,* 196 F.3d 435, 456 (2d Cir.1999) (internal citation omitted); *Rochetti v. New York State Dep't of Motor Vehicles*, No. 02 CV 1710 SLT LB, 2005 WL 2340719, at *7 (E.D.N.Y. June 13, 2005*). Gross v. NBC*, 232 F. Supp. 2d 58, 72 (S.D.N.Y. 2002) ("The record is replete with Gross's conclusory statements and

---

[1] Davis also incorporates those arguments made in FIT's and Barton's respective original and reply memoranda of law.

subjective feelings — not facts — in support of her claims that she was treated differently because of her gender.")

Plaintiff's opposition is deficient because it contradicts her deposition testimony. A party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969) (examining omission in four-day deposition); *Martin v. City of New York*, 627 F.Supp. 892, 896 (E.D.N.Y.1985) (examining direct contradiction between deposition and affidavit). And, for the purposes of ruling on motion for summary judgment, a court should not adopt a position advanced by one opposing the motion that is blatantly contradicted by the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007)

Finally, Plaintiff's opposition is replete with conclusory and inflammatory statements and self-serving mischaracterizations of evidence all of which are insufficient to defeat summary judgment.[2] *See,* Rule 56(e)(2), Fed. R. Civ. P.; *In re Castaldo*, No. 05-36349 CGM, 2006 WL 3531459, at *6 (Bankr. S.D.N.Y. Dec. 7, 2006), *subsequently aff'd*, 313 F. App'x 351 (2d Cir. 2008); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

Consequently, summary judgment should be granted in Davis's favor.

## REPLY POINT I

## PLAINTIFF'S FAILURE TO PROMOTE DISCRIMINATION AND RETALIATION CLAIMS UNDER 42 U.S.C 1981, NYSHRL AND NYCHRL SHOULD BE DISMISSED

In Davis's initial moving papers, Davis showed Plaintiff was not discriminated or retaliated against when she did not receive a promotion. In Plaintiff's opposition, she incorrectly claims that

---

[2] The innumerable legal conclusions and arguments contained in Plaintiff's response to Defendants Rule 56.1 Statement and Plaintiff's Counter 56.1 should be disregarded. *Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 838-39 (S.D.N.Y. 2018), *Ott v. Fred Alger Mgmt.*, 11 Civ. 4418, 2016 U.S. Dist. LEXIS 132563, *22 (S.D.N.Y. September 27, 2016).

Davis did not satisfy her burden on this motion for summary judgment and that Plaintiff was treated differently than Barton. In doing so, Plaintiff ignores the following facts derived from Plaintiff's testimony and documents:

1. Plaintiff acknowledged that there was no promise of an upgrade. Rather based on a single 2017 conversation with Dean Davis about the potential upgrade, Plaintiff understood only that Dean Davis was "just trying to prepare for what might happen at some point in time" if she needed to transfer a coworker's responsibilities relating to the Exhibition and Experience and Art Market programs to someone else. (JSMF ¶¶ 31, 35)

2. Plaintiff claims that in or around September, 2017, she had a conversation with Defendant Davis only about the possibility of Dean Davis assigning her additional duties and supporting a request for an "upgrade" to a "new position." (JSMF ¶ 33)

3. According to Plaintiff, she informed Davis that Plaintiff would work with HR to create a new position title that was commensurate with an upgrade. (JSMF ¶ 39).

4. Plaintiff testified that Plaintiff and Davis agreed to Plaintiff's approach, i.e. that Plaintiff, not Davis, would speak with HR for assistance in formulating a proposed job title for a new position. (JSMF ¶¶ 38, 39).

5. According to Plaintiff, she would then decide what the best job title was for a possible new position. (JDMF ¶ 40).

6. Plaintiff contacted HR via email on August 15, 2017 and a meeting was set up for August 16, 2017. (JSMF ¶ 41).

7. Plaintiff testified that she had one meeting with HR and was provided with a couple of job descriptions that might be considered for a new position. (JSMF ¶ 42).

8. On August 22, 2017 HR provided Plaintiff with some job descriptions. (JSMF ¶ 43).

9. On September 8, 2017, Plaintiff asked HR for "a couple more examples of job descriptions." (JSMF ¶ 45) On September 12, 2017, HR provided Plaintiff with additional examples of job descriptions. *Id.*

10. Plaintiff had no further discussions with HR regarding job descriptions because she received what she needed. (JSMF ¶ 47). (JDMF ¶ 47).

11. Even though Plaintiff testified that she would be the one to speak with HR for assistance in identifying a proposed new job title, after contacting HR and receiving examples of job descriptions in early September 2017, Plaintiff abandoned the process and never provided Davis with the material Plaintiff expressly promised and agreed that she would obtain from HR and then provide to Davis. (JDMF ¶ 48);

12. There was no vacant position, she submitted no application, and no one else received promotion to the upgraded (but undetermined) title she allegedly wanted; (Defs. JSMF ¶ 49);

13. To this day, Plaintiff is in the same position.

Thus, based on Plaintiff's own documents and testimony Davis met her burden of showing that Plaintiff abandoned the process of exploring a possible upgrade long before she filed her internal Affirmative Action Complaint. There was no discrimination or retaliation.

To the extent Plaintiff seeks to disregard the above facts by claiming that Davis "agreed" to an upgrade, this argument is also dismantled by the Complaint's conclusive judicial admission that Davis and she only "discussed an upgrade in salary" which is a far cry from an agreement to promote Plaintiff. (See Taub Aff't Ex. "E" Complaint at ¶19) Plaintiff is bound to this conclusive judicial admission throughout the course of the proceeding and it may not be contradicted. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir.1985) (party cannot contradict its own pleading with affidavits); *See also*, *Howard Univ.* v. *Borders*, 2022 WL 3568477, at *6 (S.D.N.Y. 2022); *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003); *Citing, Bellefonte Re Ins. Co.* and *Soo Line R.R. Co.* And, as shown in Davis' MOL, the process is governed by the Collective Bargaining Agreement under which Davis had no authority to "agree" to an upgrade. (JSMF ¶¶ 3, 29; Glass Aff. ¶ 30).

Plaintiff's claim that Barton was treated differently is also wrong. Davis expressed a willingness to work with and explore a possible upgrade for Plaintiff and they agreed that Plaintiff would obtain information necessary to continue the process. It was Plaintiff – not Davis – who jettisoned the process. Therefore, there was no disparate treatment. Moreover, Plaintiff never sought Barton's position; nor could she because she did not meet the qualification including, *inter alia,* a Master's Degree.

Plaintiff's suggestion that her filing an affirmative action complaint caused Davis to end the process is also incorrect. Plaintiff's AA Complaint was not filed until April 20, 2018 – nine months after Plaintiff alleges Davis and she discussed the possibility of a promotion and seven months after

Plaintiff obtained all the information Plaintiff needed from HR and which Plaintiff decided not to share with Davis despite her promise to do so. Thus, the timeline shows that the filing of the AA Complaint did not cause the process to end – Plaintiff did.

Manifestly, insofar as Plaintiff claims that Davis was somehow obligated to follow-up with Plaintiff, as stated in *Brown v. Coach Stores, Inc.* 163 F.3d 706, 710 (2d Cir 1998), it is an unfair burden to require employers "to keep track of all employees who have generally expressed an interest in promotion and [to] consider each of them for any opening for which they are qualified but did not specifically apply."

Plaintiff's claim that proceeding with the process would have been futile because she filed the AA Complaint is no help because Plaintiff's "feelings and perceptions" are not evidence of discrimination and, therefore, her allegations are insufficient to defeat defendant's summary judgment motion. *Bickerstaff v. Vassar College,* 196 F.3d 435, 456 (2d Cir.1999) (internal citation omitted); *Rochetti v. New York State Dep't of Motor Vehicles*, No. 02 CV 1710 SLT LB, 2005 WL 2340719, at *7 (E.D.N.Y. June 13, 2005). Moreover, in a November 5, 2019 email from Plaintiff to her union representative, i.e., twenty months after filing the AA Complaint, Plaintiff conceded that it was she who decided to drop the upgrade discussion. (JSMF ¶ 51) Finally, given that the Affirmative Action Complaint was not filed until nine months after Plaintiff claims she spoke to Davis and seven months after Plaintiff met with and obtained what she needed from HR, the "futility" argument is a red-herring.

Not only does Plaintiff's opposition ignore the facts, but Plaintiff ignores the well-established authority Davis previously cited that demonstrates Plaintiff's § 1981, NYSHRL and NYCHRL claims have no merit.[3] Plaintiff also fails to mention that in *Jean-Pierre v. Citizen Watch Co. of Am.,*

---

[3] Davis initial MOL at pp 5-6

*Inc., supra,* where the plaintiff was represented by Plaintiff's counsel in this case, the argument Plaintiff makes here was rejected. There, the plaintiff claimed she was denied promotion when a role was created for a white employee. Plaintiff admitted, however, that she did not want that particular position and wasn't looking to secure that position. Instead, the plaintiff wanted to be promoted within her current role. The Court granted summary judgment on the plaintiff's Title VII, § 1981, NYSHRL and NYCHRL claims that were based on, *inter alia*, a failure to promote citing *Breland-Starling v. Disney Publ'g Worldwide,* 166 F. Supp. 2d 826, 830 (S.D.N.Y. 2001)(holding that plaintiff could not establish a prima facie case of discrimination based on her failure to apply for the "specific—and indeed nonexistent— position she desired" and explaining that [t]he law on this question is clear and unmistakable: plaintiff must demonstrate that she applied for a particular position for which she was qualified) *Id.* at *7.

Plaintiff's failure-to-promote claims should be dismissed for the independent reason that there is no evidence that she was denied any promotion because of discriminatory animus. See *Cardwell* v *Davis, Polk & Wardwell, LLP*, 2020 WL 6274826, at *22 (S.D.N.Y. 2020) To the contrary, Plaintiff's decision not to proceed shows the absence of a promotion was not based upon discrimination. It was based on Plaintiff's decision not to proceed.

## REPLY POINT II

## PLAINTIFF'S AIDING AND ABETTING DISCRIMINATION:  NYSHRL LAW 296(6) AND NEW YORK CITY HUMAN RIGHTS LAW 8-107(6) SHOULD BE DISMISSED

Having failed to address any of Davis's arguments noted in above PRELIMINARY STATEMENT, Plaintiff asserts two new theories not alleged in the Complaint regarding the manner in which she believes Davis aided and abetted discrimination. First, Plaintiff claims that, "Davis rebuffed Phillips' initial verbal complaints about racial discrimination in the office, and did not report Phillips' complaints to the Affirmative Action Office." Second, Plaintiff alleges that "defendant Davis

involved herself in the aftermath of Barton's May 16, 2019 verbal attack and threat to kill Phillips, diverting the matter from the Affirmative Action Office to HR." (See Plaintiff's MOL at pp. 55-56.)

What Plaintiff overlooks is that opposition to a motion for summary judgment is not the place or time for a plaintiff to raise new claims. *Williams v. City of New York*, No. 15 CIV. 6900 (BMC), 2016 WL 5173254, at *4 (E.D.N.Y. Sept. 21, 2016); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1183, at 23 n. 9 (3d ed. 2004). Thus Plaintiff's new claims should be rejected out of hand.

And, glaringly absent from Plaintiff's new claim that "Davis rebuffed Phillips initial verbal complaints about racial discrimination in the office, and did not report Phillips' complaints to the Affirmative Action Office," is a description of the discrimination Davis allegedly aided and abetted. Also, as has frequently been Plaintiff's approach, she ignores the facts. Davis, like the Union, advised Plaintiff to speak with the appropriate offices within FIT to file a formal complaint. (JSMF ¶ 82) In other words, Davis did not ignore Plaintiff's concerns, she met with Plaintiff and directed Plaintiff to the Affirmative Action Office to file a formal complaint. Based upon the Union's and Davis's advice, Plaintiff contacted Affirmative Action on March 19, 2018, i.e. one week after Davis's advice. Plaintiff then met with Affirmative Action on March 23, 2018, April 5, 2018, April 12, 2018, April 16, 2018, April 18, 2018 and a formal complaint was completed on April 20, 2018. ((JSMF ¶¶ 84-88)

Thus, the facts show that under Plaintiff's new theory Davis did not aid or abet any discrimination.

Plaintiff's reliance upon *Lewis* v. *Triborough Bridge & Tunnel Auth.*, 77 F. Supp.2d 376,384 (S.D.N.Y. 1999) is a far cry from this case and does not support a different conclusion. There, various complaints were made to supervisors regarding sexual harassment that involved employees entering the women's locker room while female employees were changing. Employees were also accused of

leering and would crowd the entrance to the locker room, forcing one complainant to "run the gauntlet" and brush up against them.  The repeated complaints of sexual harassment complaints by female employees were ignored.

Next, Plaintiff argues as a basis for aiding and abetting liability that "defendant Davis involved herself in the aftermath of Barton's May 16, 2019 verbal attack and threat to kill Phillips, diverting the matter from the Affirmative Action Office to HR." According to Plaintiff, "Defendant Davis called HR, instead of Affirmative Action, while knowing she was a subject of Phillips' March 2018 Affirmative Action complaint." (See Plaintiffs MOL at p.56) Plaintiff then takes a huge leap and asserts that this aided and abetted Barton's alleged discriminatory conduct and speculates that if the Affirmative Action Office investigated Barton, the outcome would have been different than if HR investigated Barton's conduct.

Even if Plaintiff had actually alleged this theory in the Complaint, once again, Plaintiff ignores the facts. Davis was not in the office when the incident occurred. (JDMF ¶ 186). And, as Plaintiff necessarily concedes at paragraph 51 of her Counter-Statement, immediately after the incident Plaintiff herself sent an email to Deliwe Kekana, FIT's Affirmative Action Officer and Title IX Coordinator and to Plaintiff's Union representative, Ms. Perez, reporting the following:

> Today Marilyn Barton exploded and threatened to kill me in the office. Apparently she didn't like a professional opinion I expressed and the difference of opinion about an office matter and completely lost it. I am too upset to come over now, but will follow-up with you later to find your availability.

(*See also,* JDMF ¶ 43)

On May 16, 2019 at 12:27 p.m., Ms. Perez emailed Plaintiff and asked her if she feared for her safety and advised Plaintiff that she could file a report with Public Safety. (JDMF ¶ 189) On May 16, 2019 at 12:42 p.m., Ms. Kekana mailed Plaintiff echoing the options suggested by Ms. Perez

(JDMF ¶ 189) On May 16, 2019 at 1:50 p.m., Plaintiff again emailed Ms. Kekana and Ms. Perez to advise she filed a report with the Office of Public Safety. (JDMF ¶ 189)

Thus, Affirmative Action was fully aware of the incident by Plaintiff's immediate and direct communication with Ms. Kekana. The decision that the investigation be conducted by HR was solely and properly within the discretion of FIT. (JSMF ¶¶ 14, 205).

<b>REPLY POINT III</b>

**PLAINTIFFS DISCRIMINATION AND RETALIATION CLAIMS UNDER 42 U.S.C 1981, NYSHRL AND NYCHRL PREMISED UPON HER OFFICE RELOCATION SHOULD BE DISMISSED**

The facts and law establish that there is no merit to Plaintiff's claims arising out her relocation to a different office. Plaintiff contacted Cynthia Glass, VP of Human Resources Management and Labor Relations, and requested that she be separated from Barton (*See* Glass Aff't, Ex. "H"). And, FIT made the decision to relocate Plaintiff – not Davis. (JSMF ¶ 215; see Ex. "H" to Glass Decl., at PL000017; Davis Dep., p. 230:14-2; Exhibit "E" to Daub Aff't at ¶36; Plaintiff's Counter-Statement No. 81; Glass Dep., at p. 212:7-13). As for Barton not being relocated, Barton was Davis' Executive Assistant, and her job responsibilities required her to provide direct support to Davis. (Defs. JSMF ¶ 68; Plaintiff's Counter-Statement No. 83). And, Plaintiff never sought Barton's position.

In Plaintiff's affidavit, without any specific example, she asserts that her new location was an inconvenience because "[t]he chairperson would just do things herself rather than walk down the street and go into the other building where I am located or wait for me to arrive in her office to assist her".[4] This impermissibly contradicts Plaintiff's deposition testimony where she makes no mention of this claim and she alleges only that faculty and students opted to use email or the phone to communicate with Plaintiff. (Daub Aff't. Ex "B" at p. 229, L.13 – p 232, L.6) It also ignores

---

[4] See Phillips' affidavit, ¶ 31 (Exhibit R to Sells Aff't.).

Plaintiff's prior testimony that she already was not working on the same floor as the Chairperson and faculty in the program she served.  (Daub Aff't. Ex "B" at p. 229, L.13 - L.22) See, *Hayes,* 84 F.3d 614, 619 (2d Cir. 1996), *supra.* And, Plaintiff worked remotely during the pandemic.  (JSMF ¶ 216)[5]

## CONCLUSION

For the reasons cited above and in Davis's initial moving papers, as well as  FIT's and Barton's initial moving and reply papers, Davis respectfully requests this Court grant her motion for summary judgment in its entirety.

Dated:  Westchester, New York
        January 13, 2023

Respectfully submitted,

SARETSKY KATZ & DRANOFF, L.L.P.
Attorneys for Defendant MARY DAVIS

By: _____
        Eric Dranoff (ED-7892)
A Member of the Firm
*Office and P.O. Address:*
565 Taxter Road, Suite 210
Elmsford, New York 10523
(212) 973-9797; cdranoff@skdllp.com

---

[5] Plaintiff ignores the governing law. *See, e.g .Fletcher v. ABM Bldg. Value,* 775 F. App'x 8 *12, 14 (2d Cir. 2019) (holding that transfer of position and work location was "mere inconvenience" and insufficient to support either discrimination or retaliation claim).