UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x

MARJORIE PHILLIPS,

                Plaintiff,

    -against-

THE FASHION INSTITUTE OF TECHNOLOGY,
MARY DAVIS and MARILYN BARTON,

                Defendants.

------------------------------------ x

MEMORANDUM DECISION
AND ORDER

20 Civ. 221 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Marjorie Phillips brings this seventeen-count action against her employer the Fashion Institute of Technology, supervisor Mary Davis, and coworker Marilyn Barton for race-based discrimination, disparate treatment, retaliation, hostile work environment and interference with protected rights in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Administrative Code § 8-107 ("NYCHRL"). (Complaint ("Compl."), ECF No. 5.) Plaintiff also asserts claims of negligent hiring, training, and retention, intentional infliction of emotional distress, and assault. (*Id.*)

Before this Court are Defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of Plaintiff's claims. (ECF Nos. 79, 80, 81, 86.) Defendants' motions are GRANTED.

## I.    FACTUAL BACKGROUND

The following facts are undisputed unless otherwise indicated. Plaintiff has been employed with Defendant Fashion Institute of Technology ("FIT") since 1995, when she began work in FIT's payroll department as a part-time clerical assistant. (Defs.' Joint Statement of Undisputed Material Facts ("SUMF"), ECF No. 85, ¶ 19.) Between 1995 and 2006, Plaintiff applied for and obtained

three "upgrades" within FIT to titles with higher pay.[1]  (*Id.* ¶ 20.)  Since her last upgrade in 2005, Plaintiff has been in the position of "office associate." (*Id.* ¶ 24.)

In July 2017, Plaintiff had a conversation with her supervisor, Defendant Mary Davis, about the possibility of Davis assigning Plaintiff additional duties and supporting a request for an upgrade.  (SUMF ¶ 33.)  Plaintiff testified that she and Davis "discussed what would be involved in this new position," that Davis asked Plaintiff "to look into a job title that would reflect this new job," and that Plaintiff and Davis ultimately "decided that I was going to go to human resources, because, you know, they could help me with that." (*Id.* ¶ 38.)  In the weeks following, Plaintiff spoke with Human Resources about possible job titles and received the information she needed, (*id.* ¶¶ 41–47), but she never followed up with Davis, applied for any posted vacancy, or pursued a "reevaluation" of her title under the appropriate procedures, (*id.* ¶¶ 48–49).  Plaintiff admits that she and Davis "didn't finalize" any upgrade, and that Davis and Plaintiff together decided that Plaintiff would first speak with Human Resources "to come up with a title." (Pl.'s Resp. to SUMF, ECF No. 103, at 10.)  In November 2019, Plaintiff told her union representative that she "did not ask [] Davis to do anything except explain [] what additional roles/responsibilities she had in mind," and that Plaintiff herself later "dropped the upgrade discussion" because she "didn't believe Davis would honor her promise [] anymore." (SUMF ¶ 51.)

On March 12, 2018, Plaintiff spoke with Davis about unrelated concerns Plaintiff had regarding certain comments that had been made in the workplace.  (SUMF ¶ 79.)  Davis advised Plaintiff to speak with the appropriate offices within FIT to file a formal complaint, which Plaintiff did on April 20, 2018 (Plaintiff's "Affirmative Action Complaint").  (*Id.* ¶ 88.)  In relevant part, the Affirmative Action Complaint concerned four incidents Plaintiff alleged were racist: (1) in

---

[1] In FIT terminology, an "upgrade" is synonymous with promotion and means that an employee has moved to a higher job title.  (SUMF ¶ 28.)

2014, Plaintiff's coworker, Brenda Cowan, invited Plaintiff to join a conversation by saying "come join us at the back of the bus," (*id.* ¶ 89); (2) in 2016, Plaintiff overheard Defendant Marilyn Barton explaining to an aide that African Americans were once considered three-fifths of a human being, (*id.* ¶ 90); (3) in 2017, another of Plaintiff's co-workers, Kyle Farmer, told Plaintiff, "you look like you are going to the hood" after Plaintiff put on her jacket, (*id.* ¶ 101); and (4) on March 9, 2018, Barton told a co-worker that her cousin had referred to himself as a "bastard" after learning he was born out of wedlock, (*id.* ¶ 119). Although Plaintiff never accused Davis of any discriminatory remark, she nevertheless named her as a respondent because she felt that Davis had not adequately responded to her complaints. (*Id.* ¶ 128; Pl.'s Resp. to SUMF, ECF No. 103, at 21, 27.)

After investigating, FIT's Affirmative Action Office concluded that the conduct described did not violate FIT's discrimination policies. (SUMF ¶ 159.) Although the bulk of the Office's investigatory efforts took place in the months immediately following the submission of Plaintiff's Complaint, Plaintiff was only advised of the findings in July 2019. (*Id.* ¶¶ 160, 133–58.) The Office finalized its report regarding its investigation on October 7, 2019. (*Id.* ¶ 161.)

Over a year after Plaintiff filed the Affirmative Action Complaint, on May 16, 2019, Plaintiff and Barton had a disagreement over Barton's handling of an issue involving graduation regalia. (SUMF ¶¶ 164–69.) The disagreement escalated and culminated with Barton shouting at Plaintiff, "I'm tired of your bullshit" and "if you don't shut the fuck up, I'm going to fucking kill you." (*Id.* ¶¶ 170–71.) According to a witness, Barton also "made a gesture as if to push [Plaintiff]" which "caused her to slightly brush [Plaintiff] as [Plaintiff] stood up." (*Id.* ¶ 177.) Barton did not use any racial slurs or refer to Plaintiff's race in any way during the incident. (*Id.* ¶ 179.) Plaintiff filed a report with the Office of Public Safety the same day, (*id.* ¶ 192), and FIT's Human Resources Department investigated, (*id.* ¶ 205). Barton was suspended and required to

complete a program recommended by Human Resources, a racial empathy seminar, and other professional development activities prior to returning to work. (*Id.* ¶¶ 209–10.) Barton was also evaluated by a licensed clinical social worker who determined she was not a threat to others. (*Id.* ¶ 212.) Following the incident, Plaintiff requested that her seat be relocated. (*Id.* ¶ 215.) Plaintiff was transferred to a different building on FIT's campus upon her return to work. (*Id.*)

On August 12, 2019, Plaintiff filed an EEOC Charge of Discrimination concerning her confrontation with Barton. (SUMF ¶¶ 217–18.) The Charge did not refer to the items Plaintiff raised in her Affirmative Action Complaint, her claims of discrimination, or her complaints that she was not upgraded. (*Id.* ¶¶ 219–21.) On October 11, 2019, the EEOC issued a Dismissal and Notice of Rights. (*Id.* ¶ 217.) Plaintiff filed the instant suit three months later. (ECF No. 5.)

## II.     LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a jury could return a verdict for the nonmoving party." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quotation omitted).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and it "may not rely on

4

conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quotation omitted). Rather, the opposing party must produce "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007). In this regard, "[t]he mere existence of a scintilla of evidence supporting the non-movant's case is [] insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quotation omitted). In determining whether a genuine issue of material fact exists, a court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *Id.*

## III.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

Plaintiff's Complaint brings seventeen causes of action under federal, state, and city law for race-based discrimination, retaliation, hostile work environment, interference with protected rights, negligent hiring, intentional infliction of emotional distress, and assault. (Compl. ¶¶ 46–104.) Summary judgment is granted for Defendants on all claims.

### A.   Discrimination Under Title VII, Section 1981, the NYSHRL and the NYCHRL

Plaintiff's First, Second and Seventh Causes of Action allege that Defendants discriminated against her on the basis of her race in violation of Title VII and 42 U.S.C. § 1981.[2] To establish a prima facie case of employment discrimination, a plaintiff must show that (1) she belonged to a protected class; (2) she was qualified for the position she occupied; (3) she was

---

[2] Plaintiff failed to include the 2014–2018 remarks by Cowan, Farmer and Barton in her EEOC Charge. (ECF No. 82–6.) Because they are not reasonably related to the sole incident described in that charge (Plaintiff's 2019 confrontation with Barton), Plaintiff failed to exhaust her administrative remedies with respect to those incidents. Additionally, those earlier remarks are time-barred and the continuing violations doctrine does not apply. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (continuing violations doctrine does not apply to "discrete discriminatory acts"). Insofar as Plaintiff's Title VII claims are premised on those statements, these constitute two additional grounds for dismissal.

subject to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination. *Menaker v. Hofstra University*, 935 F.3d 20, 30 (2d Cir. 2019). Defendants do not dispute that Plaintiff is a member of a protected class as an African-American woman. Nor do they appear to challenge whether Plaintiff was qualified for her position. The only disputed issues are whether Plaintiff suffered an adverse employment action and, if so, whether it occurred under circumstances giving rise to an inference of discrimination.

The adverse employment actions of which Plaintiff complains are not clearly identified in her submissions. Construing Plaintiff's arguments in the light most favorable to her, Plaintiff complains of four actions: (1) Plaintiff's alleged denial of an "upgrade"; (2) FIT's delay in investigating her Affirmative Action Complaint; (3) FIT's inadequate discipline of Barton; and (4) Plaintiff's relocation.[3] "An adverse employment action is a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 n. 7 (2d Cir. 2008). Such action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citation omitted). "Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (citation omitted).

Here, none of the conduct identified by Plaintiff constitutes an adverse employment action sufficient to support a *prima facie* case of discrimination. With respect to Plaintiff's desire to advance within FIT, the undisputed facts show that Plaintiff was not, in fact, "denied" an upgrade.

---

[3] Plaintiff also claims as one of her adverse employment actions "the hostile work environment itself." (Pl.'s Mem. of Law in Opp. to Defs.' Mots. for Summ. J. ("Opp."), ECF No. 101, at 16.) Because Plaintiff fails to establish a hostile work environment, *see supra* Section C, she cannot rely on it to support her discrimination or retaliation claims.

In her single discussion with Davis regarding a potential upgrade, Davis asked Plaintiff to take certain steps to further their discussion (*i.e.*, work with Human Resources to identify a job title to which Plaintiff might upgrade) and Plaintiff admits she never followed up. (Pl.'s Resp. to SUMF, ECF No. 103, at 10.) Plaintiff also admits she never asked Davis "to do anything except explain [] what additional roles/responsibilities she had in mind so that I was clear," (SUMF ¶ 51), and that it was Plaintiff who "dropped the upgrade discussion." (*Id.*)[4] In *Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998), the Circuit held that an individual alleging she was passed over for a promotion must establish that she actually applied for one, because "if generally requesting a promotion in an annual review were sufficient [], employers would be unfairly burdened in their promotion efforts." *Id.* at 710. Similarly, the mere fact that Plaintiff expressed an interest in an upgrade does not establish that any adverse employment action was taken against her—particularly here where Defendants have shown that the upgrade process at FIT is applicant-driven rather than automatic, and Plaintiff failed to propel that process.[5]

Nor do Plaintiff's complaints that FIT unduly delayed its investigation into her Affirmative Action Complaint and that FIT did not appropriately discipline Barton following the May 2019

---

[4] Plaintiff's papers rely heavily on an affidavit Plaintiff submitted in connection with the instant motion that directly contradicts her prior testimony. For example, the affidavit claims that Davis never told Plaintiff that she was waiting for Plaintiff "to supply a new job title," (Pl.'s Aff. ("Aff."), ECF No. 98–21, ¶ 19), even though Plaintiff admitted during her deposition that she and Davis had agreed to table the upgrade discussion until Plaintiff came up with a suitable title, (Pl.'s Resp. to SUMF, ECF No. 103, at 10; SUMF ¶ 51). It is well settled that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Brown v. Reinauer Transportation Companies*, L.P., 788 F. App'x 47, 49 (2d Cir. 2019). "Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not genuine issues for trial." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

[5] While Plaintiff is correct that a failure to apply for a position is not a bar to relief when an employer's discriminatory practices deter application or make application a futile endeavor, *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1213 (2d Cir. 1993), no reasonable person would interpret the change Plaintiff perceived in Davis's attitude following the filing of her Affirmative Action Complaint to have made application futile. In any event, Plaintiff's conclusory claim that Davis became "cold and brusque," (Opp. at 34), without any supporting facts is not enough to raise a genuine dispute of fact.

confrontation qualify as adverse employment actions.  Neither describes a "materially adverse change in the terms and conditions" to *Plaintiff's* employment.  *See e.g., Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721, 724 (2d Cir. 2010) (failure to investigate complaints of discrimination does "not by itself alter the terms and conditions of [a plaintiff's] employment[,]" and, thus, cannot constitute an adverse employment action); *Weinstein v. Garden City Union Free Sch. Dist.*, No. 11 Civ. 2509, 2013 WL 5507153, at *24 (E.D.N.Y. Sept. 30, 2013) (failure to discipline another worker for cursing at plaintiff does not constitute adverse employment action).

Finally, Plaintiff's relocation to a different building cannot rise to the level of an adverse employment action without any corresponding material impact on the terms and conditions of her employment. *Signer v. Tuffey*, 66 F. App'x 232, 236 (2d Cir. 2003) (seat relocation may constitute adverse employment action if paired with reduction in job responsibilities and removal of duties). Plaintiff has not adduced any evidence that her relocation had any material, as opposed to a perceived or speculative, impact on her job, other than an attestation consisting largely of conclusory and vague allegations that her transfer "adversely impacted" her work because her boss "would just do things herself."  (Opp. at 49; Aff. ¶ 31.)  Even if it was an adverse employment action, Plaintiff has not established any facts suggesting that her relocation was made under circumstances giving rise to an inference of discrimination.[6]  To the contrary, Plaintiff was relocated because she requested it. (SUMF ¶ 215.)

---

[6] Plaintiff cannot, as she argues, prove discriminatory animus based on the mere fact that Barton, who was not relocated, is Caucasian. *See Hill v. Rayboy-Brauestein*, 467 F.Supp.2d 336, 360 (S.D.N.Y. 2006) ("allegations that African Americans are treated differently … are insufficient to support hostile work environment"); *Davis-Bell v. Columbia Univ.*, 851 F.Supp.2d 650, 677 (S.D.N.Y. 2012) (granting summary judgment to defendants where plaintiff's only evidence of race-based hostile work environment was the fact that "no other non-African American [] suffered similar abuse"); *Sharpe v. MCI Communications Services, Inc.*, 684 F.Supp.2d 394, 400–01 (S.D.N.Y. 2010) (dismissing hostile work environment claim in part because"[t]he fact that [plaintiff's supervisor] did not yell at four white employees … proves nothing.").

Because Plaintiff cannot show any adverse employment action, her discrimination claims fail. Plaintiff's Causes of Action One, Two and Seven for Title VII and Section 1981 discrimination and disparate treatment are therefore dismissed. Because claims under Title VII and the NYSHRL "are analyzed identically," *Hyek v. Field Support Servs., Inc.*, 461 F. App'x. 59, 60 (2d Cir. 2012), and because there can be no aiding and abetting without a predicate act, *Farmer v. Shake Shack Enterprises, LLC*, 473 F.Supp.3d 309, 338 (S.D.N.Y. 2020), Plaintiff's Twelfth Cause of Action for aiding and abetting discrimination under the NYSHRL is also dismissed.

## B.   Discrimination Under the NYCHRL

Plaintiff's Fourteenth Cause of Action alleges that Barton and Davis discriminated against her in violation of the NYCHRL. To establish a discrimination claim under the NYCHRL, Plaintiff must show that her employer treated her less well, at least in part for a discriminatory reason. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).

Plaintiff has not adduced any evidence to support an inference that Davis or Barton treated her "less well" on the basis of her race. She does not identify any derogatory statements about her race by Davis and the lone such statement by Barton is time-barred. (Compl. ¶ 17 (alleging that Barton told a student aide that "African Americans are three-fifths of a human being" in 2016); *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (three-year statute of limitations to NYCHRL claims). To the extent Plaintiff complains that Davis made an upgrade request for Barton, who is Caucasian, but not for Plaintiff, (*see* Opp. at 61), as noted above, Plaintiff's failure to obtain an upgrade is due to her own inaction, not Davis's. Even if that were not the case, Plaintiff has offered no competent evidence to support her hypothesis that the reason motivating Davis to deny Plaintiff's upgrade was Plaintiff's race. Plaintiff's subjective belief that that is the case, without more, is insufficient to sustain her claim at summary judgment. Finally,

as discussed below with respect to Plaintiff's hostile work environment claims, *infra* Section C, there is no indication that the 2019 confrontation with Barton was motivated by Plaintiff's race.

Defendants are therefore entitled to summary judgment on Plaintiff's Fourteenth Cause of Action for discrimination under the NYCHRL, as well as her Sixteenth Cause of Action for aiding and abetting discrimination under the NYCHRL.

## C.    Hostile Work Environment

Plaintiff's Third and Fourth Causes of Action allege that Defendants subjected her to a hostile work environment in violation of Title VII and Section 1981. To succeed on a hostile work environment claim, a plaintiff must show that her "workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To satisfy this standard, "[a] plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 128 (2d Cir. 2019). In analyzing whether a plaintiff has met her burden, "courts should examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014). In doing so, courts have repeatedly held that a "mere utterance of an ... epithet which engenders offensive feelings in an employee, ... does not sufficiently affect the conditions of employment." *Harris*, 510 U.S. at 21. Moreover, "[s]imple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious)" are insufficient. *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004). To establish a hostile

work environment, a plaintiff must also demonstrate that the conduct occurred because of her membership in a protected class. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

After reviewing the entire record and assessing the facts in the light most favorable to Plaintiff, this Court concludes that Plaintiff has not put forth any evidence of any conduct that would rise to the level required to sustain a hostile work environment claim. At most, Plaintiff has established an environment that involved sporadic, unrelated comments and incidents that occurred years apart, one of which (Barton's use of the word "bastard") Plaintiff admits was not directed at her or related to race. Even ignoring that all the incidents grounding Plaintiff's Affirmative Action Complaint are time-barred, this conduct—four isolated comments across a six-year period—falls far short of establishing a workplace "severely permeated with discriminatory intimidation, ridicule, and insult." *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 745 (2d Cir. 2014) (quotation omitted).

Nor does Plaintiff's May 2019 dispute with Barton suffice to establish a hostile work environment, as the record is devoid of any evidence to suggest that it occurred because of Plaintiff's race. Plaintiff's only basis for her belief that Barton acted based on race is that she has "never seen [Barton] act that way with a white person." (Opp. at 10.) That fact, in and of itself, is insufficient to support an inference of race discrimination. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) (plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination"); *Hill*, 467 F.Supp.2d at 360 ("When a person only makes general allegations that African Americans are treated differently in the workplace, those allegations are insufficient to support a hostile work environment claim"); *Davis-Bell*, 851 F.Supp.2d at 677 (granting summary judgment to defendants where plaintiff's only evidence of race-based hostile work environment was the fact that "no other non-African American [] suffered similar abuse");

*Sharpe*, 684 F.Supp.2d at 400–01 (dismissing hostile work environment claim on summary judgment, in part because "[t]he fact that [plaintiff's supervisor] did not yell at four white employees ... proves nothing.").[7] Nor does Barton's statement that "African-Americans were once considered three-fifths of a human being" afford a sufficient basis for a jury to conclude that the May 2019 incident—which occurred three years later and with no interim misdoings—occurred out of discriminatory animus. Plaintiff's entire case revolves around one discrete, facially neutral event and a three-year-old statement regarding the historical status of African Americans. This single statement does not afford a sufficient basis for the jury to conclude that the May 2019 incident occurred out of discriminatory animus. *Hill*, 467 F.Supp.2d at 360 (in the context of a hostile work environment claim, prior use of a racial epithet by a supervisor alone was insufficient to establish that a different, facially race-neutral event was the result of racial discrimination).

Accordingly, based on the absence of any evidence to suggest that the circumstances of Plaintiff's work environment were so objectively threatening or harassing as to have adversely altered her working conditions, or that those circumstances were related to her race, no reasonable jury could find that Defendants subjected Plaintiff to a hostile work environment. Defendants are therefore entitled to summary judgment on Plaintiff's Third and Fourth Causes of Action.

**D.      Retaliation Under Title VII, Section 1981, the NYSHRL and the NYCHRL**

Plaintiff's Fifth, Sixth and Eleventh Causes of Action allege retaliation in violation of Title VII, Section 1981 and the NYSHRL. To establish retaliation under these statutes, a plaintiff "must demonstrate that (1) [she] engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal

---

[7] Plaintiff's reliance on *Terry* is misplaced. There, the evidence included testimony from a third-party that Defendant routinely engaged in "race-baiting." *Terry v. Ashcroft*, 336 F.3d 128, 150 (2d Cir. 2003). Such evidence is absent here.

connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). As discussed above, Plaintiff has not shown that she suffered any materially adverse employment action. Defendants are therefore entitled to summary judgment on Plaintiff's Fifth, Sixth and Eleventh Causes of Action, as well as on her Thirteenth Cause of Action for aiding and abetting retaliation under the NYSHRL.

Plaintiff also asserts a retaliation claim against Defendants Davis and Barton pursuant to the NYCHRL. The NYCHRL is slightly more solicitous of retaliation claims than federal and state law because, rather than requiring a plaintiff to show an adverse employment action, it only requires action that was "reasonably likely to deter a person from engaging in protected activity." *Mestecky v. New York City Dep't of Educ.*, 791 F. App'x 236, 239 (2d Cir. 2019) (citation omitted). Otherwise, a *prima facie* case of retaliation faces the same requirements under the NYCHRL as under the NYSHRL. *See id.* In her opposition brief, Plaintiff explains that her retaliation claim against Davis "arises from Davis' conduct in not requesting an upgrade for [Plaintiff]." (Opp. at 52.) As explained above, the undisputed evidence shows that the onus was on Plaintiff to move her upgrade forward, not Davis. This claim therefore fails. *Campbell v. Cellco P'ship*, 860 F.Supp.2d 284, 300 (S.D.N.Y. 2012) (dismissing NYCHRL retaliation claim for failure to promote where plaintiff failed to apply for the position he wanted). Plaintiff's claim against Barton also fails because the May 2019 incident would not, by itself, dissuade a reasonable person from voicing a complaint. Indeed, it did not deter Plaintiff: immediately following the incident, Plaintiff reported Barton's conduct and filed an EEOC charge. Accordingly, Defendants are entitled to summary judgment with respect to Plaintiff's Fifteenth Cause of Action.

## E.   Negligent Hiring

Defendants also move for summary judgment on Plaintiff's negligent hiring claim on the grounds that it is prohibited by New York's Workers' Compensation Law ("WCL"). Defendants are correct. It is well-settled that common law negligence claims against employers are barred by the WCL. *See e.g., Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997) (WCL barred negligence claim based on co-worker harassment). Plaintiff's Eighth Cause of Action is therefore dismissed.[8]

## F.   Intentional Infliction of Emotional Distress

Plaintiff also asserts a claim of intentional infliction of emotional distress against Barton.[9] To establish intentional infliction of emotional distress ("IIED") under New York law, Plaintiff must prove: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a probability of causing, emotional distress; (iii) a causal connection between the conduct and injury; and (iv) emotional distress. *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121 (N.Y. 1993). The standard for extreme and outrageous conduct is incredibly high. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303 (N.Y. 1983). Due to this very high threshold, IIED claims "generally do not survive dispositive motions." *Allam v. Meyers*, No. 09 Civ. 10580, 2011 WL 721648, at *6 (S.D.N.Y. Feb. 24, 2011). Indeed, the New York Court of Appeals has rejected every claim for intentional infliction of emotional distress it has considered because the conduct

---

[8] Plaintiff's failure to oppose Defendants' motion as to her negligence claim is independent grounds for its dismissal. *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) ("Where, as here, a counseled non-moving party submits a partial response arguing that summary judgment should be denied as to some claims while not mentioning others, that response may be deemed an abandonment of the unmentioned claims.") (quotation omitted); *see also Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021).

[9] Plaintiff also brought claims for intentional infliction of emotional distress and assault against Davis but failed to defend them in her opposition papers. They are thus deemed abandoned and dismissed, but in any event fail for the same reasons as do the claims against Barton. *See infra* Sections F and G.

was not sufficiently outrageous or extreme. *Howell*, 81 N.Y.2d at 122. The few claims upheld by the Appellate Divisions have involved "longstanding campaign[s] of deliberate, systematic, and malicious harassment." *Seltzer v. Bayer*, 272 A.D.2d 263, 264 (1st Dep't 2000).

Barton's actions during the May 2019 incident do not approach the type of egregious conduct necessary to support a claim for intentional infliction of emotional distress. Courts have repeatedly declined to hold behavior and threats such as Barton's to be extreme and outrageous. *See e.g., Walther v. Maricopa Int'l Inv., Corp.*, No. 97 Civ. 4816, 1998 WL 689943, at *4 (S.D.N.Y. Sept. 30, 1998) (repeated verbal threats such as "****sucker you're gonna pay" fell short of "extreme and outrageous" threshold); *Torain v. Casey*, No. 16 Civ. 2682, 2016 WL 6780078, at *2 (S.D.N.Y. Sept. 16, 2016), *report and recommendation adopted,* 2016 WL 6775440 (S.D.N.Y. Nov. 14, 2016) (threat to break plaintiff's jaw insufficient to establish IIED); *Saleh v. United States*, No. 12 Civ. 4598, 2013 WL 5439140, at *11–12 (S.D.N.Y. Sept. 27, 2013) (defendant's threats and plaintiff's resulting fear "that at any moment he could be attacked physically or harassed[,] ... kidnapped[,] or even killed" did not rise to required level of conduct), *aff'd*, 580 Fed. Appx. 22 (2d Cir. 2014); *Owen v. Leventritt*, 174 A.D.2d 471, 472 (1st Dep't 1991) (threat to kill pregnant plaintiff insufficient to support a cause of action for IIED). It follows that the threats at issue here also fail to constitute "extreme and outrageous" behavior. Defendants' motion as to this claim is therefore granted and Plaintiff's Ninth Cause of Action is dismissed.

**G.   Assault**

Defendants also move for summary judgment on Plaintiff's assault claim on the grounds that Plaintiff cannot demonstrate having suffered any apprehension of an imminent harmful bodily contact—one of the essential elements of a common law assault claim. An assault is "an intentional placing of another person in fear of imminent harmful or offensive contact." *United*

*Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993). To succeed on an assault claim, a plaintiff must show that the defendant intended "either to inflict personal injury or to arouse apprehension of harmful or offensive bodily contact." *Rivera v. Puerto Rican Home Attendants Servs., Inc.*, 930 F.Supp.2d 124, 133 (S.D.N.Y. 1996).

No reasonable jury could find that Barton's actions during the May 2019 altercation put Plaintiff in "imminent apprehension" of "harmful or offensive contact." Threatening words, although discourteous, are insufficient to support a claim of assault. *Carroll v. New York Prop. Ins. Underwriting Ass'n*, 88 A.D.2d 527, 527 (1st Dep't 1982); *Joon Song v. MHM Sponsors Co.*, 176 A.D.3d 572, 573 (1st Dep't 2019) (assault claim based on screaming, threats, and having a door slammed in plaintiff's face failed to allege facts that would establish that physical contact was reasonably imminent"). The complained of physical conduct—Barton's poking or light pushing of Plaintiff—cannot have engendered in Plaintiff the requisite imminent apprehension of harmful conduct. Defendants are therefore entitled to summary judgment with respect to Plaintiff's Tenth Cause of Action.

**H.     Interference with Protected Rights**

Finally, Plaintiff brings a claim for interference with protected rights under the NYCHRL. The NYCHRL prohibits "any person" from "coerc[ing], intimidat[ing], threaten[ing] or interfer[ing] ... in the exercise or enjoyment of ... any right granted or protected" under the NYCHRL, or attempting to do so. N.Y.C. Admin. Code § 8-107(19). To establish interference, a plaintiff must show that a threat was made against her because of her exercise of a protected right. *Nieblas-Love v. New York City Hous. Auth.*, 165 F.Supp.3d 51, 78 (S.D.N.Y. 2016).

Plaintiff has not shown that Barton's threats in May 2019 were designed to interfere with her exercise of a protected right. Although Plaintiff points to her Affirmative Action Complaint,

(*see* Opp. at 70–71 (arguing that the complaint was a motivating factor for the May 2019 incident, and thus, that Barton acted "because of" Plaintiff's protected activity), that Complaint had been fully submitted for over a year by the time of the May 2019 incident. The sequence of events refutes any suggestion that Barton's actions in May 2019 were designed to chill the exercise of Plaintiff's rights a year earlier. *See France v. Touro Coll.*, No. 14 Civ. 4613, 2016 WL 1105400, at \*13 (E.D.N.Y. Feb. 16, 2016), *report and recommendation adopted*, No. 14 Civ. 4613, 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016) (interference with protected activity requires that "plaintiff's ability to complain was interfered with by the defendant.") Indeed, Plaintiff's attempt to explain her basis for this claim suggests that it is merely duplicative of her retaliation claim. *Cadet v. All. Nursing Staffing of New York, Inc.*, No. 21 Civ. 3994, 2022 WL 4584246, at \*22 (S.D.N.Y. Sept. 29, 2022) (dismissing interference claim because "to hold otherwise … would make Plaintiff's retaliation claim and interference with protected rights claim entirely duplicative, despite the fact that these are separate provisions of the NYCHRL"); *see also, Rosas v. Balter Sales Co. Inc.*, No. 12 Civ. 6557 (VSB), 2015 WL 12915807, at \*12 (S.D.N.Y. Mar. 30, 2015) (declining to interpret interference claims as coterminous with retaliation claims). Defendants are therefore entitled to summary judgment with respect to Plaintiff's Seventeenth Cause of Action.

## IV.   CONCLUSION

Defendants' motions for summary judgment, (ECF Nos. 79, 80, 81, and 86), are GRANTED and this action is dismissed.

The Clerk of Court is hereby ordered to close the open motions and this action.

Dated: March 15, 2023    SO ORDERED.
     New York, New York

                                   GEORGE B. DANIELS
                                   United States District Judge